**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE (NORTHERN) DIVISION**

| | | |
|---|---|---|
| Hiscox Insurance Company, Inc. | § | |
| 30 North LaSalle Street, Suite 1760 | § | |
| Chicago, IL 60602 | § | |
| | § | |
| v. | § | |
|     Plaintiff, | § | |
| | § | Civil Action No.: _____ |
| v. | § | |
| | § | |
| Maryland Congress of Parents and | § | |
| Teachers, Inc. | § | |
| 5 Central Avenue | § | |
| Glen Burnie, MD 21061 | § | |
| | § | |
|     Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**AND REQUEST FOR DECLARATORY JUDGMENT**

Plaintiff, Hiscox Insurance Company, Inc. ("Hiscox"), files this Plaintiff's Original Complaint and Request for Declaratory Judgment ("Complaint") against Maryland Congress of Parents and Teachers ("MPTA") and would respectfully show the Court as follows:

**I.**
**INTRODUCTION**

1.      Hiscox issued three consecutive one-year commercial crime insurance policies to the MPTA, beginning on July 1, 2020. Unbeknownst to Hiscox when it performed its underwriting and then issued each the policies, the MPTA's former president, Latonja Carrera ("Carrera") had allegedly been embezzling large sums of money from the MPTA, ultimately resulting in the embezzlement of over $900,000 from the MPTA. Yet, the MPTA submitted applications to Hiscox materially misrepresenting that it had not sustained any crime losses. The MPTA made other material misrepresentations to Hiscox in applying for each of the three policies. Because Hiscox

1

would never have issued any of the policies to the MPTA had it known the true facts, Hiscox has rescinded the policies and returned the premiums for them to the MPTA. The MPTA disagrees Hiscox is entitled to rescind the policies. Therefore, Hiscox has filed this Complaint requesting a declaratory judgment that the policies were properly rescinded and void *ab initio* and that Hiscox has no further obligations to the MPTA under the policies, including for any loss incurred by the MPTA resulting from the alleged embezzlement by Carrera. Additionally, in the alternative, Hiscox seeks a declaratory judgment that it has no obligation to the MPTA under the policies for other reasons.

## II.
## PARTIES

2.      Defendant MPTA is a Maryland nonprofit corporation organized under the laws of the State of Maryland with its principal place of business in Glen Burnie, Maryland. Seth Waxman is the court-appointed Receiver for the MPTA and resides in Glen Burnie, Maryland. For purposes of diversity of citizenship, MPTA is a citizen of Maryland and not a citizen of Illinois, or any other state.

3.      Plaintiff Hiscox is an Illinois corporation with its principal place of business in Illinois. For purposes of diversity of citizenship, Hiscox is a citizen of Illinois and not a citizen of Maryland.

## III.
## JURISDICTION AND VENUE

4.      This is a civil controversy between citizens of different states. The amount in controversy in this matter, exclusive of interests, costs, and attorney's fees, exceeds $75,000. Accordingly, this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

5.      The MPTA is a resident of the District of Maryland. Accordingly, venue is proper in this district according to 28 U.S.C. § 1391(b)(1).

6.      Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

## IV.
## FACTUAL ALLEGATIONS

7.      The MPTA is non-profit association that provided oversighting guidance to volunteer members and parent-teacher associations throughout Maryland.

8.      In March 2020, the National Congress of Parents and Teachers ("National PTA") informed the MPTA that it had received "allegations regarding actions taken by the [MPTA] that may impact the compliance status of the [MPTA]." After the MPTA failed to respond, the National PTA placed the MPTA on probation.

9.      In November 2020, the MPTA's then President, Dr. E. Battle ("Battle"), along with two others, resigned as officers and board members, and the remaining four board members elected Carrera, a then existing board member, as President.

10.     On March 26, 2021, the National PTA revoked the MPTA's charter, which required the MPTA to immediately "cease representing your corporate entity [the MPTA] as an affiliate of National PTA."

11.     On June 14, 2021, the National PTA filed a lawsuit in Maryland state court against Carrera, the Board of Directors of the MPTA and the Alliance, seeking a declaratory judgment that the Alliance could not operate under the MPTA bylaws, and for conversion of over $19,000 in dues the MPTA had allegedly collected from local PTAs and owed to the National PTA, as well as for tortious interference and breach of fiduciary duties (the "Lawsuit"). A true and correct copy of the Lawsuit is attached hereto as Exhibit 1 and incorporated herein by reference.

12.     Thereafter, the National PTA filed a Motion for Temporary Injunction, and after a hearing, a Consent Order was entered enjoining the defendants in the Lawsuit from "operating under the Maryland PTA bylaws."

13.     On October 11, 2022, the court in the Lawsuit entered its Receivership Order appointing Seth Waxman (the "Receiver") as Receiver for the MPTA, and finding that "Maryland PTA, largely due to the actions of defendant Carrera (and the corresponding inaction and lack of controls by the Board of Director of Maryland PTA) had wasted, dissipated, and impaired the funds and assets of Maryland PTA." The Receivership Order instructed the Receiver to "determine whether, and the extent to which, any funds or assets of Maryland PTA have been wasted, dissipated or spent for purposes unrelated to the reasonable and necessary operation of Maryland PTA or for the improper benefit of individuals . . . ."

14.     On June 15, 2023, the Receiver  filed on behalf of the MPTA the MPTA's cross-claim against Carrera (the "Cross-Claim"). A true and correct copy of the Cross-Claim is attached hereto as Exhibit 2 and incorporated herein by reference.

15.     According to the Cross-Claim, beginning in May 2020 and continuing through October 2022, Carrera abused her positions of trust with the MPTA by illegally embezzling over $900,000 from the organization to pay for wide variety of personal goods and services through thousands of unauthorized purchases and ATM withdrawals.

16.     According to paragraph 4 of the Cross-Claim, "Carrera's embezzlement scheme began in spring 2020 with the onset of the COVID-19 pandemic, and consisted of Carrera fraudulently obtaining funds in the name of the Maryland PTA from the following entities: (a) private corporate grantors; (b) the United States Small Business Administration ("SBA"); and (c) Local PTAs."

17.     Also according to paragraph 5 of the Cross-Claim, "Carrera illegally embezzled the following funds from the Maryland PTA:

- Private Grant: A $49,500.00 COVID-19 relief grant issued on May 6, 2020, by Share Our Strength ("SOS"), a nonprofit organization whose mission was to end hunger and poverty in the United States and abroad;

- Private Grants: Three COVID-19 relief grants for $100,000.00, $102,755.00, and $100,000.00, issued on August 3, 2020, December 2, 2020, and December 23, 2020, respectively, by the Albertsons Companies Foundation ("Albertsons"), a non-profit organization whose mission was to keep food accessible to local families impacted by the COVID-19 pandemic;

- Federal COVID-19 Disaster Relief Loans: SBA COVID-19 disaster relief loans for $50,400.00, $155,200.00, $152,000.00, and $140,000.00, issued on February 16, 2021, October 28, 2021, November 17, 2021, and December 28, 2021, respectively;

- Federal COVID-19 Paycheck Protection Program ("PPP") Loan: A SBA COVID-19 PPP loan for $24,903.00, issued on April 13, 2021; and

- Local PTA Dues: Local PTA dues in the amount of $38,983.93, collected by the Maryland PTA during 2021.

18.     According to paragraph 7 of the Cross-Claim, "BDO USA, LLC ("BDO") conducted a forensic audit of the Maryland PTA's financial records and Carrera's network of 11 secret bank accounts. Based upon that examination, BDO prepared:

- A summary, listing Carrera's illegal purchases and ATM withdrawals by dollar amount (largest to smallest), attached hereto as Exhibit 1; and

- A schedule, listing Carrera's illegal purchases and ATM withdrawals by date (oldest to most recent), attached hereto as Exhibit 2.

A true and accurate copy of the schedule listing Carrera's alleged illegal purchases by date is attached hereto as Exhibit 3 and incorporated herein reference.

19.    According to paragraph 8 of the Cross-Claim, "Carrera illegally used Maryland PTA funds to pay for virtually every aspect of her life."

20.    According to paragraph 14 of the Cross-Claim, on March 26, 2021, the National PTA revoked the MPTA's charter based upon the MPTA's alleged repeated failures to comply with the National PTA's Standards of Affiliation. Also, according to paragraph 140 of the Cross-Claim, the "National PTA set forth the following consequences as a result of the charter revocation:

- The entity currently known as the Maryland PTA must change its name effective immediately. It is no longer part of the PTA family.

- You must cease all public use of the PTA names and logos immediately and cease representing your corporate entity as an affiliate of the National PTA.

- You must cease chartering and representing Maryland local and council PTAs. We will be notifying your constituents that you no longer represent them and that they will be directly supported by National PTA.

- We will be setting up a new entity to take over in Maryland.

21.    According to paragraph 169 of the Cross-Claim, on "On June 15, 2021, this Court granted that relief and enjoined Carrera and the Maryland PTA from:

a.    Operating under the Maryland PTA bylaws;

b.    Seizing or attempting to seize, freezing or attempting to freeze, or otherwise taking control or attempting to take control of Local PTAs' funds and/or bank account without Local PTAs' consent; and

c.    Collecting or seeking to collect any payments due to the National PTA.

22.    In the Cross-Claim, the MPTA asserted causes of action against Carrera for conversion, fraud, and breach of fiduciary duty.

## V.
## THE COMMERCIAL CRIME POLICIES

23.     Hiscox issued three consecutive one-year commercial crime insurance policies to the MPTA.

24.     First, Hiscox issued Policy No. UC24379596.20 to the MPTA, with a policy period of July 1, 2020, through July 1, 2021 (the "2020-2021 Policy"). A true and accurate copy of the 2020-2021 Policy is attached hereto as Exhibit 4 and incorporated herein by reference.

25.     Hiscox issued Policy No. UC24379596.21 to the MPTA, with a policy period of July 1, 2021, through July 1, 2022 (the "2021-2022 Policy"). A true and accurate copy of the 2021-2022 Policy is attached hereto as Exhibit 5 and incorporated herein by reference.

26.     Hiscox issued to the MPTA Policy No. UC24379596.22, with a policy period of July 1, 2022, through July 1, 2023 (the "2022-2023 Policy"). A true and accurate copy of the 2022-2023 Policy is attached hereto as Exhibit 6 and incorporated herein by reference. (The above three policies are herein after defined together as the "Policies").

27.     The Policies each provide potential coverage for various crime related losses, subject to all of the terms and conditions of the Policies, including coverage under Insuring Agreement A.1. for Employee Theft. Subject to all of the terms and conditions of the Policies, Insuring Agreement A.1., Employee Theft, provides potential coverage for "loss of or damage to **money**, **securities**, or other **property**:

> 1.    <u>Employee Theft</u>: sustained by **you** resulting directly from **theft** or **forgery** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons;

## VI.
## CLAIM BY THE MPTA

28.     The Receiver notified Hiscox of a claim by email dated November 15, 2022, in which he asserted that "one or more Maryland PTA employees improperly embezzled funds from Maryland PTA from at least the time period of July 2019 to the present."

29.     By letter dated June 15, 2023, the Receiver submitted a copy of the Cross-Claim to Hiscox "as proof of the Maryland PTA's claim under [the 2020-2021 Policy]." And, by email dated June 29, 2023, the Receiver submitted a sworn claim on Hiscox's Crime Proof of Loss form (the "Receiver's claim is referred to hereinafter as the "Claim").

30.     By letter dated December 11, 2023, Hiscox notified the Receiver that there could be no coverage for the Claim for various reasons, including the fact that Hiscox was rescinding both the 2020-2021 Policy and the 2021-2022 Policy and because the 2022-2023 Policy never became effective, or if it had, that it was cancelled flat and thus void *ab initio*, or in the alternative, that it was also rescinding the 2022-20223 Policy. Hiscox also explain that, in the alternative, there were other reasons why there could be no coverage under the Policies for the Claim.

## VII.
## MPTA's MATERIAL MISREPRESENTATIONS IN ITS
## APPLICATIONS FOR THE POLICIES

### A.     The 2020 Application

31.     On January 17, 2020, the MPTA submitted an unsigned Crime Protection Plus Application to Hiscox through the MPTA's insurance broker, Conway E&S, Inc. ("Conway"), and thereafter submitted a signed copy of the Crime Protection Plus Application to Hiscox dated July 1, 2020 (the "2020 Application"). A true and accurate copy of the 2020 Application is attached hereto as Exhibit 7 and incorporated herein by reference.

32.     Question 1 of the 2020 Application asks:

1.   List all crime losses sustained during the last three (3) years whether reimbursed or not. Check here if none. ☒

33.   The MPTA's answer to Question 1 was false. According to the Receiver, by the time the 2020 Application was submitted to Hiscox, Carrera had already stolen at least $62,009.61 from the MPTA.

34.   The MPTA's answer to Question 1 was a material misrepresentation relied upon by Hiscox to its detriment in issuing the 2020-2021 Policy. Had Hiscox known the true facts, and that Carrera had already stolen over $60,000 from the MPTA, it would not have issued the 2020-2021 Policy.

35.   The MPTA also alleges in its cross-claim that there was a prior "unrelated embezzlement scheme" addressed by the MPTA's Board. If so, and a prior embezzlement had taken place, the MPTA's answer to Question 1 was also materially false for this reason. Hiscox relied upon the MPTA's answer to Question 1 in issuing the 2020-2021 Policy. Had Hiscox known that there was another unrelated embezzlement it would not have issued the 2020-2021 Policy to the MPTA.

36.   The 2020 Application asked at page 2 of 4 whether the MPTA conducts a criminal background check on all new hires and the MPTA stated yes. Upon information and belief, Carrera was convicted of theft in 1997, and had a string of other criminal charges asserted against her from 2000 through 2020. According to the Receiver , Carrera began her tenure with the MPTA in August 2019. The MPTA's response to this question was material. Hiscox relied upon the MPTA's response to this question in issuing the 2020-2021 Policy. If the MPTA's response to the above question was false and Hiscox had known it, Hiscox either would not have issued the 2020-2021 Policy or would have issued it on different terms.

37.     The Internal Controls section of the 2020 Application stated, in pertinent part, as follows:

> 1.  Are your financial statements prepared by an independent Certified Public Accountant on an annual basis?
>     ☑ Yes ☐ No If yes, on what basis? _____ ☑ Yes ☐ No
> . . . .
> 3.  Are two signatures required on checks? If yes, over what amount?
>     $                                                          ☑ Yes ☐ No
>     If two (2) signatures are not required, who has the authority to sign checks?
>     Please provide their name and position:
>     Edna Harvin Battle-President, Marla Posey Moss-President Elec. Laura Mitchell Treasu
> 4.  Do employees who reconcile the bank statements also:
>     a. sign checks?                                          ☐ Yes ☑ No
>     b. make withdrawls? [sic]                                ☐ Yes ☑ No
>     c. make deposits?                                        ☑ Yes ☐ No
>     d. have access to blank checks?                          ☑ Yes ☐ No
>     e. have access to compute [sic] systems that print checks? ☑ Yes ☐ No
>     f. have access to facsimile, signature plate or check
>        signing machines?                                     ☐ Yes ☑ No

38.     During the claims process Hiscox asked the Receiver whether the MPTA had independent financial statements prepared on an annual basis. the Receiver indicated that he did not know whether financial statements were prepared by an independent CPA.

39.     The MPTA's answer to Question 1 was material. If the MPTA did not have financial statements prepared by an independent CPA on an annual basis, and Hiscox had known such, it either would not have issued the 2020-2021 Policy or would have issued it on different terms.

40.     Question 3 above asks whether two signatures were required on checks, and the question was answered yes. But, based upon documentation provided to Hiscox during the claims process, two signatures were not required on checks. The MPTA's answer to Question 3 was material. Hiscox relied upon the MPTA's answer to Question 3 in issuing the 2020-2021 Policy.

Had Hiscox known the truth, it either would not have issued the 2020-2021 Policy, or it would have issued it on different terms.

41.     Questions 4a. through c. above appear to also have been incorrectly answered. If so, such answers were materially false and relied upon by Hiscox in issuing the 2020-2021 Policy. Had Hiscox known the truth, it either would not have issued the 2020-2021 Policy or it would have issued it on different terms.

42.     When Conway provided the 2020 Application to Hiscox, it also provided two MPTA documents. The first, the Maryland PTA's Policies and Procedures, and the second, the Maryland PTA Government Structure Responsibilities, Job Descriptions, and Procedures document. These documents outlined policies and procedures regarding the handling of the MPTA's finances, including that deposit slips are to be prepared by the bookkeeper, that the budget and finance committee is to verify all deposits, that all disbursements will be made by check with two signatures, and that the budget and finance committee is to review all transactions. The job description provided for the treasurer stated that the treasurer would be one of the signatories on all bank accounts, and would review all bank statements. These, and other representations in these documents, were materially false. Hiscox relied to its detriment upon the above statements. Had it known the truth, it either would not have issued the 2020-2021 Policy or it would have issued it on different terms.

**B.      The 2021 Application**

43.     On June 28, 2021, the MPTA submitted to Hiscox an Executive Risks Crime Application C-Suite, Renewal Application to Hiscox, seeking renewal of the 2020-2021 Policy (the "2021 Application"). A true and accurate copy of the 2021 Application is attached hereto as Exhibit 8 and incorporated herein by reference. As with the 2020 Application, the 2021 Application asked the MPTA to list all losses sustained, whether or not claimed, during the prior

six years. In response the MPTA answered that it had no losses. The MPTA's answer was materially false. Hiscox relied upon the MPTA's answer of no losses to its detriment in issuing the 2020-2021 Policy. Had it known the true facts it would not have issued the 2021-2022 Policy.

44.     The 2021 Application also asked at Question 2 whether there had been any change in the MPTA's "predominant business activity." The MPTA answered no. But, by this time, the MPTA's charter had been revoked and the court in the Lawsuit had issued its injunction against Carrera and the MPTA Board of Directors enjoining the MPTA from operating under the MPTA bylaws. Thus, the MPTA was no longer acting as a valid chartered parent-teachers association under the National PTA. Thus, the MPTA's answer to this question was materially false. Hiscox relied to its detriment upon the MPTA's answer to the above question in issuing the 2021-2022 Policy. Had it known the truth, it would not have issued the 2021-2022 Policy.

45.     The 2021 Application also asked if there had been any change in internal controls, and the MPTA answered "no." But, it appears internal controls had changed because, according to the Receiver, Carrera had taken over the MPTA's "checkbook" and control of its finances. The MPTA's responses to this question were materially false. Hiscox relied to its detriment upon the MPTA's answer to this question in issuing the 2021-2022 Policy. Had it known the truth, it would not have issued the 2021-2022 Policy.

46.     In deciding to issue the 2021-2022 Policy, Hiscox also relied upon the MPTA's responses to the 2020 Application, and upon the other false information the MPTA provided to Hiscox in applying for the 2020-2021 Policy. Had Hiscox known the truth, it would not have issued the 2021-2022 Policy.

**C.**   **The 2022-2023 Policy**

47.    The 2022-2023 Policy appeared to qualify for Hiscox's automatic renewal process.

Therefore, Hiscox sent Conway a letter dated March 29, 2022, soliciting a renewal (the

"Solicitation Letter"). That letter stated, in pertinent part:

> As we approach the next policy period, we ask that you and the Insured review the expiring policy to determine if any changes have occurred within their business in the past year. After your review, please complete and return the below linked renewal application to us at least 30 days before the expiration date referenced above.
>
> Renewal Application
>
> **If we do not receive a renewal application**, the policy will renew based upon the information the Insured last provided to us . . . .
>
> **However, if the answer is "Yes" to any of the below questions**, please complete and return the above linked renewal application to us. . . . If we do not receive a completed application, we will assume that none of these changes have taken place and offer a renewal policy based on that assumption.
>
> 1.    **Change in Revenues** – . . .
>
> 2.    **M&A Activity** – . . .
>
> 3.    **Claims** – Is the Insured aware of any act, error or omission, or other matter that may reasonably be expected to lead to a claim or a potential claim against the Insured or other loss covered under the expiring policy?
>
> 4.    **Services (A&E) Only** – . . .
>
> 5.    **Change in employee count (Crime Only)** – . . .

A true and accurate copy of the Solicitation letter is attached hereto as Exhibit 9 and incorporated

herein by reference.

48.    A renewal application was not received, and no one notified Hiscox that the MPTA

did not wish to continue coverage. As a result, Hiscox forwarded a renewal policy to Conway by

letter and email dated June 10, 2022. The email states: "This is NOT a quote. Coverage is bound

as of the effective date shown on the Declarations page, which immediately follows the expiration

date of the existing policy." The email goes on to state: "If at any point the Insured no longer wishes to continue coverage with us for another policy term, please notify us in writing as soon as possible. If you intend on accepting the policy, please remit the premium to us as per the invoice." The invoice, which is entitled "DEBIT NOTE / COMMISSION STATEMENT," asked the insured to please "remit within thirty days of receipt."

49.     As of August 18, 2022, Hiscox had not received payment of the premium from the MPTA. Thus, by failing to remit the premium, the MPTA did not accept the renewal as offered by Hiscox and therefore the 2022-2023 Policy did not incept.

50.     Hiscox sent an email to Conway dated August 18, 2023, advising that the premium payment had not been received and that Hiscox had processed a Notice of Cancellation, mailed it to the MPTA, and attached a copy to the August 18th email to the broker. True and accurate copies of the Notice of Cancellation and the August 18th email are attached as Exhibits 10 and 11 and incorporated herein by reference.

51.     On September 1, 2022, Brie Schaper, a broker with Conway, emailed Hiscox and asked:

> I wanted to reach out to see if there was any way we could have this cancelled flat. Unfortunately, the agent has reached out to the insured many times with no reply on this policy as well as others they have with this insured. I was hoping we might be able to help them out so they don't have to eat the earned premium on this. Its due to cancel on 9/5. If you could just let me know if you would be able to cancel flat, I would appreciate it. I want to advise the agent if we are able to first and make sure it is okay, before actually cancelling flat. Appreciate any help!

52.     In the insurance industry, to cancel "flat" a policy means to void a policy *ab initio*. Based upon this request, Hiscox sent Conway Endorsement 4, E2660.1 Cancellation Endorsement (Flat), stating, in relevant part: "In consideration of a return premium of $1,345.00, (if the premium has already been paid in full), and the returned Administrative Fee of $0.00, it is agreed this policy

is cancelled flat." A true and accurate copy of Endorsement 4 is attached hereto as Exhibit 12 and incorporated herein by reference. The "Endorsement effective" date is July 1, 2022. Because the MPTA had not paid the premium for the policy, there was nothing to return. Along with Endorsement 4, Hiscox sent Ms. Schaper a "DEBIT NOTE / COMMISSION STATEMENT," also indicating that the policy had been cancelled. A true and accurate copy of the DEBIT NOTE / COMMISSION STATEMENT is attached hereto as Exhibit 13 and incorporated herein by reference.

53.     Based upon the above, the 2022-2023 Policy never incepted because it was not accepted by the MPTA through the remittance of the required premium. However, if it did become effective, it was cancelled flat and thus voided as of July 1, 2023. However, if the 2022-2023 Policy did take effect and was not voided as of July 1, 2023, then Hiscox is entitled to rescind the 2022-2023 Policy because of material misrepresentations and omissions upon which Hiscox relied to its detriment.

54.     First, in issuing the 2022-2023 Policy, Hiscox relied upon the two earlier applications, the 2020 Application and the 2021 Application, and thus Hiscox is entitled to rescind the 2022-2023 Policy for each of the same reasons it is entitled to rescind the two earlier polices, and it reserves its right to rescind on the same basis as it reserves its rights in connection with the two earlier policies.

55.     The Solicitation Letter Hiscox sent to Conway informed the MPTA that if Hiscox did not receive a renewal application, "the policy will renew based upon the information the Insured last provided to us . . . ." It further states that if "we do not receive a completed application, we will assume that none of these changes have taken place and offer a renewal policy based on that assumption." One of the changes asked about was: "Is the Insured aware of any act, error or

omission . . . or other loss covered under the expiring policy?" By not providing a completed application the insured represented that it was not aware of a loss covered under the prior policy, which is a material misrepresentation upon which Hiscox relied to its detriment. Therefore, while it is Hiscox's position that the 2022-2023 Policy never incepted, or if it did, that it was void as of July 1, 2023, if Hiscox is mistaken, it is entitled to rescind the 2022-2023 Policy.

**VIII.**
**COUNT ONE**
**(Request for Declaratory Judgment Confirming Rescission Under Maryland Law)**

56.    Hiscox incorporates herein by reference paragraphs 1 through 55 of this Complaint as though specifically alleged herein.

57.    The Policies were issued to the MPTA based upon the multiple material misrepresentations in applying for the Policies. Hiscox relied to its detriment upon such material misrepresentations in issuing the Policies. Had Hiscox known the truth, it would not have issued any of the Policies.

58.    Hiscox notified the Receiver on behalf of the MPTA by letter dated December 11, 2023, that it was rescinding the Policies and that it was returning the premiums paid for the Policies.

59.    For the reasons alleged above, the 2020-2021 Policy and the 2021-2022 Policy are void *ab initio* and have been validly rescinded consistent with the law of Maryland. Hiscox's offer to the MPTA to issue the 2022-2023 Policy was not accepted and thus it did not incept. But, if it incepted, it was cancelled flat, and void *ab initio*, effective July 1, 2022. But, if the 2022-2023 Policy is not void *ab initio* because it was cancelled flat, then alternatively, for the reasons discussed above, it is and has been validly rescinded under the laws of the State of Maryland and is void *ab initio*.

60.     An actual and justiciable controversy currently exists between Hiscox and the MPTA as to the construction and validity of the Policies and the parties' respective rights and obligations thereunder. Accordingly, based upon Maryland law, Hiscox requests that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that the 2020-2021 Policy and the 2021-2022 Policy are rescinded and void *ab initio*, and that Hiscox has no obligation to the MPTA or the Receiver thereunder. To the extent this Court does not conclude the 2022-2023 Policy never incepted, or that it is void *ab initio* because it was cancelled flat, Hiscox also asks this Court to issue a binding declaratory judgment declaring that the 2022-2023 Policy is rescinded and void *ab initio* and that Hiscox owes not obligation to the MPTA or the Receiver thereunder.

**IX.**
**COUNT TWO**
**(Request for Declaratory Judgment That Hiscox's Offer to Issue the 2022-2023 Policy Was Never Accepted and Therefore Such Policy Never Incepted)**

61.     Hiscox incorporates herein by reference paragraphs 1 through 60 of this Complaint as though specifically alleged herein.

62.     Hiscox made an offer to the MPTA to automatically renew the 2021-2022 Policy and issue the 2022-20223 Policy. Hiscox's offer was conditioned upon the MPTA's timely payment of the premium for such policy. The MPTA never paid the premium for such policy. Therefore, Hiscox's offer to issue the 2022-2023 Policy was never accepted.

63.     An actual and justiciable controversy currently exists between Hiscox and the MPTA as to the construction and validity of the Policies and the parties' respective rights and obligations thereunder. Accordingly, based upon Maryland law, Hiscox requests that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Hiscox's offer

to issue the 2022-2023 Policy was not accepted and that such policy never incepted, and thus Hiscox owes no obligations to the MPTA or the Receiver thereunder.

**X.**
**COUNT THREE**
**(Request for Declaratory Judgment that the 2022-2023 Policy is**
**Void *Ab Initio* Because It Was Cancelled Flat)**

64.    Hiscox incorporates herein by reference paragraphs 1 through 63 of this Complaint as though specifically alleged herein.

65.    Hiscox's offer to issue the 2022-2023 Policy was not accepted by the MPTA, and thus such policy never incepted. In the alternative, at the MPTA's request, the 2022-2023 Policy was cancelled flat. In the insurance industry, to cancel "flat" a policy means to void a policy *ab initio*. Maryland law permits an insured and insurer to mutually rescind an insurance policy, and thus to cancel it flat.

66.    An actual and justiciable controversy currently exists between Hiscox and the MPTA as to the construction and validity of the 2022-2023 Policy and the parties' respective rights and obligations thereunder. Accordingly, based on Maryland law, Hiscox requests in the alternative that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that the 2022-2023 Policy was cancelled flat and thus void *ab initio* and that Hiscox owes no obligation to the MPTA or the Receiver thereunder.

**XI.**
**COUNT FOUR**
**(Alternatively, There Can Be No Coverage Under Any of the Policies Because MPTA's**
**Loss Was Not Discovered During the Policy Period of Any of the Policies)**

67.    Hiscox incorporates herein by reference paragraphs 1 through 66 of this Complaint as though specifically alleged herein.

68.    Each of the Policies are discovery-based policies, applying only to losses resulting directly from an occurrence that is discovered during the policy period. More specifically, the

concluding paragraph of section I., Insuring agreements, of the Crime Coverage Part of the Policies

provides:

> **We** will pay loss under this Coverage Part only if the loss results directly from an **occurrence** that is **discovered** by **you** or an **executive employee** during the **policy period,** and is reported to **us** in accordance with Section V. Your obligations, B. Notifying us of losses.

69.     The term "**Discover**, **discovered**, or **discovery**" is defined by the policy, in

pertinent part, to mean:

> when **you** or an **executive employee** first becomes aware of facts which would cause a reasonable person to believe a loss has been or will be sustained, regardless of whether the exact amount or details of the loss is known.

70.     The term "**occurrence**" is defined by the policy to mean, under Insuring agreement,

A.1.:

> a.     an individual act;
>
> b.     the combined total of all separate acts whether or not related; or
>
> c.     a series of acts whether or not related.
>
> committed by an employee, fiduciary, or employee of a vendor acting alone or in collusion with other persons, prior to or during the policy period, or both.

71.     Thus, in order to be covered, Carrera's alleged embezzlement scheme must have

been discovered during the policy period of one of the three policies.

72.     The Receiver has informed Hiscox that no other board member, officer, or

employee of the MPTA was aware of Carrera's alleged thefts and that he was the person who

discovered Carrera's scheme on behalf of the MPTA after he was appointed Receiver in October

2022.

73.     In an email dated October 27, 2023, the Receiver stated:

> My understanding is that I was the first person to discover the fraud on behalf of the Maryland PTA, and my first substantive knowledge of that fraud was in late October 2022, through the Truist bank summary that was provided to me by National PTA. During the 2-3 weeks that ensued, I learned more information about the fraud that led me to file the claim with HISCOX in mid-November 2022. I am unaware of anyone else from the Maryland PTA knowing about the fraud, except for (of course) Carrera.

74.     Hiscox does not concede that discovery occurred in late October 2022, but instead, believes it was discovered no earlier than late November and most likely thereafter.

75.     Exhibit 17 to the Cross-Claim is the Affidavit of Edna Harvin-Battle. In that Affidavit, Ms. Battle states as follows in paragraphs 12-16:

> 12.     In March 2020, Latonja Carrera ("Carrera") told me that she wanted to seek grant funds on behalf of the Maryland PTA. I authorized her to do so, but explained that any grants had to be approved by the Board.
>
> 13.     Sometime thereafter, Carrera told me she obtained a $50,000.00 grant for the Maryland PTA. However, Carrera did not tell me where the money was deposited, despite me asking her repeatedly. I also told Carrera that Maryland PTA funds had to be deposited into a Maryland PTA bank account.
>
> 14.     I also repeatedly asked Carrera to submit paperwork to the Board documenting the grant funds because the Maryland PTA had to be accountable for the money, but Carrera never provided any paperwork. Carrera responded that she was "handling it."
>
> 15.     In June 2020, I attended an event Carrera held at Fletcher Field in Riverdale, Maryland where she distributed food and grocery store gift cards. However, Carrera never provided any documentation or information detailing how much the event cost or how much she spent on the food and grocery store gift cards.
>
> 16.     At Board meetings, Carrera was repeatedly asked to provide documentation and information about the grant and her expenditures, but she failed to do so.

76.     When contacted, Ms. Battle stated that she had no suspicions that Carrera had stolen money from the MPTA.

77.     Based upon the above, the MPTA's loss was not discovered under either the 2020-2021 Policy or the 2021-2022 Policy. Further, because the 2022-2023 Policy never incepted or was cancelled flat, there was no policy in effect for it to be discovered under. Alternatively, if this Court finds that the 2022-2023 Policy was not cancelled flat and void *ab initio*, it was rescinded or cancelled for non-payment of premium by Hiscox. Regardless, discovery did not occur during the policy period of the 2022-2023 Policy.

78.     An actual and justiciable controversy currently exists between the MPTA and Hiscox as to the construction and validity of the Policies and the parties' respective rights and obligations thereunder. Accordingly, Hiscox requests that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that there is no coverage under the Policies because discovery did not occur during the policy period of any of the Policies.

**XII.**
**COUNT FIVE**
**(Alternatively, Request for Declaratory Judgment That There Is No Coverage Because the MPTA's Notice and Proof of Loss Were Untimely)**

79.     Hiscox incorporates herein by reference paragraphs 1 through 78 of this Complaint as though specifically alleged herein.

80.     Section V.B. of the Crime Coverage Part of each of the policies provides, in pertinent part, as follows:

> After **you** or an **executive employee discovers** a loss of, damage to, or a situation that may result in loss of or damage to, **money**, **securities**, or **other property** that, in your best estimate, would exceed 50% of the **deductible**, **you** must:
>
> 1.      notify **us** as soon as possible after **discovery** of such loss, damage, or situation;
>
> 2.      give **us** a detailed, sworn proof of loss within 120 days after **your** notification to **us** of such loss, damage, or situation;
>
> . . . .

81.     In the unlikely event this Court finds discovery occurred at a date before October or November 2022, then the Receiver's notice and proof of loss were untimely. The timely notice and proof of loss provisions of the Policies are valid conditions precedent to coverage under the Policies. While prejudice is not required to deny coverage based upon late notice or late proof of loss, Hiscox was prejudiced if discovery occurred at an earlier date.

82.     An actual and justiciable controversy currently exists between the MPTA and Hiscox as to the construction and validity of the Policies and the parties' respective rights and obligations thereunder. Accordingly, Hiscox requests that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that, if discovery occurred at an earlier date, there can be no coverage for the MPTA's loss because it failed to provide Hiscox with timely notice of its claim or a timely proof of loss. While prejudice is not required to deny coverage based upon late notice or late proof of loss, if this Court finds otherwise, Hiscox requests that this Court issue a binding declaratory judgment that it was prejudiced by the MPTA's late note and late proof of loss and therefore there can be no coverage for this reason.

**XIII.**
**COUNT SIX**
**(Alternatively, Request for Declaratory Judgment that**
**Coverage for Carrera Terminated or Is Excluded )**

83.     Hiscox incorporates herein by reference paragraphs 1 through 82 of this Complaint as though specifically alleged herein.

84.     The Fidelity Insuring agreement section of the Policies includes a termination provision. It provides, in pertinent part:

> The coverage provided under this Insuring agreement A. Fidelity will terminate:
>
> a.     as to any loss, once **you** or an **executive employee** not acting in collusion with any person who committed the act in question **discovers** the **theft**, forgery, or other dishonest act.

      b.      as to an **employee**, once an **executive employee** not acting in collusion with the **employee** learns the **employee** committed the theft, forgery, or other dishonest act, but only if the employee committed such act after becoming employed by you or, if committed before becoming employed by you, the resulting loss exceeded $10,000.

. . . .

85.     Additionally, Exclusion 7. of each of the policies, "Prior dishonesty," provides that Hiscox has no obligation to pay any sums for any:

> loss caused by an **employee** if **you** or an **executive employee** who did not act in collusion with the **employee** learned, prior to the **policy period,** that the **employee** had committed any **theft, forgery,** or other dishonest act; however, this exclusion will not apply if the **theft, forgery,** or other dishonest act was committed prior to the **employee** becoming **your employee** and the amount involved in such act did not exceed $10,000.

86.     To the extent the MPTA or an executive employee not acting in collusion with Carrera discovered her alleged theft or any other dishonest act at any point, then there can be no coverage for any losses occurring after that point because any policy then in effect would have terminated as to Carrera. Alternatively, coverage for any such losses would be excluded under Exclusion 7.

87.     An actual and justiciable controversy currently exists between the MPTA and Hiscox as to the construction and validity of the Policies and the parties' respective rights and obligations thereunder. Accordingly, Hiscox requests that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that there can be no coverage for any losses incurred after the date the MPTA or an executive employee discovered a dishonest act by Carrera and that Exclusion 7 of the Policies applies for the same reason.

**XIV.**
**COUNT SEVEN**
**(In the Alternative the Loss in Progress and Fortuity Doctrine Apply)**

88.     Hiscox incorporates herein by reference paragraphs 1 through 87 of this Complaint as though specifically alleged herein.

89.     Carrera had already begun stealing from the MTPA prior to issuance of each of the three Policies. Thus, the loss in progress and fortuity doctrines apply.

90.     An actual and justiciable controversy currently exists between the MPTA and Hiscox as to the construction and validity of the Policies and the parties' respective rights and obligations thereunder. Accordingly, Hiscox requests that this Court issue a binding declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that there can be no coverage for any losses incurred by the MPTA due to application of the loss in progress and fortuity doctrines.

**XV.**
**COUNT EIGHT**
**(Attorneys' Fees)**

91.     Hiscox incorporates herein by reference paragraphs 1 through 90 of this Complaint as thought specifically alleged herein.

92.     Hiscox is entitle to recover its reasonable attorneys' fees in the filing and prosecuting this action. In particular, 28 U.S.C. § 2202 provides that the district court may grant such further and other relief as is necessary or appropriate. It has been necessary for Hiscox to retain the law firm of Clark Hill PLC to represent its interests in pursuing this Complaint. Hiscox seeks a declaration that it is entitled to an award of its attorneys' fees.

**XVI.**
**RESERVATION OF RIGHTS AND POTENTIAL DEFENSES**

93.     Other terms and conditions of the Policies may ultimately be implicated. By seeking a declaration of no coverage with respect to the issues identified in this Complaint, Hiscox is no

way waives, and expressly and fully reserves, the right to rely on any and all provisions of the Policies and any and all coverage defenses it may have to the MPTA's claim. Nothing in this Complaint should be construed as a waiver by Hiscox of any coverage defenses under the Policies or at law. Hiscox also reserves the right to further amend its Complaint to add any and all coverage defenses that may be applicable to the Claim.

## XVII.
## PRAYER FOR RELIEF

Hiscox requests that this Court issue a judgment declaring and/or adjudging the following:

a. The 2020-2021 Policy and the 2021-2022 Policy are rescinded and are null and void *ab initio* due to material misrepresentations in the MPTA's applications for such policies;

b. Hiscox's offer to issue the 2022-2023 Policy was not accepted and that policy never incepted. If this Court finds that Hiscox's offer to issue the 2022-2023 was accepted and the policy incepted, a finding that such policy was cancelled flat and void *ab* initio.

c. Alternatively, if the 2022-2023 Policy was not cancelled flat and void *ab initio* it is rescinded and is null and void *ab initio* due to the material misrepresentations in the application for such policy.

d. There is no coverage for the MPTA's claim under the Policies for the other reasons alleged above.

Hiscox also requests that this Court award it its reasonable attorneys' fees in prosecuting this action, together with its reasonable costs, and such other and further relief, both at law and in equity, as to which it is justly entitled.

Respectfully submitted,


*/s/ Russell D. Duncan*
Russell D. Duncan (Federal Bar No. 14904)
rduncan@clarkhill.com
CLARK HILL PLC
1001 Pennsylvania Avenue N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 640-6657
Facsimile: (202) 552-2377

- and -

Michael Keeley (Texas Bar No. 11157800)
(*Motion for Admission Pro Hac Vice pending*)
mkeeley@clarkhill.com
Sean Deer (Texas Bar No. 24117170)
(*Motion for Admission Pro Hac Vice pending*)
sdeer@clarkhill.com
CLARK HILL PLC
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: 214-651-4718
Facsimile: 214-659-4121

**ATTORNEYS FOR PLAINTIFF**
**HISCOX INSURANCE COMPANY, INC.**