# EXHIBIT 1
# National PTA Lawsuit against Carrera

**IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| NATIONAL CONGRESS OF PARENTS<br>AND TEACHERS<br>1250 North Pitt Street<br>Alexandria, VA 22314<br><br>      Plaintiff,<br><br>v.<br><br>LATONJA CARRERA,<br>5 Central Avenue<br>Glen Burnie MD 21061,<br><br>BOARD OF DIRECTORS OF MARYLAND<br>CONGRESS OF PARENTS AND TEACHERS, INC.;<br>5 Central Avenue<br>Glen Burnie MD 21061,<br><br>and<br><br>MARYLAND CONGRESS OF PARENTS AND<br>TEACHERS, INC., d/b/a The Alliance for Maryland<br>Parents, Teachers and Students<br>5 Central Avenue<br>Glen Burnie MD 21061,<br><br>      Defendants. | Case No.:    486117-V    |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

COMES NOW, Plaintiff National Congress of Parents and Teachers ("National PTA") on behalf of itself, and on behalf of local PTAs and PTSAs ("Local PTAs") and county council PTAs ("Council PTAs") in the State of Maryland who are members of the National PTA, and makes the following Complaint against Defendants LaTonja Carrera ("Carrera"), Board of Directors of Maryland Congress of Parents and Teachers, Inc. ("Board of Directors of Maryland PTA"), and the Maryland Congress of Parents and Teachers, Inc., d/b/a The Alliance for Maryland Parents Teachers and Students ("Alliance").

1

## NATURE OF THIS ACTION

1.      This Third Amended Complaint is brought because a rogue individual, Defendant

Carrerra, illegally, and not in compliance with the well-settled rules and regulations promulgated

by both the National PTA and Maryland Congress of Parents and Teachers, Inc. ("Maryland

PTA"), purported to have created a new entity called Alliance and to have adopted new bylaws for

that entity, and purported to not be acting as the Maryland PTA or operating under the Maryland

PTA bylaws, and together with the other named Defendants has engaged in multiple violations of

statutory and common law.

2.      These violations include, among others, threatening and intimidating Local PTAs

with retaliation and other actions which are illegal, including threatening to seize Local PTAs'

funds on June 15, 2021 if Local PTAs did not comply with Defendant Carrera's demands to join

Alliance and forfeit the right to be a member of National PTA, as well as engaging in trademark

infringement, trademark dilution, unfair competition and cybersquatting under the Lanham Act,

15 U.S.C.  § 10501,  et seq.,  and trademark infringement under Maryland statutory and common

law, engaging in conversion of National PTA's and Local PTAs' property, false statements under

penalty of perjury in filing Articles of Dissolution for Local PTAs without Local PTAs'

knowledge, consent or authorization, fraudulently and unlawfully accessing Local PTAs' bank

accounts and making unauthorized charges out of those accounts to pay for the unauthorized

dissolution filings, also without the Local PTAs' knowledge, consent or authorization, and in

violation of the Maryland Unfair Or Deceptive Trade Practices Act, Md. Code § 13-303.

7.      Defendants have also engaged in fraud, breach of fiduciary duties and tortious

interference with National PTA's business relationships.

8.     Given these threats and illegal activities, Plaintiff National PTA, in order to protect itself and the Local PTAs from the threatened and continuing harm, filed this Third Amended Complaint.

## THE PARTIES

9.     Plaintiff, National Congress of Parents and Teachers ("National PTA"), is a charitable, not for profit organization headquartered at 1250 North Pitt Street, Alexandria, Virginia 22314.

10.     Defendants, Board of Directors of Maryland Congress of Parents and Teachers, Inc. ("Board of Directors of Maryland PTA"), are the members of the Board of the former constituent association of the National PTA, Defendant Maryland Congress of Parents and Teachers, Inc. ("Maryland Congress of Parents and Teachers, Inc." or "Maryland PTA"), which is a charitable, not for profit organization with 833 constituent associations in Maryland, almost 200 of which are located in Montgomery County, and approximately 130,000 volunteer members.

11.     Defendant LaTonja Carrera was the purported President of Maryland PTA immediately prior to the revocation of Maryland PTA's charter by National PTA, and previously referred to as the "Interim" President.   On information and belief, Defendant Carrera is purporting to act as the President of Defendant Maryland PTA d/b/a Alliance and purporting to operate using the Maryland PTA business address, 5 Central Avenue, Glen Burnie, Maryland 21061.

12.     Upon information and belief, Alliance was formed by Defendants Carrera and Maryland PTA Board of Directors as a purported new entity separate from the Maryland Congress of Parents and Teachers, Inc. or Maryland PTA, and purportedly not operating under the Maryland PTA bylaws, as part of a scheme to confuse Local PTAs and defraud and/or otherwise seize the assets of National PTA and Local PTAs, and to carry out the other illegal activities

alleged herein. Upon information and belief, Alliance is using the former offices of Maryland PTA located at 5 Central Avenue, Glen Burnie, Maryland 21061 as its headquarters. Upon information and belief, the purported new entity Alliance is a d/b/a for the Maryland Congress of Parents and Teachers, Inc.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to Md. Code Ann., Courts and Judicial Proceedings, § 1-501.

14.     Venue is proper pursuant to Md. Code Ann., Courts and Judicial Proceedings, § 6-201 because the cause of action arose in this county with the Defendants threatening harm and taking actions to harm the almost 200 Local PTAs who are members of the National PTA in Montgomery County, and the Defendants carry on regular business in this county, in communicating with, soliciting memberships and membership dues from, collecting dues from, and sending an invitation for meetings to, the Local PTAs in this county.

## FACTUAL BACKGROUND

### A.  National, State, and Local PTAs Joint Purpose and Structure

15.     The National PTA is a non-profit organization formed to: "(A) promote the welfare of children and youth in home, school, places of worship and throughout the community; (B) raise the standards of home life; (C) advocate for laws that further the education, physical and mental health, welfare, and safety of children and youth; (D) promote the collaboration and engagement of families and educators in the education of children and youth; (E) engage the public in united efforts to secure the physical, mental, emotional, spiritual, and social well-being of all children and youth; and (F) advocate for fiscal responsibility regarding public tax dollars in public

education funding."  National PTA Bylaws, Article II, Section 1, attached at Exhibit A, Affidavit of Sharon Goldblatt, Attachment 31 ("Ex. A-31").

16.    The National PTA includes state and local constituent associations ("State PTAs" and "Local PTAs" respectively) that are "organized under the direct authority of National PTA" to pursue the goals of the National PTA on state and local level.  *Id*. at Article IV, Section 1 ("Constituent associations of the National PTA … include: A. State constituent associations of National PTA that have been established in the 50 states of the United States; … [and] C. Local constituent associations organized under the authority of the state constituent associations."); "Maryland PTA Bylaws, Effective: July 27, 2019" (hereafter "Maryland PTA Bylaws"), Article II, Section 1, attached as Exhibit A, Attachment 25 ("Ex. A-25") ("The purpose or purposes which the corporation will hereafter pursue are: (a) To promote the welfare of children and youth in home, school, places of worship and throughout the community; (b) To raise the standards of home life; (c) To advocate for laws that further the education, physical and mental health, welfare, and safety of children and youth; (d) To promote the collaboration and engagement of families and educators in the education of children and youth; (e) To engage the public in united efforts to secure the physical, mental, emotional, spiritual, and social well-being of all children and youth; and (f) To advocate for fiscal responsibility regarding public tax dollars in public education funding.").

17.    In order to become and remain a constituent association of the National PTA, the State PTAs must meet the requirements established by the National PTA board of directors, agree to and comply with Standards of Affiliation, and be approved by the National PTA board of directors.  Ex. A-31 at Article IV, Section 2.

5

18.     To remain in compliance with the National PTA Standards of Affiliations, state constituent associations, including Maryland PTA, must "timely and fully comply with each of the requirements, and the applicable required indicators, contained in the standards of Affiliation Requirements…; comply with and agree to be bound by each of the procedures Regarding State Constituent Associations in Non-Compliance with the SOA ("Procedures"); timely and fully comply with any policies, procedures or directives related to use of the National PTA Trademarks; and sign and agree to be bound by each of the agreements contained in the Memorandum of Understanding."   National PTA Standards of Affiliation (SOA) Policy Document (hereafter "Standards of Affiliation"), attached at Exhibit A, Attachment 24 ("Ex. A-24").

19.     Maryland PTA signed a Memorandum of Understanding agreeing, among other things, to comply with the National PTA Standards of Affiliation and "operate according to the vision, mission, values, and policies of National PTA" in order for Maryland PTA to maintain its affiliation with National PTA.  Memorandum of Understanding (hereafter "MOU"), dated March 3, 2020, attached at Exhibit A, Attachment 29 ("Ex. A-29").

20.     Among the "Privileges of Affiliation" provided to state constituent associations of National PTA who agree, as did the Maryland PTA, to be bound by the Standards of Affiliation, and "who remain in compliance with the Standards of Affiliation, the Requirements, and the Procedures," is continuing "Affiliation with National PTA-Status as a Chartered Congress." Ex. A-24, p. 1.

21.     Among the "Privileges of Affiliation" provided to state constituent associations of National PTA who agree, as did the Maryland PTA, to be bound by the Standards of Affiliation, and "who remain in compliance with the Standards of Affiliation, the Requirements, and the Procedures" is "[l]icense to use the National PTA trademarks: PTA, PARENT TEACHER

ASSOCIATION, PTSA, PARENT TEACHER STUDENT ASSOCIATION and the related logos in conjunction with the name of the State Constituent Association; license to use the above marks as well as other National PTA marks . . . as permitted by the National PTA policies,  procedures and directives." *Ibid*.

22.     In addition to the Maryland PTA, multiple state constituent associations have entered into similar agreements as did Maryland PTA giving them similar privileges of affiliation with National PTA, including "[l]icense to use the National PTA trademarks: PTA, PARENT TEACHER ASSOCIATION, PTSA, PARENT TEACHER STUDENT ASSOCIATION and the related marks in conjunction with the name of the State Constituent Association; license to use the above marks as well as other National PTA marks . . . as permitted by the National PTA policies, procedures and directives." *See* attached Exhibit C.

23.     Among the "Privileges of Affiliation" provided to state constituent associations of National PTA who agree, as did the Maryland PTA, to be bound by the Standards of Affiliation, and "who remain in compliance with the Standards of Affiliation, the Requirements, and the Procedures" is "[a]uthority to charter new units and/or other constituent associations." Ex. A-29. p. 1.

24.     Specifically with respect to the National PTA Trademarks, pursuant to the Standards of Affiliation, "National PTA is the sole and exclusive owner of the [National] PTA Trademarks" and "National PTA grants state constituent associations a license to use the [National] PTA Trademarks as part of their own names pursuant to the Standards of Affiliation" and "as permitted by the National PTA policies, procedures and directive." Ex. A-24.

25.     The state constituent associations who have entered into similar agreements as did Maryland PTA, including the Standards of Affiliation, giving them similar privileges of affiliation

with National PTA, including "a license to use the [National] PTA Trademarks as part of their own names subject to the terms specified in the Standards of Affiliation, the Procedures, the MOU, and any other policies, procedures or directives related to the use of the National PTA Trademarks" have included as part of their own names the National PTA Trademarks. *See* Ex. C.

26.     Specifically with respect to the National PTA Trademarks, pursuant to the Standards of Affiliation, "State constituent associations will take no action that will diminish the value and goodwill associated with the [National] PTA Trademarks" and "will not register with any governmental authority any name or mark which incorporates the [National] PTA Trademarks or any confusing similar marks."  Ex. A-24, pp. 1-2.

27.     Specifically with respect to the National PTA Trademarks, pursuant to the Standards of Affiliation, "[i]f a state constituent association receives notice from National PTA that its charter has been revoked, the state constituent association shall immediately cease to identify itself as affiliated with PTA, shall cease all use of the [National] PTA Trademarks, and shall take such other steps as directed by the National PTA." *Ibid.*

28.     The right to use the names, Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, is dependent on continuing affiliation with National PTA and continuing compliance with the terms specified in the Standards of Affiliation, the Procedures, the MOU, and any other policies, procedures or directives related to the use of the National PTA Trademarks." *Ibid.*

29.     The right to use the names, Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, is dependent on continuing to be a chartered constituent association of National PTA, as set out in the terms specified in the Standards of Affiliation, the Procedures and the MOU. *Ibid.*

30.     The right to use the names, Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, is dependent on remaining a constituent association of National PTA, as further set out in the Maryland PTA Bylaws, Article I:  "The name of this association is Maryland Congress of Parents and Teachers, Inc., a constituent association of the National Congress of Parents and Teachers" and "[t]he association will be referred to in these bylaws as 'Maryland PTA.'" Ex. A-25.

31.     The right of Maryland  Congress of Parents and Teachers, Inc. and Maryland PTA to continue its operations is dependent on its affiliation with National PTA as a state constituent association and complying with National PTA's policies and bylaws, as further set out in Maryland PTA's Bylaws, Article IV:  "Maryland PTA is a constituent association of National PTA and exists for the purpose of accomplishing, at the state level, the purposes of the National PTA in accordance with its policies" and Maryland PTA has a "responsibility that it shares with National PTA for the implementation of the purposes of National PTA and its obligation to comply with National PTA bylaws."  *Id*. at Article IV.

32.     Maryland PTA Bylaws provide that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership." *Id*. at Article V.

**B.  Maryland PTA's Non-Compliance with Standards of Affiliation, Policies and Procedures**

33.     On March 30, 2020, National PTA informed Maryland PTA that National PTA had received "allegations regarding actions taken by Maryland PTA's Executive Committee and Board of Directors that may impact the compliance status of Maryland PTA and the National PTA Standards of Affiliation."  Letter from L. Boggs to Dr. E. Battle, dated March 30, 2020,

attached at Exhibit A, Attachment 1 ("Ex. A-1"); Ex. A at ¶¶4-6.  National PTA requested various information from Maryland PTA to assess the compliance and standing of Maryland PTA.  *Id*.

34.    On May 20, 2020, after a lack of response from Maryland PTA to National PTA's requests for information, National PTA informed Maryland PTA that "Maryland PTA is out of compliance with the National PTA Standards of Affiliation (SOA) and has been placed in the Probation Phase of Noncompliance."  Letter from L. Boggs to Maryland PTA Board of Directors, dated May 20, 2020, attached at Exhibit A, Attachment 2 ("Ex. A-2");  Ex. A at ¶7.  This action was taken following "numerous complaints from members and leaders of Maryland PTA asking National PTA to intercede on their behalf."  *Id*.  National PTA assigned a support team to assist Maryland PTA in moving back to compliance and required Maryland PTA to develop and submit an Action Plan setting forth how Maryland PTA would work towards regaining compliance status. *Id*.

35.    In the May 20 letter, National PTA reminded Maryland PTA that pursuant to the National PTA Standards of Affiliation Policy, Non-Compliance Procedures, "failure to comply with probation requirements or lack of cooperation and communication with the assigned representative or support team or causing damage to the value and goodwill associated with the [National] PTA Trademark and brand may result in the National PTA terminating the Probation Phase and directing that the state constituent association be moved to the Restructuring or Revocation Phase.  This notification may be made at any time, regardless of whether any specified time period has passed."  *Id*. quoting National PTA SOA at Resource B, Section IV.C.6.

36.    National PTA informed Maryland PTA that it would "remain in the Probation Phase of Noncompliance until the sooner of the following: December 31, 2020 or until compliance with the Standards of Affiliation is achieved or until National PTA informs Maryland

PTA that the Probation Phase has ended." *Id*. Further, National PTA noted that "National PTA's goal is to help address the issues and questions of Maryland PTA members, restore trust to Maryland PTA, and maintain the focus on the PTA mission….It is in everyone's best interests to work together to restore the value and goodwill associated with the PTA name and Trademark in Maryland. Failure to do so will constitute harm to the PTA brand, and harm to both Maryland and National PTAs, which National PTA cannot allow." *Id*.

37.     On May 28, 2020, National PTA received notice that Maryland PTA had retained an attorney, who requested that National PTA suspend the probationary efforts. Their attorney explained in the letter that "Maryland PTA has been advised against meeting or communicating with National PTA with regards to this matter absent the presence of legal counsel." Letter from C. Tucker to L. Boggs, dated May 28, 2020, attached at Exhibit A, Attachment 3 ("Ex. A-3"); Ex. A at  ¶8.

38.     On August 26, 2020, after Maryland PTA failed to comply with the requirements of the Probation Phase, National PTA placed Maryland PTA in the Restructuring Phase of Non-Compliance. Letter from L. Boggs to Maryland PTA Board of Directors, dated August 26, 2020, attached at Exhibit A, Attachment 10 ("Ex. A-10"); Ex. A at ¶¶9-10. Pursuant to the Standards of Affiliation Policy, during the Restructuring Phase, Maryland PTA was prohibited from taking the following actions without National PTA's prior written approval:

> 1. Communicate with the state constituent association's local constituent associations regarding the Restructuring Phase;
> 2. Issue any communication using the PTA Trademarks or brand;
> 3. Issue any other communication that might diminish the value and goodwill associated with the PTA Trademarks or brand; or
> 4. Expend any funds.

Ex. A-24 at Resource B, Section D.

39.     Additionally, during the Restructuring Phase, Maryland PTA was required to:

1. Turn over to the National PTA access to the state constituent association's funds and National PTA shall establish temporary account(s) when requested;
2. Turn over to the National PTA all PTA assets and records including but not limited to physical property, contracts, financial records and instruments, historical records, minutes, access to technology accounts (website, Facebook, etc.); and
3. Take such other reasonable actions as directed by the National PTA."

Ex. A-24 at Resource B, Section E.

40.     National PTA informed Maryland PTA that the Restructuring Phase would remain in place until National PTA notified Maryland PTA that it was concluded.  Ex. A-10.  National PTA continued to provide support and resources to its members in Maryland, the local and council PTAs.  *See* Letter from L. Boggs to Maryland PTA Leaders, dated August 27, 2020, attached at Exhibit A, Attachment 12 ("Ex. A-12").

41.     In September 2020, Maryland PTA filed for a temporary restraining order (TRO), which was issued against National PTA on September 17, 2020.  Temporary Restraining Order, dated September 17, 2020, attached at Exhibit A, Attachment 11 ("Ex. A-11").

42.     National PTA continued to provide limited communication to the local and council PTAs in Maryland until the TRO was lifted on November 9, 2020.  *See*, *e.g.*, Ex. A-12 (Letter from L. Boggs to Maryland PTA Leaders, dated August 27, 2020); Letter from L. Boggs to L. Carrera, dated November 21, 2020, attached at Exhibit A, Attachment 13 ("Ex. A-13").

43.     In November 2020, Maryland PTA's President, Vice President for Advocacy, and Secretary resigned.  Letter from M. Sweat to Maryland PTA, dated November 9, 2020, attached at Exhibit A, Attachment 14 ("Ex. A-14"); Letter from E. Battle to Maryland PTA Board of Directors, dated November 12, 2020, attached at Exhibit A, Attachment 15 ("Ex. A-15");  Ex. A at ¶12.

44.     Four board members remained and they purported to elect from amongst themselves, LaTonja Carrera, to take over as President of Maryland PTA.  Email from L. Carrera to SOA@pta.org, dated November 15, 2020, attached at Exhibit A, Attachment 16 ("Ex. A-16"); Ex. A at ¶12.  Ms. Carrera was the former Vice President for Leadership Development for Maryland PTA.  *Id*.

45.     National PTA continued to work with Maryland PTA in the Restructuring Phase "to help Maryland PTA move into compliance with the National PTA Standards of Affiliation Policy." Ex. A-13 (Letter from L. Boggs to L. Carrera, dated November 21, 2020).  On November 21, 2020, National PTA again reminded Maryland PTA that pursuant to the Standards of Affiliation, National PTA had the "right to end the Restructuring Phase at any time if the National PTA Board of Directors determines that the action of Maryland PTA may diminish the value and goodwill associated with the [National] PTA Trademarks and brand or if Maryland PTA fails to cooperate with the requirements in [the November 21, 2020] letter, which will result in the revocation of the Maryland PTA charter."  *Id*.

46.     In December 2020, National PTA was made aware that Defendant Carrera was facing a criminal charge of "felony Financial Exploitation of an Elderly Person, in violation of D.C. Code § 22-933.01."  Press release from United States Department of Justice dated December 10, 2020, attached at Exhibit A, Attachment 17 ("Ex. A-17"); Ex. A at ¶13.

47.     National PTA's relationship with Maryland PTA and Defendants Carrera and the Maryland PTA Board of Directors deteriorated after Defendant Carrera refused to remove herself from the Maryland PTA bank accounts until the charges were successfully resolved.  Ex. A at ¶¶ 14-15.

13

48.     The final breakdown in communication was when Defendant Carrera, on behalf of the Maryland PTA, sent letters on March 22, 2021, placing four of the seven Maryland council PTAs into inactive status. *See* Letters dated March 22, 2021 from L. Carrera to Baltimore County Council PTA President, Baltimore City Council PTA President, Frederick County Council PTA President, and Montgomery County Council PTA President, attached at Exhibit A, Attachment 18 ("Ex. A-18"); Email from S. Goldblatt to L. Carrera, dated March 22, 2021, attached at Exhibit A, Attachment 19 ("Ex. A-19"); Email from L. Carrera to Maryland Support Team, dated March 22, 2021, attached at Exhibit A, Attachment 20 ("Ex. A-20");  Ex. A at ¶15.

**C.  Revocation of Maryland PTA's Charter**

49.     Following Maryland PTA's repeated failures to come into compliance with its bylaws and the National Standards of Affiliation, despite the numerous attempts and effort exerted by National PTA to assist Maryland PTA for over a year, on March 26, 2021, National PTA revoked the charter of the Maryland PTA.  Ex. A at ¶16; Letter from L. Boggs to Board of Directors of the Maryland PTA, dated March 26, 2021 (hereafter "March 26, 2021 Revocation Letter"), attached at Exhibit A, Attachment 21 ("Ex. A-21").

50.     This was the first revocation of a state constituent association charter in National PTA's history where leadership was in place.  Ex. A at ¶16.

51.     The March 26, 2021 Revocation Letter informed Defendants Carrera and Maryland PTA Board of Directors that the revocation of its charter was "effective immediately."  Ex. A-21.

52.     The March 26, 2021 Revocation Letter further informed Defendants Carrera and Maryland PTA Board of Directors that "[t]he entity currently known as the Maryland PTA must change its name effective immediately" and "[i]t is no longer part of the PTA family."  *Ibid*.

53.    Pursuant to the Standards of Affiliation, immediately upon receipt of notice from National PTA of revocation of a state constituent's charter, a state constituent association shall "cease to identify itself as affiliated with PTA" and "cease all use of the [National] PTA Trademarks."  Ex. A-24.

54.    As a consequence of the March 26, 2021 revocation of its charter with National PTA, Maryland PTA was no longer considered a "constituent association" of National PTA. Ex. A at ¶16; Ex. A-21.

55.    As a consequence of the March 26, 2021 revocation of its charter with National PTA, the license giving the right to use the names, Maryland  Congress of Parents and Teachers, Inc. and Maryland PTA, was terminated. Ex. A-24.

56.    As a consequence of the March 26, 2021 revocation of its charter with National PTA, the license that had been granted to Maryland PTA "to use the National PTA trademarks: PTA, PARENT TEACHER ASSOCIATION, PTSA, PARENT TEACHER STUDENT ASSOCIATION and the related logos in conjunction with the name of the state constituent association" "as well as other National PTA Trademarks" including "as permitted by the National PTA policies, procedures and directives" was terminated. Ex. A-24.

57.    As a consequence of the March 26, 2021 revocation of its charter with National PTA, Defendants Carrera and the Maryland PTA Board of Directors were required to "immediately cease to identify itself as affiliated with PTA" and "cease all use of the [National] PTA Trademarks" and "take such other steps as directed by the National PTA." Ex. A-24.

58.    The March 26, 2021 Revocation Letter further informed Defendants Carrera and Maryland PTA Board of Directors that "[y]ou must cease all public use of the PTA names and

logos immediately and cease representing your corporate entity as an affiliate of National PTA"

and "we must instruct you to cease using the name and logo of the PTA." Ex. A-21.

59.     The requirements set forth in the March 26, 2021 Revocation Letter stating "[t]he

entity currently known as the Maryland PTA must change its name effective immediately" and

"[i]t is no longer part of the PTA family" and "[y]ou must cease all public use of the PTA names

and logos immediately and cease representing your corporate entity as an affiliate of National

PTA" and you must "cease using the name and logo of the PTA," are all required under the terms

and provisions of the Standards of Affiliation, which state that "[i]mmediately upon receipt of

Notice of Revocation from the National PTA" the state constituent association shall "cease to

identify itself as affiliated with PTA" and "cease all use of the [National] PTA Trademarks."

Ex. A-24.

60.     Specifically with respect to the National PTA Trademarks, pursuant to the

Standards of Affiliation, "State constituent associations will take no action that will diminish the

value and goodwill associated with the [National] PTA Trademarks" and "will not register with

any governmental authority any name or mark which incorporates the PTA Trademarks or any

confusing similar marks."  Ex. A-24.

61.     Specifically with respect to the National PTA Trademarks, pursuant to the

Standards of Affiliation, "[i]f a state constituent association receives notice from National PTA

that its charter has been revoked, the state constituent association shall immediately cease to

identify itself as affiliated with PTA, shall cease all use of the [National] PTA Trademarks, and

shall take such other steps as directed by the National PTA."  *Ibid.*

**D.      Board Members of Maryland PTA and Alliance Not Elected By Members**

62.      When National PTA revoked the charter of Maryland PTA on March 26, 2021, none of the Maryland PTA Board members serving as of that date had been elected by the members of the Maryland PTA. Ex. A at ¶¶20-24.

63.      Defendant Carrera, Interim President of Maryland PTA on March 26, 2021, took over the position on November 17, 2020 when she purportedly was elected by the remaining board members after the prior president resigned.  Ex. A at ¶21.  Defendant Carrera was originally elected to the Maryland PTA Board at a special meeting of the executive committee on August 15, 2019.  *Id.*

64.      Defendant Carrera subsequently purportedly became the Vice President for Leadership Development sometime before March 26, 2021.  *Id.*

65.      National PTA was never provided information regarding when or how Defendant Carrera became VP of Leadership Development or her eligibility to serve in that position. *Id.*

66.      Maryland PTA Bylaws require that "[t]he president, president-elect, and vice president for leadership development, shall have served on the Maryland PTA Board of Directors for at least one (1) year, or served as an officer of a council or local PTA for at least one (1) year." Ex. A-25.

67.      Defendant Carrera was not a member of the Maryland PTA Board of Directors on the date of the 2019 Maryland PTA convention. Ex. A at ¶21.

68.      Defendant Carrera purports to be the current President of Alliance d/b/a Maryland PTA.  *Id.*

69.      Quantane Higginbotham served as Vice President of Field Service after being elected by Maryland PTA's Executive Committee on August 15, 2019.

17

70.     Ms. Higginbotham did not meet the qualifications to serve as VP of Field Service at the time of the Executive Board election because she had not served the required one year on the Maryland PTA board of directors prior to taking the position, as was pointed out by National PTA on several occasions, including in the Notice of Probation and action plan. *See* Ex. A at ¶22; Ex. A-2.

71.     Ms. Higginbotham resigned as VP of Field Service and took over as the Vice President for Leadership Development on February 19, 2021 and held that position on March 26, 2021.

72.     Upon information and belief, Ms. Higginbotham acted as Treasurer for Alliance d/b/a Maryland PTA until she resigned as Treasurer on May 5, 2021.

73.     Upon information and belief, Ms. Higginbotham acted as Director for Alliance d/b/a Maryland PTA until she resigned on or about September 30, 2021.

74.     Bruce Butz was initially appointed to the Finance Committee of Maryland PTA on November 25, 2019, for which he was not eligible, by President Battle.  Ex. A at ¶23.

75.     According to Article XI, Section 5(h)(iii) of the Maryland PTA Bylaws, "All members shall be selected from the Maryland PTA board of directors."  Ex. A-25.

76.     Bruce Butz was then appointed to the Maryland PTA Board on February 29, 2020 during a special meeting called to remove the treasurer by a motion to "appoint Bruce Butz as treasurer to assist the President until one can be elected."  Draft Meeting Minutes of Maryland PTA Special Board of Directors Meeting, February 29, 2020, attached at Exhibit A, Attachment 26 ("Ex. A-26").

77.     The appointment of Bruce Butz to the Maryland PTA Board on February 29, 2020 was not in order, as it was not included in the notice for the special meeting.  Ex. A at  ¶23.

78.     Mr. Butz purported to serve as treasurer for the Maryland PTA until he resigned on March 26, 2021.  Email from B. Butz to L. Boggs, dated March 26, 2021, attached at Exhibit A, Attachment 27 ("Ex. A-27").

79.     Upon information and belief, Dr. Fogg is associated with the Alliance d/ba/ Maryland PTA, and previously served as Diversity and Inclusion Chair for Maryland PTA and acts as the current Vice President for Diversity and Inclusion for Alliance d/b/a Maryland PTA.

80.     Upon information and belief, Tikeetha Thomas acts as the current Director and Secretary for Alliance d/b/a Maryland PTA.

81.     Upon information and belief, Jhamika Rodgers acts as the current Treasurer for Alliance d/b/a Maryland PTA.

**E.     Defendant Carrera's March 26, 2021 Email to Local PTAs**

82.     Following National PTA's revocation of the Maryland PTA charter, on March 26, 2021, Defendant Carrera, on behalf of Maryland PTA sent an email to the Maryland PTA distribution list, which included all Local PTAs, filled with misinformation and mischaracterizations, in which Defendant Carrera stated:

> [e]arlier today, National PTA took the unwarranted and aggressive action of revoking its affiliation agreement with the Maryland Congress of Parents and Teachers, Inc.  I personally believe this action is retaliation against my revelation of a plot of individuals affiliated with National PTA attempting to mismanage and bankrupt our organization.  Do not fret- we are not going anywhere….There are still details to be sorted out, but during this time of transition, I can promise you two things: 1) Your information will remain private.  During this transition period, I commit to you that we will not voluntarily give any of your personal or financial information to National PTA.  2) We are refocusing our scope.  The National PTA was very limited only to PTA groups. My vision for our organization is to serve groups of all walks of life, including athletic boosters and other school-based nonprofits.  For any PTA group that is tired of the drama and bureaucracy of National PTA, please fill out this form if you are interested in disaffiliating from PTA and remaining with our independent structure, possibly as a PTA.

Email from L. Carrera, dated March 26, 2021, attached at Exhibit A, Attachment 22 ("Ex. A-22");
Ex. A at ¶17.

83.     The statement by Defendant Carrera that National PTA and/or any individual(s)
affiliated with National PTA are mismanaging and/or attempting to bankrupt Maryland PTA is
false.

84.     The statement that National PTA misused Local PTAs' membership dues and/or
failed to use membership dues for the benefit of the students, parents and teachers in Maryland is
false.

**F.      Change of Maryland PTA Resident Agent to Defendant Carrera**

85.     On March 27, 2021, a change of resident agent name and address was filed with
Maryland State Department of Assessments & Taxation on behalf of Maryland Congress of
Parents and Teachers, Inc., changing the resident agent to Dr. Latonja Carrera.  Resolution to
Change Principal Office or Resident Agent, filed March 27, 2021, attached at Exhibit A,
Attachment 23 ("Ex. A-23").

**G.      Invalid Attempt to Amend Maryland PTA Bylaws**

86.     On March 27, 2021, Defendants Carrera and two members of the Board of Directors
of the Maryland PTA invalidly and unlawfully purported to amend the Maryland PTA Bylaws,
without following the proper procedures and requirements of the Maryland PTA Bylaws for
amending them.  *See* Maryland PTA Bylaws, Ex. A-25.

87.     The failure of Defendants Carrera and the Board of Directors of the Maryland PTA
to follow the proper procedures and requirements of the Maryland PTA Bylaws for amending
them made the purported amendments invalid and ineffective.

88.    On March 27, 2021, three officers of the Maryland PTA Board of Directors, Defendant Carrera acting as "President," Tikeetha Thomas, acting as "Secretary," and Quantane Higginbotham, acting as "VP for Field Services," sent emails to Donald Garrett, a Parliamentarian for the Maryland PTA, consenting to the new bylaws.  *See* Exhibit D, attached hereto.

89.    Each of these emails were a response to Mr. Garrett's March 27, 2021 email requesting that they send a response to him by email indicating that they consent to a resolution purportedly adopting amendments to the Maryland PTA Bylaws, purporting to be "Effective March  27, 2021." *See*  "Resolution Revising the Maryland Congress of Parents and Teachers, Inc. Bylaws" (hereafter "Resolution"), attached hereto as Exhibit E, and "Maryland Congress of Parents and Teachers, Inc. Bylaws, Effective March 27, 2021" (hereafter "Purported Amended Bylaws"), attached hereto as Exhibit F.

90.    This email process used to purportedly amend the Maryland PTA Bylaws failed to comply with the procedures and requirements set forth in the Maryland PTA Bylaws to amend them.

91.    The failure to properly comply with the Maryland PTA Bylaws procedures and requirements to amend the Maryland PTA Bylaws made the Purported Amended Bylaws invalid and not effective.

92.    The Resolution stated only part of the requirements to amend the Maryland PTA Bylaws contained in the Maryland PTA Bylaws, specifically that the Maryland PTA Bylaws "can be amended at a membership meeting with appropriate previous notice." Ex. E.

93.    The process engaged in to purportedly amend the Maryland PTA Bylaws by email "consents" from three officers of the Maryland PTA Board of Directors sent to Donald Garrett,

the Parliamentarian, on March 27, 2021, did not comply with the "membership meeting" requirement of the Maryland PTA Bylaws.  *See* Ex. A-25, Article XIX.

94.     The process engaged in to purportedly amend the Maryland PTA Bylaws by email "consents" from three officers of the Maryland PTA Board of Directors sent to Donald Garrett, the Parliamentarian, on March 27, 2021, also did not comply with the "appropriate previous notice" requirement of the Maryland PTA  Bylaws. *Ibid*.

95.     The process engaged in to purportedly amend the Maryland PTA Bylaws by email "consents" from three officers of the Maryland PTA Board of Directors sent to Donald Garrett, the Parliamentarian, on March 27, 2021, also failed to comply with multiple other requirements of the Maryland PTA Bylaws to amend them. *Ibid*.

96.     The Resolution purporting to adopt the Purported Amended Bylaws also contained multiple incorrect and misleading statements of fact and incorrect assertions of law, including misleading and incorrect descriptions and assertions and misquoting relating to Maryland Corporate law provisions and their meaning and applicability.

97.     The Maryland PTA Bylaws required, as a condition of amending them, that they "be amended by a two-thirds (2/3) vote of those present and voting at any annual meeting," in addition to other requirements, including that written rationales be submitted to the bylaws committee for study and recommendation and the bylaws committee send a report to the board of directors at least 21 days prior to the board of directors meeting at which they are to be considered for recommendation, and that the amendments recommended by the board of directors be posted electronically and sent with the call to the annual meeting at least 60 days prior to the start of the annual meeting.  Ex. A-25,  Article XIX.

98.     The process engaged in to purportedly amend the Maryland PTA Bylaws on March 27, 2021 did not comply with the Maryland PTA Bylaws requirements that they "be amended by a two-thirds (2/3) vote of those present and voting at any annual meeting."

99.     No vote was taken at an annual meeting on any amendments to the bylaws, nor was any vote taken to amend the bylaws by a two-thirds (2/3) vote of those present and voting.

100.    The Maryland PTA Bylaws required, as a condition of amending them, that "[e]ach proposed amendment with rationale is submitted in writing through the Maryland PTA office to the bylaws committee for study and recommendation, by a date determined by the bylaws committee." Ex. A-25, Article XIX.

101.    The process engaged in to purportedly amend the Maryland PTA Bylaws on March 27, 2021 did not comply with the Maryland PTA Bylaws requirements that "[e]ach proposed amendment with rationale is submitted in writing through the Maryland PTA office to the bylaws committee for study and recommendation, by a date determined by the bylaws committee."

102.    No written rationale for each proposed amendment was submitted in writing through the Maryland PTA office to the bylaws committee for study and recommendation."

103.    The Maryland PTA Bylaws required, as a condition of amending the bylaws, that "[t]he bylaws committee report regarding proposed bylaws amendments is given to the board of directors at least twenty-one (21) days prior to the board of directors meeting at which they are to be considered for recommendation." Ex. A-25, Article XIX.

104.    The process engaged in to purportedly amend the Maryland PTA Bylaws on March 27, 2021 did not comply with the Maryland PTA Bylaws requirement that "[t]he bylaws committee report regarding proposed bylaws amendments is given to the board of directors at

23

least twenty-one (21) days prior to the board of directors meeting at which they are to be considered for recommendation." *Id.*

105. No bylaws committee report regarding proposed bylaws amendments was given to the board of directors at least twenty-one (21) days prior to the board of directors meeting at which the proposed bylaws were considered for recommendation.

106. The Maryland PTA Bylaws required, as conditions of amending them, that "[a]mendments recommended by the board of directors [be] posted electronically and sent with the call to the annual meeting at least sixty (60) days prior to the start of the annual meeting." *Id*.

107. The process engaged in to purportedly amend the Maryland PTA Bylaws on March 27, 2021 did not comply with the Maryland PTA Bylaws requirements that "[a]mendments recommended by the board of directors [be] posted electronically and sent with the call to the annual meeting at least sixty (60) days prior to the start of the annual meeting."

108. No amendments recommended by the board of directors were posted electronically and sent with the call to the annual meeting at least sixty (60) days prior to the start of the annual meeting.

109. The Maryland PTA Bylaws required that the "[u]pdated bylaws shall be posted on the Maryland PTA website, plus other electronic means as the board of directors may designate, within sixty (60) days following the annual meeting at which they were changed."

110. Defendants Carrera and the Board of Directors of the Maryland PTA did not comply with the requirement of the Maryland PTA Bylaws on March 27, 2021 that the "[u]pdated bylaws shall be posted on the Maryland PTA website, plus other electronic means as the board of directors may designate, within sixty (60) days following the annual meeting at which they were changed." *Id*.

111.   After more than 60 days passed after the purported amendment of the Maryland PTA Bylaws on March 27, 2021, Defendants Carrera and the Board of Directors of the Maryland PTA had failed to post the purported amendments on the Maryland PTA website.

112.   The Resolution stated that as a consequence of the March 26, 2021 Letter from Ms. Boggs of the National PTA revoking its charter, the Maryland PTA "has no members." Ex. E.

113.   The statement in the Resolution that as a consequence of the March 26, 2021 Letter from Ms. Boggs of the National PTA revoking its charter, the Maryland PTA "has no members," was and is incorrect.

114.   It is not correct that the Maryland PTA had no members as of the March 26, 2021 revocation of its charter with National PTA.

115.   It is not correct that the Maryland PTA had no members as a consequence of anything stated in the March 26, 2021 Revocation Letter.

116.   On the date of the Resolution, March 27, 2021, approximately 810 Local PTAs, PTSAs and Council PTAs were members of the Maryland Congress of Parents and Teachers, Inc., in addition to thousands of individuals who are members of local PTAs and PTSAs, and who by virtue of the fact that they are "a member of a local PTA" are "a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership." Ex. A-25, Article V.

117.   The revocation by the National PTA of its charter with Maryland PTA on March 26, 2021 did not change the membership of Maryland PTA, which continued to have Local PTAs, PTSAs and Council PTAs, as well as individuals, as its members.

118.   Subsequent to the revocation by the National PTA of its charter with Maryland PTA on March 26, 2021, Defendants have made statements and taken actions purporting to be

25

representing and acting in the interest of the members of Maryland Congress of Parents and Teachers, Inc.

119.   Since the revocation by the National PTA of its charter with Maryland PTA on March 26, 2021, Defendants have made statements and taken actions purporting to have responsibilities for the members of Maryland Congress of Parents and Teachers, Inc.

120.   The Resolution stated that because Maryland PTA has no members, MD Code, Corporations and Associations, § 5-204, permitted the Maryland PTA Board of Directors to exercise the rights and powers of the members.

121.   The Resolution statement that MD Code, Corporations and Associations, § 5-204, could be invoked to permit the Maryland PTA Board of Directors to exercise the rights and powers of the members was and is incorrect.

122.   Defendants proceeding to amend the Maryland PTA Bylaws based on the assertion that the Maryland PTA "has no members," and relying on the authority of MD Code, Corporations and Associations, § 5-204, to not hold a vote of the Maryland PTA members but only a vote by email consent on March 27, 2021 of the three officers of the Board of Directors was and is incorrect, making the purported amendments invalid.

123.   The Resolution further stated that "MD Code, Corporations and Associations, § 2-505, states, 'any action required or permitted to be taken at a meeting of the [members] may be taken without a meeting if a unanimous consent … [is] provided in writing or by electronic transmission by each member entitled to vote on the matter.'" Ex. E.

124.   The Resolution statement that "MD Code, Corporations and Associations, § 2-505, states 'any action required or permitted to be taken at a meeting of the [members] may be taken

without a meeting if a unanimous consent … [is] provided in writing or by electronic transmission by each member entitled to vote on the matter," was and is incorrect.

125.   MD Code, Corporations and Associations, § 2-505, makes no reference to "members" or "each member," as improperly stated and misquoted in the Resolution. *See* MD Code, Corporations and Associations, § 2-505, attached hereto as Exhibit G.

126.   MD Code, Corporations and Associations, § 2-505, makes reference only to "stockholders" and "each stockholder." *Id*.

127.   MD Code, Corporations and Associations, § 2-505, is not applicable to an entity that does not have stockholders.

128.   Defendants proceeding to amend the Maryland PTA Bylaws on the basis that "MD Code, Corporations and Associations, § 2-505, states 'any action required or permitted to be taken at a meeting of the [members] may be taken without a meeting if a unanimous consent … [is] provided in writing or by electronic transmission by each member entitled to vote on the matter," was and is incorrect, making the purported amendments invalid.

129.   MD Code, Corporations and Associations, § 2-505, could not be validly relied upon by Defendants to avoid the Maryland PTA bylaws requirement of "a two-thirds (2/3) vote of those present and voting at any annual meeting" to amend the bylaws.

130.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the requirements of MD Code, Corporations and Associations, § 2-505, because that provision applies only to organizations with stockholders.

131.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the requirements

of MD Code, Corporations and Associations, § 2-505, because Maryland PTA is not a stockholder organization, but rather a constituent association with members. *E.g.*, Ex. A-25, Article I, Article V.

132.   The Maryland PTA Bylaws state that the "Maryland Congress of Parents and Teachers, Inc." is "a constituent association of the National Congress of Parents and Teachers." Ex. A-25, Article I.

133.   The Maryland PTA Bylaws state that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership." *Id.* at Article V.

134.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the requirements of MD Code, Corporations and Associations, § 2-505.

135.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian was not valid or effective to amend the bylaws under the Maryland PTA Bylaws.

136.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the Maryland PTA Bylaws requirement of "a two-thirds (2/3) vote of those present and voting at any annual meeting."

137.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the Maryland PTA Bylaws requirement of the vote "of those present and voting at any annual meeting."

138.   As set forth in the Maryland PTA Bylaws, the "annual meeting shall be held in conjunction with the annual convention" and the membership year runs from "July 1 through June 30 with membership in each year extended to September 30 to provide continuity to conduct PTA business." Article V, Section 4.  The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the Maryland PTA Bylaws requirement of the vote occurring "at any annual meeting."

139.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the Maryland PTA Bylaws requirement that "[e]ach proposed amendment with rationale is submitted in writing through the Maryland PTA office to the bylaws committee for study and recommendation, by a date determined by the bylaws committee" prior to "a two-thirds (2/3) vote of those present and voting at any annual meeting."

140.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the Maryland PTA Bylaws requirement that "[t]he bylaws committee report regarding proposed bylaws amendments is given to the board of directors at least twenty-one (21) days prior to the board of directors meeting at which they are to be considered for recommendation."

141.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the Maryland PTA Bylaws requirement that "[a]mendments recommended by the board of directors [be] posted electronically and sent with the call to the annual meeting at least sixty (60) days prior to the start of the annual meeting."

142.   The vote of only the three officers of the Board of Directors of the Maryland PTA on March 27, 2021 via email "consents" sent to the Parliamentarian did not meet the requirement of MD Code, Corporations and Associations, § 2-505, that "any consent authorized by this section shall be provided to the corporation by delivery to its principal office in the State, its resident agent, or the officer or agent of the corporation that maintains, or causes to be maintained on behalf of the corporation, the records in which proceedings of minutes of stockholder meetings are recorded."

**H.     Defendants' Threats, Intimidation and Misleading Information**

143.   On May 10, 2021, Defendants held a virtual meeting via Zoom for Local PTAs advertised as a "New Beginning Introduction Meeting" (hereafter "Virtual Meeting"). Ex. A at ¶25; Emails from local and council PTA leaders to National PTA, attached at Exhibit A, Attachment 28 Ex. ("A-28").

144.   During the Virtual Meeting, Defendant Carrera made the following unsupported assertions and threats: (1) Maryland Congress of Parents and Teachers' charter was not revoked; (2) Alliance of Maryland is still operating in the space of Maryland PTA and Local PTAs can join Alliance at various membership levels; (3) Local PTAs that joined Alliance would no longer be affiliated with National PTA; (4) Local PTAs that joined Alliance would keep their tax exempt status through Alliance; (5) Local PTAs that decided not to join Alliance would have their charter revoked per the Maryland PTA Bylaws; (6) Local PTAs that decided not to join Alliance would lose their tax exempt status as well as their current EIN; (7) Local PTAs that decided not to join Alliance would not be able to use their current names going forward; and (8) Alliance would take the assets, including all bank account funds, for Local PTAs that decided not to join Alliance. Ex. A-28; Ex. A at ¶¶26-27.

145.   During the Virtual Meeting, Local PTAs were informed that they had until June 15, 2021 to decide to join Alliance and if no response was received by that date, Alliance would assume the non-response indicated that the Local PTA had decided not to join Alliance. Ex. A-28; Ex. A at ¶¶26-27.

146.   Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Meeting that Alliance is a d/b/a for Maryland Congress of Parents and Teachers, Inc.

147.   Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Meeting that Defendants Carrera and two officers of Maryland Congress of Parents and Teachers, Inc. had purportedly amended the Maryland Congress of Parents and Teachers, Inc. bylaws on March  27, 2021, by email consent.

148.   Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Launch that Defendants Carrera and Alliance and/or the Maryland Congress of Parents and Teachers, Inc. were operating under purported amended bylaws.

149.   Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Meeting that Defendants Carrera and Alliance and/or the Maryland Congress of Parents and Teachers, Inc. were purportedly operating under new bylaws for the Maryland Congress of Parents and Teachers, Inc. that removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

150.   Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Meeting that purported new bylaws for Alliance and/or the Maryland Congress of Parents and Teachers, Inc. further provide for "subordinate organizations" to be "Affiliates," and permits the Board of Directors "in its sole discretion to dissolve the Affiliate" and "receive its assets," including the funds in its bank account.

151.   The May 10, 2021 Virtual Meeting caused much concern, confusion, and panic among Local PTAs (Ex. A at ¶28), including upon information and belief confusion as to the origin, affiliation and identity of the entities referenced in the Virtual Meeting invitation and during the Virtual Meeting.

152.   The threats that Local PTAs could lose their funds and tax exempt status if they did not leave National PTA and join Alliance, have caused harm to Local PTAs.  Ex. A at ¶29. Local PTAs' funding primarily comes from (1) membership dues paid by individuals who join the Local PTA unit, (2) charitable donations from individuals and businesses to the Local PTA unit, and (3) grants awarded to the Local PTA unit.  All of these funds are given to the Local PTA units with the understanding that the Local PTA unit is a member in good standing with National PTA and furthering the stated purposes of the Local PTA and National PTA.  Local PTAs spend their funds on items and services that further the stated charitable goals set forth in the Local PTA units' bylaws, including

   a. [t]o promote the welfare of children and youth in home, school, places of worship and throughout the community,
   b. [t]o raise the standards of home life,
   c. [t]o advocate for laws that further the education, physical and mental health, welfare, and safety of children and youth,
   d. [t]o promote the collaboration and engagement of families and educators in the education of children and youth,
   e. [t]o engage the public in united efforts to secure the physical, mental, emotional, spiritual, and social well-being of all children and youth; and

f.   [t]o advocate for fiscal responsibility regarding public tax dollars in public education funding.

Ex. A-30 at Article II, Section 1.

153.   To avoid losing the precious funds which Local PTAs have raised with the purpose to further the stated charitable goals set forth in the Local PTA units' bylaws, several Local PTAs have tried to purchase items for their school and PTA-supported activities quickly before the June 15th "deadline" set by Defendant Carrera during the May 10th meeting.  Ex. A-28; Ex. A at ¶29.

154.   The threats made by Defendant Carrera and others during the May 10 Virtual Meeting if Local PTAs did not join Alliance by June 15 and the actions taken by the Alliance, including its board members, have harmed and will harm Local PTAs in the following ways:

a.   The loss of the membership dues local PTAs forwarded by accepted procedure to Maryland PTA, expecting the state portion to be used for the health, education, and welfare of the children of Maryland, according to the PTA Purposes stated in every set of local bylaws, and the national portion to be forwarded to National PTA. Ex. A at ¶¶29, 31; *see also* Ex. A-30; Ex. A-31.   Some local PTAs have asked, unsuccessfully, for a refund after the revocation of the Maryland PTA charter was announced.  Ex. A at ¶29.  Local PTAs are upset that dues they paid prior to the revocation were not submitted to National PTA and are now being used to fund a new non-PTA organization and to pay employees who no longer work for PTA.  Ex. A at ¶32.

b.   The threatened loss of local PTAs' nonprofit status. Ex. A at ¶29. Maintaining nonprofit status is critical for local PTAs to be able to fundraise so that they are able to further the charitable purposes as required in their bylaws.  *Id*.; *see also* Ex. A-30.

33

c. The threatened loss of local PTAs' EIN and use of their name. The loss of EIN and name would prevent local PTAs from operating and furthering the charitable purposes as required in their bylaws. *Id*.

d. The threatened forfeiture of local PTAs' property and money. Ex. A at ¶29. One email from a local PTA leader describes the concerns very succinctly "… this is very concerning to me that PTAs who've worked very hard to raise, and maintain their funds will be required to turn it over to an organization who has proven to not be trustworthy, among other things." Ex. A-28. Another email asks, " … why there is a threat of embezzlement being levied against us by the mdpta," since they were told they could not spend down their funds and use them for the benefit of the students and teachers for which the monies were raised. *Id*.

155. Defendants set a deadline of June 15 for the Local PTAs to contact them, and the threat is that they will contact the IRS and remove any PTA from the group exemption, resulting in a loss of identity, nonprofit status, and, potentially, their faith in National PTA. Ex. A at ¶¶29, 32.

156. June is a busy time for Local PTAs as the school year is ending, budgets are closing, and board membership is turning over. *Id*.

157. The 2020-2021 school year has been particularly difficult for Local PTAs trying to operate and assist students during the pandemic. *Id*.

158. The June 15 deadline has caused much panic, stress, and confusion for local PTAs that are all run by unpaid volunteers, most of whom are parents of school-aged children. *Id*.

**I.    Filing of Lawsuit and Entry of Consent Order June 21, 2021**

159.   On June 14, 2021, Plaintiff filed the instant action and a motion for a temporary restraining order to prevent Defendants from carrying out their threatened actions.

160.   In response to Plaintiff's motion for a temporary restraining order, Defendant Carrera wrote an email to the Court on June 14, 2021 and appeared in a Hearing before the Court via telephone on June 14, 2021, and led the Court and counsel for Plaintiff to believe that she was not operating as the Maryland Congress for Parents and Teachers, Inc., but instead had formed a new entity with new bylaws. *See* June 14, 2021 email from LaTonya Carrera, attached hereto as Exhibit H; June 14, 2021 Hearing Transcript, attached hereto as Exhibit I; June 15, 2021 Hearing Transcript, attached hereto as Exhibit J;  January 6, 2022 Hearing Transcript Excerpt, pp. 115-133, attached hereto as Exhibit K.

161.   Neither in the June 14, 2021 email that Defendant Carrera had sent to the Court, nor during the June 14, 2021 telephone Hearing, in response to the motion for a temporary restraining, order did Defendant Carrera inform the Court or counsel that Alliance is a d/b/a for Maryland Congress of Parents and Teachers, Inc.

162.   On June 15, 2021, the parties agreed to a Consent Order to resolve the temporary restraining order motion, which Consent Order was signed by the Honorable David W. Lease and entered on the docket on June 21, 2021.  June 21, 2021 Consent Order ("Consent Order"), attached hereto as Exhibit L.

163.   Pursuant to the terms of the Consent Order:

"Defendants shall be enjoined from taking any action from:

(i)      operating under the Maryland PTA bylaws;

(ii)     seizing or attempting to seize, freezing or attempting to freeze, or otherwise taking control or attempting to take control of Local PTAs' funds and/or bank account without Local PTAs' consent;

(iii)    withdrawing charters of Local PTAs;

35

(iv)    seeking to present, or otherwise acting to prevent, Local PTAs from using their current names without the Local PTAs' consent;

(v)    for a period of thirty (30) days, seeking, or otherwise causing, the Internal Revenue Service ("IRS") to revoke Local PTAs' 501(c)(3) status or EINs without Local PTAs' consent, with counsel for Parties continuing in communications in good faith to attempt to resolve the issue; and

(vi)    collecting or seeking to collect any payments due to the National PTA."

**J.    Defendants' Continuing Threats,  Intimidation and Misleading Information**

**i.    July 24, 2021 Virtual Launch**

164.    On July 24, 2021, Defendant Carrera and others held a virtual launch event promoting Alliance (hereafter "Virtual Launch").  A copy of the virtual launch invitation is attached hereto as Exhibit M; a copy of the agenda for the virtual launch event is attached hereto as Exhibit N.

165.    Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Launch that Alliance is a d/b/a for Maryland Congress of Parents and Teachers, Inc.

166.    Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Launch that Defendants Carrera and two officers of the Maryland Congress of Parents and Teachers, Inc. purportedly amended the Maryland PTA Bylaws on March 27, 2021, by email consent.

167.    Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Launch that Defendants Carrera and Alliance and/or the Maryland Congress of Parents and Teachers, Inc. were operating under purported amended bylaws.

168.    Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Launch that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. removed the Maryland PTA Bylaws provision stating that "[e]very individual

36

who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state that it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

169.   Upon information and belief, Local PTAs were not informed in advance of or during the Virtual Launch that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. provide for "subordinate organizations" to be "Affiliates," and permits the Board of Directors "in its sole discretion to dissolve the Affiliate" and "receive its assets," including the funds in its bank account.

170.   Upon information and belief, the July 24, 2021 Virtual Launch caused much concern and confusion among Local PTAs, including confusion as to the origin, affiliation and identity of the launching entity referenced in the invitation and during the Virtual Launch meeting.

### ii.      August 4, 2021 Dissolution Threat

171.   On August 4, 2021, a Local PTA notified Defendant Carrera that it did not want to join Alliance.  In response, Defendant Carrera sent an email regarding the "[d]issolution process" to the Local PTA that did not want to join Alliance.  A copy of the August 4 email from Defendant Carrera to the local chapter is attached hereto as Exhibit O (hereafter "August 4 email").

172.   In the August 4 email response, Defendant Carrera stated that she was "saddened to see [the Local PTA] leave Maryland Congress of Parents and Teachers Inc."  The email from Defendant Carrera further instructed the Local PTA to provide "[a]ll of the books," "[a]ll Financial records," "[a]ll Bank Records," and "Bank Statement from 2018 to current."  *Ibid*.  The signature line of the email identifies Defendant Carrera as "President of Maryland Congress of

Parents and Teacher, Inc." and the email is labeled as being sent from "President-Maryland Congress of Parents and Teachers Inc." *Ibid*.

173.   Upon information and belief, the Local PTA was not informed in writing or in any other communication relating to the August 4 email that Alliance is a d/b/a for the Maryland Congress of Parents and Teachers, Inc.

174.   Upon information and belief, the Local PTA was not informed in writing or in any other communication relating to the August 4 email that Defendants Carrera and two officers of the Maryland Congress of Parents and Teachers, Inc. had purportedly amended the Maryland PTA Bylaws on March  27, 2021, by email consent.

175.   Upon information and belief, the Local PTA was not informed in writing or in any other communication relating to the August 4 email that Defendants Carrera and Alliance and/or the Maryland Congress of Parents and Teachers, Inc. were operating under purported amended bylaws.

176.   Upon information and belief, the Local PTA was not informed in writing or in any other communication relating to the August 4 email that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state that it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

177.   Upon information and belief, the Local PTA was not informed in writing or in any other communication relating to the August 4 email that purported amended bylaws for the

38

Maryland Congress of Parents and Teachers, Inc. provide for "subordinate organizations" to be "Affiliates," and permits the Board of Directors "in its sole discretion to dissolve the Affiliate" and "receive its assets," including the funds in its bank account.

178.   Upon information and belief, the August 4 email caused much concern and confusion to the Local PTA, including confusion as to the origin, identity and affiliation of the entity sending the August 4 email.

### iii.   August 12, 2021 Request for Return of Funds

179.   On August 12, 2021, an officer for a new Local PTSA formed in Maryland spoke with Defendant Carrera regarding obtaining an EIN for the new PTSA.  *See* Affidavit of Briana Sanders, attached hereto as Exhibit P, at ¶8.  Defendant Carrera provided the officer with the new EIN and informed the officer that Defendant Carrera would forward to the Local PTSA a copy of the Group Exemption letter once it is sent to the IRS notifying them that the new PTSA was covered by the 501(c)(3) group tax exemption held by the Maryland Congress of Parents and Teachers, Inc.  *Ibid*.

180.   The officer, on behalf of the new Local PTSA, also requested from Defendant Carrera a return of funds Maryland PTA had taken the prior year pending reinstatement of the local PTSA by Maryland PTA with a promise that the funds would be returned upon the local unit's reinstatement with Maryland PTA.  Ex. P, Sanders Aff. at ¶9.  To date, the funds have not been returned.  *Ibid*.

181.   Upon information and belief, the Local PTSA was not informed in writing or in any other communication relating to the August 12 communication that Alliance is a d/b/a for the Maryland Congress of Parents and Teachers, Inc.

182.   Upon information and belief, the Local PTSA was not informed in writing or in any other communication relating to the August 12 communication that Defendants Carrera and two officers of the Maryland Congress of Parents and Teachers, Inc. purportedly amended the Maryland PTA Bylaws on March 27, 2021, by email consent.

183.   Upon information and belief, the Local PTSA was not informed in writing or in any other communication relating to the August 12 communication that Defendants Carrera and Alliance and/or the Maryland Congress of Parents and Teachers, Inc. were operating under purported amended bylaws.

184.   Upon information and belief, the Local PTSA was not informed in writing or in any other communication relating to the August 12 communication that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state that it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

185.   Upon information and belief, the Local PTA was not informed in writing or in any other communication relating to the August 12 communication that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. provide for "subordinate organizations" to be "Affiliates," and permits the Board of Directors "in its sole discretion to dissolve the Affiliate" and "receive its assets," including the funds in its bank account.

186.   Upon information and belief, the August 12 communication caused much concern and confusion to the Local PTA, including confusion as to the origin, identity and affiliation of the entity involved in the August 12 communication.

### iv.   September 6, 2021 Letter Soliciting Local PTAs to Continue Membership in Maryland PTA

187.   On September 6, 2021, Defendant Carrera sent an eleven (11) page letter to the Local PTAs (the "September 6 Letter").  A copy of the September 6, 2021 letter from Defendant Carrera is attached as Attachment B to the Affidavit of Wayne R. Bauman ("Bauman Aff."), attached hereto as Exhibit Q.

188.   In the September 6 Letter, Defendant Carrera addresses the letter "Dear Maryland Congress of Parents and Teachers Chapter Members," and Defendant Carrera represents that she is writing to the Local PTAs in her role as the "President of Maryland Congress of Parents and Teachers Inc." and on behalf of the "current Board members."  *Id.* at 1.

189.   Each page of the September 6 Letter, except page 10, is prominently imprinted with the "Maryland Congress of Parents and Teachers Inc." logo with banner, the Maryland Congress of Parents and Teachers, Inc. office address in Glen Burnie, Maryland, the Email: "contactus@mdpta.org" and the website address "www.mdpta.org."

190.   National PTA received a copy of the September 6 Letter from several Local PTAs. *See* Bauman Aff. at ¶4.  Local PTAs expressed confusion and concern to National PTA about the threats contained in the September 6 Letter.  *Id*. at ¶7.  The September 6 Letter is also posted on the website for Maryland Congress of Parents and Teachers, Inc. at www.mppta.org/chapter-information/ .

191.   The September 6 Letter sets forth Defendants' position on "(1) What the disaffiliation with National PTA means; (2) How does this affect your Chapter; (3) MCPTS, Inc.'s

41

Motto, Mission; (4) Federal, State and Maryland Congress of Parents and Teachers Inc.' requirements for Chapters (5) Membership."  Ex. Q, Att. B at 1.

192.   In the September 6 Letter, Defendant Carrera stated that "[National PTA's disaffiliation] doesn't affect your Chapters at all.  Maryland Congress of Parents and Teachers Inc. created or established the Chapters within the State of Maryland to facilitate the administration of the affairs of Maryland Congress of Parents and Teachers Inc. and to carry out its programs and visions set in place. Maryland Congress of Parents and Teachers Inc. also formatted the actual template for the Bylaws and Articles of Incorporations of all subordinate chapters." *Id.* at 2.

193.   Defendant Carrera's September 6 Letter to the Local PTAs solicited and attempted to collect dues for continued membership in Maryland Congress of Parents and Teachers, Inc. from the Local PTAs.  *See id*. at 5-7, 10-11.

194.   In the September 6 Letter, Defendant Carrera stated that "[t]he membership dues tiers are attached to this letter…Chapters will be responsible for submitting their approved budgets, and Officers Lists and Membership dues payment." *Id.* at 5-6.

195.   Attached as the last page of the September 6 Letter is a document titled, "Maryland Congress of Parents & Teachers Inc. Membership Form," which has the "Maryland Congress of Parents and Teachers" logo with banner, and provides for the "Chapter" to respond: "Our Chapter wishes to continue our Chapter Membership with Maryland Congress of Parents and Teachers, Inc." and to check its choice of  "Chapter Membership Package"  from among various membership levels, "Individual," "Basic," "Bronze," "Silver," "Gold," Platinum" and "Principals Parent Advisory Council."  *Id*. at 11.

196.    The payments required for the various "Membership Levels" is found at the preceding page of the September 6 Letter.  *Id*. at 10.

197.    The last page of the September 6 Letter, which is the document titled, "Maryland Congress of Parents & Teachers Inc. Membership Form, provides for an alternate response:  "Our Chapter  does not wish to continue our Chapter Membership with Maryland Congress of Parents and Teachers Inc."   For that response, the document further states:    "Please schedule an appointment to start the dissolution process that is required using the following link: calendly.com/mcptpresident."  *Id*. at 11.

198.    In the September 6 Letter, Defendant Carrera threatened Local PTAs "that any Chapter of Maryland Congress of Parents and Teachers Inc., that has not paid their current dues and/or become compliant … will be reported … as not being part of the Maryland Congress of Parents and Teachers 501(c)3 Group Exemption as stated with the IRS." *Id.* at 7.

199.    In the September 6 Letter, Defendant Carrera threatened to interfere with Local PTAs' tax exempt status or EIN on the basis that "Maryland Congress of Parents and Teachers Inc. is considered the Parent Chapter Organization, the units are considered the subordinate chapter organizations under the group exemption" (*id*. at 3) and "[a] subordinate may also be terminated or revoked" (*id.* at 4).

200.    In the September 6 Letter, Defendant Carrera further stated "[w]ith respect to the termination of a subordinate's tax exempt status, the parent is obliged to notify the IRS Service that a subordinate no longer meets the requirements for inclusion in the group exemption letter." *Ibid.*

201.    In the September 6 Letter, Defendant Carrera requested that Local PTAs who wish to disaffiliate from the Maryland PTA follow the Maryland PTA Bylaws' procedures and turn

over all records to Defendants.  Defendant Carrera's September 6 Letter stated "[f]or the Chapters that do not wish to no longer be a member of Maryland Congress Parents and Teachers Inc. will need to fill out the included form and schedule time to meet with the staff to close out your books so that the information can be reported to the Maryland State and IRS. Contact us so the process can be started to close out your account properly." *Id*. at 7.

202.   The September 6 Letter did not inform the Local PTAs that Alliance is a d/b/a for the Maryland Congress of Parents and Teachers, Inc.

203.   Upon information and belief, the Local PTAs were not informed in any other communication relating to the September 6 Letter that Carrera and two officers of the Maryland Congress of Parents and Teachers, Inc. purportedly amended the Maryland PTA Bylaws on March  27, 2021, by email consent.

204.   Upon information and belief, the Local PTAs was not informed in any communication relating to the September 6 Letter that Defendants Carrera and Alliance and/or the Maryland Congress of Parents and Teachers, Inc. were operating under purported amended bylaws.

205.   Upon information and belief, the Local PTAs were not informed in any communication relating to the September 6 Letter that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state that it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

206.   Upon information and belief, the Local PTAs were not informed in any communication relating to the September 6 Letter that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. provide for "subordinate organizations" to be "Affiliates," and permits the Board of Directors "in its sole discretion to dissolve the Affiliate" and "receive its assets," including the funds in its bank account.

207.   Upon information and belief, the September 6 Letter caused much concern and confusion to the Local PTAs, including confusion as to the origin, identity and affiliation of the entity sending the September 6 Letter.

### v.        Defendants' September 30, 2021 Letter to IRS

208.   On September 30, 2021, Defendant Carrera sent a letter as President of, and on behalf of, "Maryland Congress of Parents and Teachers, Inc." to the Internal Revenue Service ("September 30 Letter").  A copy of the September 30 Letter is attached hereto as Exhibit R.

209.   In the September 30 Letter, Defendant Carrera stated that the September 30 Letter is "Maryland Congress of Parents and Teachers Inc.'s (Parent Organization) required annual submission of all changes of the subordinates listed in the attached spreadsheet, per Sec. 6.01;1-2." *Id*.

210.   The September 30 Letter attached a twenty-three (23) page spreadsheet listing 551 Local PTAs. *Id*.

211.   Defendant Carrera stated in the September 30 Letter that "[t]he subordinates listed on the attached spreadsheet are to be removed from the Group Exemption Number 1999, due to disaffiliation, dissolution or withdrawal of their authorization with Maryland Congress of Parents and Teachers Inc., the Parent Organization." *Id*.

212.   Defendant Carrera had no authority to send the September 30 Letter, attaching a twenty-three (23) page spreadsheet listing 551 Local PTAs, and stating in the September 30 Letter that "[t]he subordinates listed on the attached spreadsheet" should be "removed from the Group Exemption Number 1999, due to disaffiliation, dissolution or withdrawal of their authorization with Maryland Congress of Parents and Teachers Inc., the Parent Organization."  *Id.*

213.   Upon information and belief, Defendant Carrera's statement in the September 30 Letter that "[t]he subordinates listed on the attached spreadsheet" should be "removed from the Group Exemption Number 1999, due to disaffiliation, dissolution or withdrawal of their authorization with Maryland Congress of Parents and Teachers, Inc." was false.

214.   Upon information and belief, none or not all of the 551 Local PTAs listed on the spreadsheet were dissolved, or if dissolved by any acts of Defendants Carrera or Board of Directors of the Maryland PTA, were not properly dissolved.

215.   Upon information and belief, none or not all the 551 Local PTAs listed on the spreadsheet were disaffiliated, or if disaffiliated by any acts of Defendants Carrera or Board of Directors of the Maryland PTA, were not properly disaffiliated.

216.   Upon information and belief, none or not all the 551 Local PTAs listed on the spreadsheet were subject to withdrawal of their authorization, or had withdrawn their authorization, or if withdrawal of their authorization had occurred as a consequence of any actions by Defendants Carrera or Board of Directors of the Maryland PTA, such withdrawals of authorizations were not proper, valid or effective.

217.   In the September 30 Letter, Defendant Carrera requested that the IRS "send me [Carrera] and electronic notifications president@mdpta.org once these units have been removed." *Id.*

218.   Upon information and belief, Local PTAs listed on the spreadsheet attached to the September 30 Letter did not request or approve removal from Maryland Congress of Parents and Teachers, Inc.'s Group Exemption Number 1999.

219.   The September 30 Letter did not inform the IRS that Alliance is a d/b/a for Maryland Congress of Parents and Teachers, Inc.

220.   The September 30 Letter did not inform the IRS that Carrera and two officers of Maryland Congress of Parents and Teachers, Inc. purportedly amended the bylaws of Maryland Congress of Parents and Teachers, Inc. on March  27, 2021.

221.   The September 30 Letter did not inform the IRS that the purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state that it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

222.   The September 30 Letter did not inform the IRS that National PTA had revoked the Maryland Congress of Parents and Teachers, Inc. charter with National PTA on March 26, 2021.

223.   The September 30 Letter did not inform the IRS that National PTA had filed a lawsuit against Defendant Carrera and the Board of Directors of the Maryland Congress of Parents and Teachers, Inc., and that a Consent Order had been entered in that lawsuit enjoining Defendant Carrera and the Board of Directors of Maryland Congress of Parents and Teachers, Inc. from "operating under the bylaws of the Maryland PTA."

224. The September 30 Letter did not inform the IRS that National PTA had filed a lawsuit against Defendant Carrera and the Board of Directors of the Maryland Congress of Parents and Teachers, Inc., and that a Consent Order had been entered in that lawsuit enjoining Defendant Carrera and the Board of Directors of Maryland Congress of Parents and Teachers, Inc. from "withdrawing charters of Local PTAs" and "acting to prevent, Local PTAs from using their current names without the Local PTAs' consent."

225. The September 30 Letter did not inform the IRS that National PTA had filed a lawsuit against Defendant Carrera and the Board of Directors of the Maryland Congress of Parents and Teachers, Inc., and that a Consent Order had been entered in that lawsuit enjoining Defendant Carrera and the Board of Directors of Maryland Congress of Parents and Teachers, Inc. from "for a period of thirty (30) days, seeking, or otherwise causing, the Internal Revenue Service ("IRS") to revoke Local PTAs' 501(c)(3) status or EINs without Local PTAs' consent, with counsel for Parties continuing in communications in good faith to attempt to resolve the issue" and that a motion was pending in that lawsuit seeking to extend the time for the prohibition on Defendant Carrera seeking to have the IRS revoke Local PTAs' 501(c)(3) status or EIN's.

### vi.    Defendants' Continued Material Omissions

226. As of the filing of the Third Amended Complaint, upon information and belief Defendants have not informed Local PTAs that Alliance is a d/b/a for the Maryland Congress of Parents and Teachers, Inc.

227. As of the filing of the Third Amended Complaint, upon information and belief Defendants have not informed Local PTAs that Defendants Carrera and two officers of the Maryland Congress of Parents and Teachers, Inc. purportedly amended the Maryland PTA Bylaws on March  27, 2021, by email consent.

228.   As of the filing of the Third Amended Complaint, upon information and belief Defendants have not informed Local PTAs that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership" and instead state that it "shall have no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors.

229.   As of the filing of the Third Amended Complaint, upon information and belief Defendants have not informed Local PTAs that purported amended bylaws for the Maryland Congress of Parents and Teachers, Inc. provide for "subordinate organizations" to be "Affiliates," and permits the Board of Directors "in its sole discretion to dissolve the Affiliate" and "receive its assets," including the funds in its bank account.

230.   The material omissions by Defendants have caused and continue to cause much concern and confusion to the Local PTAs, including confusion as to the origin, identity and affiliation of the Alliance and Maryland Congress of Parents and Teachers, Inc.

**K.    Defendant Carrera's Fraudulent Filings to Dissolve Local PTAs and False Statements Under Penalty of Perjury**

231.   Between on or about October 29, 2021, and November 3, 2021, Defendant Carrera instructed and caused to be filed Articles of Dissolution with the Maryland State Department of Assessment and Taxation ("SDAT") for the following twenty-two Local PTAs and three Maryland county council PTAs ("Council PTAs"):  Hall's Cross Roads Elementary School PTA, Inc., William Paca Old Post Road PTA, Inc., Fallston Middle School PTA, Inc., Bonnie Branch Middle School PTA, Inc., Hammond Middle School PTA, Inc., William H. Farquhar Middle

49

School PTA, Inc., Overlook Full Spanish Immersion School PTA, Inc., Prospect Mill Elementary School PTA, Inc., Howard High School Parent Teacher Student Association, Inc., Atholton High School Parent Teacher Student Association, Inc., Clarksville Middle School Parents and Teachers Association, Inc., Sherwood High School Parents Teachers Students Association, Walkersville Middle School PTSA, Inc., North Harford High School PTSA, Inc., Edgewood High School PTSA, Inc., Poolesville High School PTSA, Inc., Pyle Middle School PTSA, Inc., Catoctin High School PTSA, Inc., Montgomery Blair High School PTSA, Inc., Parkland Magnet Middle School PTSA, Inc., Roberto Clemente Middle School PTSA, Seneca Valley High School PTSA, Montgomery County Council of PTA's Inc., PTA Council of Howard County, Inc., and Anne Arundel County Council of PTA's, Inc. *See* Defendant Carrera's Response to Court Order, filed in this case on January 21, 2021, and attachments thereto; *see also* Exhibits S-1 through S-12, referenced below.

232.   The Maryland business account through which all of the above-referenced Articles of Dissolution were filed is registered to Maryland Congress of Parents and Teachers, Inc.  *See* Defendant Carrera's Response to Court Order, filed in this case on January 21, 2021, and attachments thereto.

233.   Defendant Carrrera admitted under oath that she and the person she instructed to make the Articles of Dissolution filings have access to an account with SDAT in the name of Maryland Congress of Parents and Teachers, Inc.

234.   Defendant Carrera instructed and caused to be filed the twenty-five above-referenced Articles of Dissolution without the knowledge, consent or authorization of the affected Local PTAs or Council PTAs.  *See*, *e.g.*, Affidavits attached as Exhibit S which includes: Affidavit of David Griffith (Poolesville PTSA), attached hereto as Exhibit S-1, at ¶¶9-18;

Affidavit of Lora Pangratz (William Paca Old Post Road Elementary), attached hereto as Exhibit S-2, at ¶¶9-12; Affidavit of Heather Sewell (Fallston Middle School PTA), attached hereto as Exhibit S-3, at ¶¶9-12; Affidavit of Traci Tatum (Catoctin High School PTSA), attached as Exhibit S-4, at ¶¶9-11; Affidavit of Lisa Crittenden (Anne Arundel County Council PTA), attached as Exhibit S-5, at ¶¶6-10, 12-13; Affidavit of Khristy Kartsakalis (Sherwood High School PTSA), attached hereto as Exhibit S-6, at ¶¶9-12; Affidavit of Candice Gonzalez (Overlook Full Spanish Immersion School PTA), attached hereto as Exhibit S-7, at ¶¶11-14; Affidavit of Cynthia Simonson (Montgomery County Council of PTAs), attached hereto as Exhibit S-8, at ¶¶9-12; Affidavit of Jennifer Gilroy (Walkersville Middle School PTSA), attached hereto as Exhibit S-9, at ¶¶9-12; Affidavit of Lindsay Senker (William H. Farquhar MS PTA), attached hereto as Exhibit S-10, at ¶¶9-12; Affidavit of Rex Robison (Montgomery Blair High School PTSA), attached hereto as Exhibit S-11, at ¶¶10-13; and Affidavit of Tonya Tiffany (Altholton High School PTSA), attached hereto as Exhibit S-12, at ¶¶9-12.

235.    Defendant Carrera admitted under oath that she instructed and caused to be filed the above-referenced Articles of Dissolution.

236.    SDAT rejected twenty-four of the twenty-five above-referenced Articles of Dissolution filings.  *See* attached Exhibit T at 8.   However, the Articles of Dissolution for Poolesville High School PTSA, Inc. ("Poolesville PTSA"), filed by Defendant Carrera on November 2, 2021, were approved by SDAT, unaware of the fraud, and Poolesville PTSA was dissolved.  *Id*.; Ex. S-1 at Attachment 1.

237.    Poolesville PTSA had no knowledge of, and did not consent to or authorize, the filing of the Articles of Dissolution with SDAT.  Griffith Aff. at ¶¶9-11 (Ex. S-1).  Poolesville PTSA did not hold a vote for dissolution, *id*. at ¶11, or take any actions required to dissolve

Poolesville PTSA as set forth in the Poolesville PTSA Bylaws.  *See id*. at Attachment 2 (Poolesville PTSA Bylaws).

238.  In the unauthorized Articles of Dissolution Defendant Carrera instructed and caused to be filed for Poolesville PTSA, Defendant Carrera identified the "Corporation to be dissolved" as the "Poolesville High School PTSA," and falsely and fraudulently signed or instructed and caused to be signed under penalty of perjury the filing in her name "Dr. LaTonya Carrera" as "President or Vice President of the Corporation."  Defendant further instructed and caused to be falsely stated in the filing that "Jhamika Rodgers" was the Treasurer of Poolesville PTSA and that "Tikeetha Thomas" was the Secretary of Poolesville PTSA. These representations are also false and fraudulent.  *See* Griffith Aff. (Ex. S-1) at ¶¶13-17 and Att. 1.

239.  Defendant Carrera is not the "President or Vice President" of Poolesville PTSA. *Id*. at ¶15.  The President of Poolesville PTSA is David Griffith, who is also the President-Elect of Free State PTA.  *Id*. at ¶2.  Mr. Griffith was President of Poolesville PTSA when Defendant Carrera filed the unauthorized Articles of Dissolution on November 2, 2021.  *Id*. at ¶4.

240.  Jhamika Rodgers is not the Treasurer of Poolesville PTSA, nor is Tikeetha Thomas the Secretary of Poolesville PTSA, as falsely stated by Defendant Carrera in the Articles of Dissolution filing.  *See id*. at ¶¶16-17 and Att. 1 at p. 1.

241.  Defendant Carrera instructed and authorized filing of the above-referenced Articles of Dissolution for Poolesville PTSA.

242.  As of the filing of the Second Amended Complaint, the Poolesville PTSA remained dissolved as a consequence of Defendant Carrera's unlawful and fraudulent dissolution filing.  As of the filing of the Third Amended Complaint, after much confusion and extensive effort undertaken by Poolesville PTSA to undo and correct the false statements made by Defendant

Carrera in the filing she made to SDAT to dissolve the Poolesville PTSA, the Poolesville PTSA was returned to in good standing status.

### L.      Defendant Carrera's Fraudulent Removal of Funds from Bank Accounts of Local PTAs and Council PTAs Without Their Knowledge or Consent

243.   Defendant Carrera illegally instructed and caused to be used the bank account numbers of the Local PTAs and Council PTAs to pay the filing fees for the unauthorized Articles of Dissolution filings, without the knowledge, consent or authorization of the respective Local PTAs. *See*, *e.g.*, Pangratz Aff., (Ex. S-2), at ¶¶6-9; Sewell Aff. (Ex. S-3), at ¶¶6-9; Tatum Aff. (Ex. S-4), at ¶¶6-9; Crittenden Aff. (Ex. S-5), at ¶¶6-9, 12-13; Kartsakalis Aff. (Ex. S-6), at ¶¶6-9; Gonzalez Aff. (Ex. S-7), at ¶¶6-11; Simonson Aff. (Ex. S-8), at ¶¶6-9; Gilroy Aff. (Ex. S-9), at ¶¶6-9; Senker Aff. (Ex. S-10), at ¶¶6-9; Robison Aff. (Ex. S-11), at ¶¶6-10; and Tiffany Aff. (Ex. S-12), at ¶¶6-9.

244.   Defendant Carrera instructed and caused to be used the bank account numbers of the Local PTAs and Council PTAs to pay the filing fees for the Articles of Dissolution filings.

245.   Defendant Carrera admitted under oath that she instructed and caused to be used the bank account numbers of the Local PTAs and Council PTAs to pay the filing fees for the Articles of Dissolution filings.

246.   Defendant Carrera admitted under oath that she instructed and authorized the expedited filings of the Articles of Dissolution.

247.   Defendant Carrera had access to the Local PTAs' and Council PTAs' bank account information and numbers to make the unauthorized debits or withdrawals from information that had been previously submitted to Maryland Congress of Parents and Teachers, Inc. prior to the March 26, 2021, disaffiliation by National PTA.

248. Defendant Carrera admitted under oath that she had access to the Local PTAs' and Council PTAs' bank account information and numbers from a spreadsheet of that information prepared with the bank account information and numbers.

249. Defendant Carrera accessed and/or instructed that the Local PTAs' and Council PTAs' bank account information be accessed to make the unauthorized debits or withdrawals.

250. Defendant Carrera admitted under oath that she accessed and/or instructed that the Local PTAs' and Council PTAs' bank account information be accessed to make the unauthorized debits or withdrawals.

251. The filing fee of $98 plus a $3 service charge was taken directly from the respective Local PTAs' and Council PTAs' bank accounts per the fraudulent authorization by Defendant Carrera when she instructed and caused to be filed the above-referenced unauthorized Articles of Dissolution.  *See*, *e.g.*, Pangratz Aff., (Ex. S-2), at ¶¶6-9; Sewell Aff. (Ex. S-3), at ¶¶6-9; Tatum Aff. (Ex. S-4), at ¶¶6-9; Crittenden Aff. (Ex. S-5), at ¶¶6-9, 12-13; Kartsakalis Aff. (Ex. S-6), at ¶¶6-9; Gonzalez Aff. (Ex. S-7), at ¶¶6-11; Simonson Aff. (Ex. S-8), at ¶¶6-9; Gilroy Aff. (Ex. S-9), at ¶¶6-9; Senker Aff. (Ex. S-10), at ¶¶6-9; Robison Aff. (Ex. S-11), at ¶¶6-10; and Tiffany Aff. (Ex. S-12), at ¶¶6-9.

252. No filing fees were debited from Poolesville PTSA's current bank account, which account was just opened in September 2021, and for which Defendant Carrera did not have updated account information. Griffith Aff. (Ex. S-1), at ¶¶6-8, 20.

253. As of the filing of the Second Amended Complaint, the Poolesville PTSA remained dissolved as a consequence of Defendant Carrera's unlawful and fraudulent dissolution filing.  As of the filing of the Third Amended Complaint, after much confusion and extensive effort undertaken by Poolesville PTSA to undo and correct the false statements made by Defendant

Carrera in the filing she made to SDAT to dissolve the Poolesville PTSA, the Poolesville PTSA was returned to in good standing status.

**M.    Defendant Carrera's Contempt of Court**

254.   On December 7, 2021, the Honorable David W. Lease issued an Order to Show Cause for Contempt to Defendant Carrera (hereafter "Order to Show Cause for Contempt"). *See* Exhibit U, attached hereto.

255.   During a hearing held before the Honorable David W. Lease on January 6, 2022, on the Order to Show Cause for Contempt (hereafter "Contempt Hearing"), Defendant Carrera was found in contempt of the Court's June 21, 2021 Consent Order.

256.   During the Court's oral ruling at the Contempt Hearing, the Court stated that he did not find Defendant Carrera's position "credible" that she believed the Consent Order had expired. *See* Ex. K, p. 117.  During the Court's oral ruling at the Contempt Hearing, the Court stated that he did not find Defendant Carrera's argument "credible" that she was not operating under the Maryland PTA bylaws because she had amended them. *Id*. at p. 118.

257.   During the Court's oral ruling at the Contempt Hearing, the Court ruled that "[t]here couldn't be a more clear provision" and Defendant Carrera's "actions could not be more contemptuous" of the Consent Order provision prohibiting her from "withdrawing the charters of local PTAs." *Id*. at p. 120.

258.   During the Court's oral ruling at the Contempt Hearing, the Court ruled Defendant Carrera "in contempt of the Court's order when she filed the notices of dissolution with the SDAT." *Id*. at p. 121.

259.   During the Court's oral ruling at the Contempt Hearing, the Court ruled that Defendant Carrera "certainly violated [the Consent Order] by using information that she had obtained in order to have funds transferred from local PTA accounts to the SDAT." *Id*. at p. 121.

260.   The Court in its written contempt Order entered January 14, 2022, ordered Defendant Carrera to purge her contempt to "notify SDAT that Defendant had no authority to file Articles of Dissolution" and "provide an accounting of all monies taken." *See* January 14, 2022 Order, attached hereto as Exhibit V.

261.   The Court in its written contempt Order entered January 14, 2022, ordered that "harmed Local PTAs may submit requests for reimbursement of any cost or damages incurred as a result of the filing of the Articles of Dissolution." *Ibid.*

262.   The Court in its written contempt Order entered January 14, 2022, clarified that under the Consent Order "Defendant is enjoined from operating under the bylaws of the Maryland Congress of Parents and Teachers, Inc. as amended." *Ibid.*

263.   During the Court's oral ruling at the Contempt Hearing, the Court stated that the new bylaws to which Defendant was referring as the bylaws she was operating under is "just an amendment of Exhibit A25" [the bylaws referenced in the Consent Order] and "[i]t's clear the only authority for the bylaws" "is the initial bylaws of Maryland Congress of Parents and Teachers, Inc." and "[i]t's not a new entity as which was explicitly advised to the Court that it was, that there was a new corporation" and "[t]his is not a new corporation" and "she is enjoined from operating under the Maryland Congress of Parents and Teachers, Inc. Bylaws whether set forth in Exhibit A25 or as amended, or purported to be amended at this time." Ex. K, at pp. 118, 122.

264.   During the Court's oral ruling at the Contempt Hearing, the Court stated that Defendant Carrera had represented to the Court when the Consent Order was originally entered in June 2021 that "they had a separate, different entity that was separately incorporated from the

prior company" and "we were advised in court that she was not operating under that entity; that she was not, which is Maryland's PTA." *Id*. at p. 125.

266.   During the Court's oral ruling at the Contempt Hearing, the Court stated that it was "perhaps misrepresented to the Court that the entity was newly formed and totally different, it's not a totally different company" and "[i]t's not a new entity as which was explicitly advised to the Court that it was, that there was a new corporation." *Id*. at p. 126.

266.   During the Court's oral ruling at the Contempt Hearing, the Court referenced the document purporting to amend the Maryland PTA bylaws and noted that "what the amendment did was get rid of" "Article 5, Section 1" relating to members and "the amended bylaws make clear that there are no other members other than the directors" and there is "language in the document that's saying since the national PTA informed Maryland PTA that it was rescinding its charter affiliation, that, then all of the local PTAs were now somehow divested of being members and yet at the same time, Dr. Carrera is taking action against them as if they were still members or responsibilities of hers." *Id*. at p. 119.

## N.   National PTA and Local PTAs Property Misappropriated by Defendants

267.   State PTAs, including Maryland PTA, collect dues on behalf of National PTA for each new member that is added each month.  Affidavit of James Thomasell, attached hereto as Exhibit B at ¶4.  The National PTA Bylaws provide that "[m]embers shall pay annual dues, as may be determined by the constituent association, which shall include the portion payable to the local and state PTA constituent association as determined by the local and state PTA constituent associations, and the portion payable to National PTA."  Ex. A-31 at Article IV, Section 6. Furthermore, according to the Maryland PTA Bylaws, "[e]ach local PTA shall remit the National PTA and Maryland PTA portion of the dues to reach the Maryland PTA office by the dates

designated by Maryland PTA." Ex. A-25 at Article VI, Section 13.  Similarly, Local PTAs are

required by their bylaws to "remit the national and state dues to the Maryland PTA office by dates

designated." Ex. A-30 at Article IV, Section 1.  The Maryland PTA Bylaws state that "Maryland

PTA shall make remittances, on a monthly basis, to National PTA of the amounts due to National

PTA." Ex. A-25 at Article IV, Section 4.

268.   State PTAs, including Maryland PTA, access an online portal ("State Portal") to

upload an Excel spreadsheet that provides the unit number (identification code) and the number

of members added for the month.  Ex. B at ¶4.  After the spreadsheet is submitted through the

portal, a confirmation of the total dues submitted for that month is provided to the state PTA.  *Id*.

The due date of membership dues reporting is the fifth business day for the following month.  *Id*.

at ¶5.

269.   The National PTA Finance Department then enters the amount each state PTA has

collected in National PTA dues into the National PTA accounting system.  *Id*. at ¶6.  The Director

of Finance then sends a confirmation email providing the total amount of members that state PTA

reported for the month, the total dollar amount that will be withdrawn from that state PTA's bank

account (which has previously been authorized by the state PTA) and the date the ACH will be

processed.  *Id*.  The Finance Department includes a note on the email to contact them immediately

if any of the information is incorrect or if there are questions.  *Id*.  The email is sent at least seven

days prior to the scheduled transaction date.  *Id*.

270.   The National PTA Finance Department Senior Accountant enters the ACH amount

in a template through the National PTA's bank's website.  *Id*. at ¶7.  The Director of Finance

reviews the template and then puts the template into production.  *Id*.  The Senior Accountant

reviews the production ACH file and submits it for processing on the business day indicated on the confirmation email.  *Id*.

271.   Maryland PTA submitted a file through the State Portal indicating they had collected dues from 8,457 National PTA members for the month of or prior to March 2021.  *Id.* at ¶8.  This equates to $19,028.25.  *Id*.

272.   National PTA attempted to process the ACH for the amounts due from Maryland PTA on April 20, 2021.  *Id*. at ¶9; National PTA's Wells Fargo checking account statement for April 1, 2021-April 30, 2021, attached at Ex. B, Attachment 1.  The ACH was rejected due to insufficient funds on April 22, 2021.  Ex. B at ¶9.

273.   A demand letter was sent to Maryland PTA through the United States Postal Service with return receipt request and certified mail on May 18, 2021.  *Id*. at ¶10; Letter from J. Thomasell to Maryland Congress of Parents and Teachers, Inc., dated May 18, 2021, attached at Ex. B, Attachment 2.

274.   The demand letter requested Maryland PTA pay the full amount of $19,028.25 by May 25, 2021.  *Id*.

275.   As of the date of this filing, National PTA has not received any response to its demand for payment of the $19,028.25 due and outstanding for the month of or prior to March 2021.

276.   As of the date of this filing, National PTA has not received payment of the $19,028.25 due and outstanding for the month of or prior to March 2021.  *Id*.

277.   The unpaid National PTA dues of $19,028.25 limits National PTA's ability to service National PTA's members in Maryland.  Ex. B at ¶11.

278.   National PTA uses the membership dues to provide programs like Reflections (the arts in education), support for the Center for Family Engagement, and grants to the field. Members in Maryland directly benefited from these programs. Ex. B at ¶12.  The harm resulting from the Maryland PTA not paying the members' National PTA dues to National PTA will reduce the efficacy of these programs in Maryland. *Id*.

279.   On information and belief, after National PTA's revocation of the Maryland PTA charter, Local PTAs continued to remit national and state dues to Maryland PTA and/or Alliance with the intent and understanding that they were joining or retaining their membership in the National PTA and the National PTA-affiliated state constituent association for Maryland, and with the intent that those dues were to be used to pay for their membership in the National PTA-affiliated state constituent association for Maryland, and for payment to National PTA of the amount of their dues required to be sent to National PTA by the National PTA-affiliated state association for Maryland.

280.   To the extent that the dues payments referenced in the preceding paragraph were sent to Defendants based on erroneous information from Defendants, and/or threats from Defendants, and/or false pretenses, misleading statements, false statements, misrepresentations, misleading omissions by Defendants, those monies have been improperly and unlawfully misappropriated and converted by Defendants, to the detriment and damage of National PTA and the members making those payments.

281.   National PTA is owed and National PTA has not received payment for any additional dues paid and owing to it after March 26, 2021, and Defendants' retention of the monies intended for payment of National PTA dues is unlawful.

282.   The members making the payments based on erroneous information from Defendants, and/or threats from Defendants, and/or false pretenses, misleading statements, false statements, misrepresentations, misleading omissions by Defendants, retention of those monies by Defendants is unlawful and return of those payments are owed to the members.

N.     **Trademark Infringement**

283.   Since at least 1907, National PTA has continuously used various marks both nationwide and in Maryland in connection with providing a wide array of goods and services, including educational and association services.

284.   Because National PTA has continuously used these marks nationwide for over 100 years in connection with providing a wide array of goods and services, including educational and association services, National PTA is the owner of the marks and has the exclusive right to control use of the marks.

285.   The marks referenced above in Paragraphs 283 and 284, which have been in continuous use by National PTA nationwide for over 100 years, and for which National PTA has the exclusive right to control use, include multiple federally registered trademarks, including but not limited to PTA, PTSA, PARENT TEACHER ASSOCIATION, PTA NATIONAL CONGRESS OF PARENTS AND TEACHERS 1897, NATIONAL PTA, and various other marks which include these terms, as well as the common law rights associated therewith, and including common law rights in in NATIONAL CONGRESS OF PARENTS AND TEACHERS and PARENT TEACHER STUDENT ASSOCIATION (all of the foregoing collectively referred to hereafter as "National PTA Trademarks").

286. The goods and services provided by National PTA, including educational and association services, referenced above in Paragraphs 283, 284 and 285, in connection with the use of the National PTA Trademarks are referred to hereafter as "PTA Goods and Services."

287. The federal registrations secured by National PTA in multiple National PTA Trademarks include, but are not limited to, those in the following chart:

| Mark | Goods/Services | Registration No. | Registration Date |
|---|---|---|---|
| **_PTA_** | IC 041. US 100 101 107. G & S: Association services, namely, promoting the welfare of children and youth in home, school, church, and community; raising the standards of home life; securing adequate laws for the care and protection of children and youth; bringing into closer relation the home and school, so that parents and teachers may cooperate intelligently in the training of the child; and developing between educators and the general public such united efforts as will secure for every child the highest advantages in physical, mental, social and spiritual education. FIRST USE: 19970600. FIRST USE IN COMMERCE: 19970600 | 2648370 | November 12, 2002 |
| PTA | IC 016. US 038. G & S: Magazine. FIRST USE: 19450901. FIRST USE IN COMMERCE: 19450901 | 0727734 | February 20, 1962 |
| PTSA | IC 042. US 100. G & S: ASSOCIATION SERVICES; NAMELY, PROMOTING THE WELFARE OF CHILDREN AND YOUTH IN HOME, SCHOOL, CHURCH, AND COMMUNITY; RAISING THE STANDARDS OF HOME LIFE; SECURING ADEQUATE LAWS FOR THE CARE AND PROTECTION OF CHILDREN AND YOUTH; BRINGING INTO CLOSER RELATION THE HOME AND THE SCHOOL, SO THAT PARENTS AND SCHOOL, SO THAT PARENTS AND | 0948059 | November 28, 1972 |

| | | | |
|---|---|---|---|
| | TEACHERS MAY COOPERATE INTELLIGENTLY IN THE TRAINING OF THE CHILD; AND, DEVELOPING BETWEEN EDUCATORS AND THE GENERAL PUBLIC SUCH UNITED EFFORTS AS WILL SECURE FOR EVERY CHILD THE HIGHEST ADVANTAGES IN PHYSICAL, MENTAL, SOCIAL AND SPIRITUAL EDUCATION; AND COOPERATION BETWEEN PARENTS, TEACHERS AND STUDENTS IN SUCH ENDEAVORS. FIRST USE: 19580000. FIRST USE IN COMMERCE: 19580000 | | |
| PTA | IC 041. US 107. G & S: PROMOTING THE WELFARE OF CHILDREN AND YOUTH IN HOME, SCHOOL, CHURCH, AND COMMUNITY; RAISING THE STANDARDS OF HOME LIFE; SECURING ADEQUATE LAWS FOR THE CARE AND PROTECTION OF CHILDREN AND YOUTH; BRINGING INTO CLOSER RELATION THE HOME AND SCHOOL, SO THAT PARENTS AND TEACHERS MAY COOPERATE INTELLIGENTLY IN THE TRAINING OF THE CHILD; AND DEVELOPING BETWEEN EDUCATORS AND THE GENERAL PUBLIC SUCH UNITED EFFORTS AS WILL SECURE FOR EVERY CHILD THE HIGHEST ADVANTAGES IN PHYSICAL, MENTAL, SOCIAL, AND SPIRITUAL EDUCATION. FIRST USE: 19070000. FIRST USE IN COMMERCE: 19070000 | 0808987 | May 24, 1966 |
| PARENT TEACHER ASSOCIATION | IC 041. US 107. G & S: PROMOTING THE WELFARE OF CHILDREN AND YOUTH IN HOME, SCHOOL, CHURCH, AND COMMUNITY; RAISING THE STANDARDS OF HOME LIFE; SECURING ADEQUATE LAWS FOR THE CARE AND PROTECTION OF CHILDREN AND | 0810576 | June 28, 1966 |

| | | | |
|---|---|---|---|
| | YOUTH; BRINGING INTO CLOSER RELATION THE HOME AND THE SCHOOL, SO THAT PARENTS AND TEACHERS MAY COOPERATE INTELLIGENTLY IN THE TRAINING OF THE CHILD; AND DEVELOPING BETWEEN EDUCATORS AND THE GENERAL PUBLIC SUCH UNITED EFFORTS AS WILL SECURE FOR EVERY CHILD THE HIGHEST ADVANTAGES IN PHYSICAL, MENTAL, SOCIAL AND SPIRITUAL EDUCATION. FIRST USE: 19070000. FIRST USE IN COMMERCE: 19070000 | | |
| PTA NATIONAL CONGRESS OF PARENTS AND TEACHERS 1897 | IC 042. US 100. G & S: ASSOCIATION SERVICES-NAMELY, PROMOTING THE WELFARE OF CHILDREN AND YOUTH IN HOME, SCHOOL, CHURCH, AND COMMUNITY. FIRST USE: 19220000. FIRST USE IN COMMERCE: 19220000 | 1227033 | February 8, 1983 |
| NATIONAL PTA | IC 042. US 100 101. G & S: ASSOCIATION SERVICES, NAMELY, PROMOTING THE WELFARE OF CHILDREN AND YOUTH IN HOME, SCHOOL, CHURCH, AND COMMUNITY BY RAISING THE STANDARDS OF HOME LIFE, SECURING ADEQUATE LAWS FOR THE CARE AND PROTECTION OF CHILDREN AND YOUTH, BRINGING INTO CLOSER RELATION THE HOME AND SCHOOL SO THAT PARENTS AND TEACHERS MAY COOPERATE INTELLIGENTLY IN THE TRAINING OF THE CHILD AND DEVELOPING BETWEEN EDUCATORS AND THE GENERAL PUBLIC SUCH UNITED EFFORTS AS WILL SECURE FOR EVERY CHILD THE HIGHEST ADVANTAGES IN PHYSICAL, MENTAL, SOCIAL AND SPIRITUAL EDUCATION. FIRST USE: 19620000. FIRST USE IN COMMERCE: 19620000 | 2387318 | September 19, 2000 |

| | | | |
|---|---|---|---|
| PTA CONNECTED TAKE CHARGE OF YOUR DIGITAL LIFE | IC 036. US 100 101 102. G & S: PROVIDING GRANTS TO LOCAL PARENT GROUPS AND ORGANIZATIONS. FIRST USE: 20180900. FIRST USE IN COMMERCE: 20181100<br><br>IC 041. US 100 101 107. G & S: EDUCATIONAL SERVICES, NAMELY, CONDUCTING WORKSHOPS, PRESENTATIONS, CONFERENCES AND TRAINING TO INFORM AND ENGAGE FAMILIES IN EDUCATION PROGRAMS IN THE FIELDS OF DIGITAL WELLNESS AND SECURITY AND DISTRIBUTION OF TRAINING MATERIAL IN CONNECTION THEREWITH; EDUCATIONAL SERVICES, NAMELY, CONDUCTING TRAINING FOR PARENT GROUP LEADERS ON OBTAINING GRANTS FOR LOCAL PARENT GROUPS AND ORGANIZATIONS, AND TRAINING ON THE DEVELOPMENT OF EDUCATIONAL TOOL-KITS AND EDUCATIONAL RESOURCES AND DISTRIBUTION OF TRAINING MATERIAL IN CONNECTION THEREWITH. FIRST USE: 20180900. FIRST USE IN COMMERCE: 20181100 | 6088514 | June 30, 2020 |
| MYPTA | C 042. US 100 101. G & S: COMPUTER SERVICES, NAMELY, PROVIDING AN INTERACTIVE WEBSITE FEATURING TECHNOLOGY THAT ALLOWS USERS TO CUSTOMIZE AND PLACE ORDERS FOR CUSTOMIZED MARKETING MATERIALS, NAMELY, DIGITAL PHOTO BANKS, EVENT IMAGES, STOCK PHOTOGRAPHY, BROCHURES, FLIERS, MEMBERSHIP CARD TEMPLATES AND PREPRINTED PROMOTIONAL MATERIAL FOR EDUCATIONAL USE | 5418578 | March 6, 2018 |

| | | | |
|---|---|---|---|
| | IN ENGLISH AND SPANISH, NAMELY, PROMOTIONAL MATERIALS TO ASSIST IN MEMBERSHIP GROWTH, MEMBERSHIP CARDS AND E-LEARNING PROMOTIONAL MATERIALS, TCHOTCHKE ITEMS, NAMELY, INK PENS, TOTE BAGS, APPAREL, OFFICE STATIONERY AND OTHER MARKETING MATERIALS, NAMELY, PENS, TUMBLERS, GROCERY TOTE BAGS AND NOTEPADS FOR USE BY PARENT TEACHER ORGANIZATIONS. FIRST USE: 20150519. FIRST USE IN COMMERCE: 20150519 | | |
| PARENT INVOLVEMENT NATIONAL PTA SCHOOL OF EXCELLENCE | IC B . US B . G & S: EDUCATIONAL SERVICES AT THE PRIMARY AND SECONDARY LEVELS. FIRST USE: 20020624. FIRST USE IN COMMERCE: 20020624 | 2830000 | April 6, 2004 |
| PTA TAKE YOUR FAMILY TO SCHOOL WEEK | IC 035. US 100 101 102. G & S: PROMOTING THE INTERESTS OF PEOPLE INVOLVED AND CONCERNED WITH THE EDUCATION OF THEIR CHILDREN. FIRST USE: 20081000. FIRST USE IN COMMERCE: 20081000<br><br>IC 041. US 100 101 107. G & S: PROVIDING RECOGNITION AND INCENTIVES BY WAY OF AWARDS TO PROMOTE FAMILY INVOLVEMENT WITH THE EDUCATION OF THEIR CHILDREN. FIRST USE: 20081000. FIRST USE IN COMMERCE: 20081000 | 3875704 | November 16, 2010 |
| EVERY CHILD. ONE VOICE. | IC 042. US 100 101. G & S: ASSOCIATION SERVICES DEDICATED TO PROMOTING THE WELFARE OF CHILDREN AND YOUTH IN THE HOME, SCHOOL, | 2594036 | July 16, 2002 |

| | CHURCH AND COMMUNITY BY RAISING THE STANDARDS OF HOME LIFE, SECURING ADEQUATE LAWS FOR THE CARE AND PROTECTION OF CHILDREN AND YOUTH, BRINGING INTO CLOSER RELATION THE HOME AND SCHOOL SO THAT PARENTS AND TEACHERS MAY COOPERATE INTELLIGENTLY IN THE TRAINING OF THE CHILD AND DEVELOPING BETWEEN EDUCATORS AND THE GENERAL PUBLIC SUCH EFFORTS AS WILL SECURE FOR EVERY CHILD THE HIGHEST ADVANTAGES IN PHYSICAL, MENTAL, SOCIAL AND SPIRITUAL EDUCATION. FIRST USE: 20010209. FIRST USE IN COMMERCE: 20010623 | | |
| --- | --- | --- | --- |

288.   The goods and services referred to in the above-referenced chart are among the goods and services referred to herein as the PTA Goods and Services.

289.   Copies of the registration information for the trademarks referred to in the above-referenced chart are attached hereto as Exhibit W.

290.   Through the extensive, continuous use and promotion of the National PTA Trademarks by National PTA, the National PTA Trademarks have become associated with National PTA and the PTA Goods and Services in the eyes of the relevant consuming public.

291.   Because the National PTA Trademarks have been in extensive use for over 100 years, including use nationwide and in extensive advertising and promotion and because of their recognition, and use nationwide to award schools in the nation, the National PTA Trademarks and elements of them, including "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" AND "CONGRESS OF PARENTS AND TEACHERS" are famous.

292.   As a result of the promotion and use of the National PTA Trademarks over the last century in connection with PTA Goods and Services, the National PTA Trademarks and the goodwill associated therewith are of significant value to National PTA.

293.   As a consequence of its agreement to the MOU, Resource-C and the National PTA Standards of Affiliation, Defendants' rights to use the National PTA Trademarks terminated immediately upon receiving notice of revocation of its charter with National PTA on March 26, 2021.  *See* Ex A-24.  Accordingly, all use of the previously licensed National PTA Trademarks by Defendants after March 26, 2021, was and is unauthorized.

294.   On March 26, 2021, as a consequence of National PTA's revocation of the Maryland PTA's charter, Maryland PTA was put on notice that Maryland PTA "must change its name effective immediately …. as it is no longer part of the PTA family" and "must cease all public use of the PTA names and logos immediately and cease representing [their] corporate entity as an affiliate of the National PTA."  *See* Ex. A-21.

295.   On March 26, 2021, Defendant Carrera, writing as President of the Maryland PTA, sent an email to all local PTA groups in Maryland, stating that "[f]or any PTA group that is tired of the drama and bureaucracy of National PTA, *please fill out this form* if you are interested in disaffiliating from PTA and remaining within our independent structure, possibly as a PTO." Ex. A-22.

296.   The form referenced in Defendant Carrera's March 26, 2021 email is titled as "Maryland Congress of Parents and Teachers, Inc. Independent Affiliation Interest Form," however the instructions on the form state "[f]or any PTA group that is tired of the drama and bureaucracy of National PTA, *please fill out this form* if you are interested in disaffiliating from PTA and remaining within our independent structure, possibly as a PTO." A true and accurate

copy of the form attached linked to Defendant Carrera's March 26, 2021 email attached hereto as Exhibit X. The use of "Maryland Congress of Parents and Teachers" and "PTA" infringed on the National PTA Trademarks.

297.   Defendants continued the unauthorized use of the National PTA Trademarks on social media platforms, including Facebook, and Twitter, and on building signage, resulting in confusion among the local PTA chapters.

298.   On March 30, 2021, as a result of Defendants' continuing infringing use of the National PTA Trademarks in violation of the cease and desist notices in the March 26, 2021 Revocation Letter, National PTA sent a second cease and desist letter to Defendant Carrera, Quantane Higginbotham, Tikeetha Thomas, and Dr. Matthew Fogg, stating that they must "cease and desist from all use of the trademarks PTA, Congress of Parents and Teachers, or other trademarks owned by the National PTA."  *See* letter dated March 30, 2021 to LaTonja Carrera attached hereto as Exhibit Y.

299.   The March 30, 2021 cease and desist letter further stated that "PTA and Congress of Parents and Teachers are registered trademarks owned by the National PTA" and despite previous instructions to cease using them, Defendants continue to use the National PTA Trademarks owned by National PTA.  *Id.*

300.   The letter further stated that Defendants must change its name to "remove the words PTA and the Congress of Parents and Teachers from their name," as well as "remove all trademarks from locations where they appear, including url's … websites, promotional material … building signage, and any other platforms or documents where they appear." *Id.*

301.   Despite repeated notices to cease and desist use of the National PTA Trademarks, Defendants continued to use the National PTA Trademarks, including as part of the mdpta.org

domain name while purporting to be Alliance, despite repeated demands to take down the infringing content which also includes a confusingly similar logo that incorporates Maryland Congress of Parents and Teachers.  A copy of the website content associated with the https://mdpta.org/ domain is attached hereto as Exhibit Z.  Defendants continued unauthorized use of the National PTA Trademarks after the first two notices to cease and desist evidence a willful intent to infringe the National PTA Trademarks.

302.   On April 21, 2021, National PTA sent additional correspondence to Defendant Carrera, copying Quantane Higginbotham, Tikeetha Thomas, and Dr. Matthew Fogg, again placing them on notice to cease use of National PTA Trademarks.  *See* letter to Latonja Carrera dated April 21, 2021 from Nathan R. Monell, Executive Director of the National PTA, attached hereto as Exhibit AA.

303.   Defendants have failed to comply with the request to remove the infringing content.

304.   On May 5, 2021, after receiving two cease and desist letters instructing Defendants to cease using National PTA Trademarks, Defendants sent an email to the local chapters, sent from the email address of "Maryland Congress of Parents and Teachers Inc., <office.mdpta.org.>" The May 5, 2021 email invited local Chapters to attend an introduction meeting. The email invitation states "[y]ou are invited to attend Maryland Congress of Parents and Teachers Inc. New Beginning Introduction Meeting on Monday, May 10, 2021 at 6:30 pm."  *See* Ex. A-28.

305.   Although the May 5th email contained a statement that "Maryland Congress of Parents and Teachers is not associated, affiliated with or sponsored by the National Congress of Parents and Teachers or the National PTA," the email was sent from a "Maryland Congress of

Parents and Teachers Inc., <office.mdpta.org.>" email address and referred to the meeting as the "Maryland Congress of Parents and Teachers Inc. New Beginning Introduction Meeting." *Id.*

306.   Defendants' use of "Maryland Congress of Parents and Teachers" containing the distinctive elements of the National PTA Trademark "Congress of Parents and Teachers" and "Parent and Teachers Association" is confusingly similar to the National PTA Trademarks, and may result in and has resulted in confusion among the consuming public and local chapters.

307.   As a result of Defendants' failure to comply with the repeated demands to remove all infringing content, National PTA submitted take down requests to Facebook and Twitter on May 11, 2021,  Facebook removed some of the infringing content on May 18, 2021.

308.   On May 13, 2021, Leslie C. Boggs, former National PTA President, sent another letter to Defendant Carrera, seeking for Defendants to cease its infringing conduct by its use of National PTA Trademarks and to (i) "disable the domain name https://mdpta.org/  and make no further use of it as either a website page or an email address; (ii) remove or delete any accounts associated with MDPTA, including the Amazon Smile account; (iii) voluntarily disable and close down all social media accounts, including Facebook and Twitter; and (iv) have the building signage remove or painted over promptly within fourteen days." *See* letter to Defendant Carrera and office staff of the Alliance from Leslie C. Boggs dated May 13, 2021, attached hereto as Exhibit BB.

309.   On June 2, 2021, due to Defendants' continued use of the infringing domain name https://mdpta.org/, a cease and desist letter was sent to Hostgator notifying Hostgator of the continued use and infringement of the National PTA Trademarks. *See* letter to Hostgator, dated June 2, 2021 attached hereto as Exhibit CC.

310.   On June 7, the Maryland PTA website associated with mdpta.org was suspended by Hostgator.

311.   A second take down request was submitted to Facebook on June 8, 2021, and Facebook removed additional infringing content on June 9, 2021.

312.   Defendants continued unauthorized use of the National PTA Trademarks after repeated notices to cease and desist constitute willful infringement of the National PTA Trademarks.

313.   On July 22, 2021, Defendants filed their "Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue to the Circuit Court for Anne Arundel County," ("Defendants' Motion to Dismiss") which was subsequently denied on July 28, 2021. *See* Docket Entry Nos. 18 and 21, respectively.

314.   Attached to Defendants' Motion to Dismiss is an affidavit from Defendant Carrera, in which she states she is the "President of Maryland Congress for Parents and Teachers, Inc." *See* Paragraph 2 of Affidavit of LaTonja Carrera, attached hereto as Exhibit DD.

315.   On July 22, 2021, Defendants sent an email to local chapters inviting members to a "Virtual Launch" of "The Alliance for Maryland Parents, Teachers and Students, Inc." scheduled to occur on July 24, 2021. The address at the bottom of the email states it is from "Maryland Congress of Parents and Teachers Inc." and still references the address for Maryland Congress of Parents and Teachers, Inc. as "5 Central Avenue, Glen Burnie, MD 21061." *See* Ex. M.

316.   On August 4, 2021, Defendant Carrera sent an email to one of the Local PTAs that did not want to join Alliance, stating she was "saddened to see [them] leave Maryland Congress of Parents and Teachers Inc." The signature line of the email identifies Defendant Carrera as

"President of Maryland Congress of Parents and Teacher, Inc." and the email is labeled as being sent from "President-Maryland Congress of Parents and Teachers Inc." *See* Ex. O.

317.   On September 6, 2021, Defendant Carrera sent an eleven (11) page letter to the local chapters in Maryland that contained numerous inaccurate statements and threats to all Local PTAs in Maryland. *See* Ex. Q at Attachment B. The September 6 Letter included the name "Maryland Congress of Parents and Teachers, Inc." and the website listed on the September 6 Letter is the <mdpta.org> website and the email provided on the first page of the September 6 Letter is contactus@mdpta.org. and the logo on the top left corner of the September 6 Letter includes the logo with the 1915 Maryland PTA charter date. *Id*.

318.   The willful, continued use of the infringing content by Defendants, including, but not limited to the September 6 Letter, has caused and continues to cause much confusion among the Local PTAs as to the origin, identity and affiliation of the communications.

319.   The willful, continued use of the infringing content by Defendants, including, but not limited to the September 6 Letter, upon information and belief has caused some Local PTAs to remit payment of dues to Defendants who they mistakenly mistook for the State PTA affiliated with National PTA.

320.   As of January 28, 2021, Defendants continue to use infringing content by holding themselves out as the MARYLAND CONGRESS OF PARENTS AND TEACHERS, INC. and using the logo which includes the year 1915; the date which the Maryland PTA was chartered. *See* copy of the https://mdpta.org/ domain page from January 7, 2022, attached hereto as Exhibit EE; Ex. Q at Attachment B (September 6 Letter); Ex. R (September 30 Letter); *see also* Screenshot of Defendant Carrera using the Maryland PTA logo while attending the deposition of Donald Garrett, attached hereto as Exhibit FF.

321.   As of January 7, 2022, Defendants continue to use infringing content and engage in infringing conduct by: (i) advertising and promoting their services through various mediums, including Facebook, Twitter and Instagram (ii) use accounts associated with the National PTA Trademarks such as Amazon Smile, (iii) using the https://mdpta.org/ domain name in connection with a website that bears infringing marks, such as "MARYLAND CONGRESS OF PARENTS AND TEACHERS" in connection with services identical to and also highly similar to those offered by National PTA with the logo that incorporates the Maryland PTA charter date of 1915, (iv) using  "@mdpta.org" as their email address, and (v)  using building signage with the National PTA Trademarks (collectively "Infringing Properties").

322.   As of January 7, 2022, Defendants' website https://mdpta.org does not contain any disclaimers that Maryland Congress of Parents and Teachers, Inc. is not affiliated with National PTA.  *See* Ex. EE.

323.   The Infringing Properties identified include, among others, the use of the name and logo Maryland Congress of Parents and Teachers; logo that incorporates the 1915 charter date of the Maryland PTA; Instagram account with the main profile picture of the logo which includes the 1915 charter date of the Maryland PTA and username "mdcongresspt" (Exhibit GG-1); Facebook page live with logo with the 1915 Maryland PTA charter date (Exhibit GG-2); twitter account using the name "Maryland Congress of Parents and Teachers, Inc." and logo with the 1915 Maryland PTA charter date (Exhibit GG-3); and twitter account for Maryland PTA Diversity Committee, which includes the National PTA logo "every child, one voice" (Exhibit GG-4).  *See* copies of the Infringing Properties attached collectively hereto as Exhibit GG, including Exs. GG-1 through GG-4.

74

324.   Defendants' adoption and continued use of the Infringing Properties is a clear and willful attempt to trade on National PTA's rights to the National PTA Trademarks and the goodwill symbolized thereby, and goodwill associated with the National PTA Trademarks for the PTA Goods and Services.

325.   The use of marks confusingly similar to the National PTA Trademarks, such as "PTA" and "Congress of Parents and Teachers" is an intentional attempt to claim that this entity is and continues to be an authorized state affiliate of National PTA and to trade on the goodwill developed by National PTA, and the goodwill associated with the National PTA Trademarks and confuse the source of the PTA Goods and Services.

326.   Defendants do not have the authorization or consent of National PTA to use the Infringing Properties, the term PTA, Congress of Parents and Teachers, Reflections, or the National PTA Trademarks in any capacity, much less, in a confusingly similar manner likely to cause consumer confusion as to the source or origin of the goods and services provided under those marks.

327.   Defendants' use of the Infringing Properties and National PTA Trademarks and elements of the National PTA Trademarks is likely to cause confusion, to cause mistake, and/or to deceive the public and local chapters as to the affiliation, connection, and association of Defendants with National PTA, and as to the origin, sponsorship, and approval of Defendants' services and activities by National PTA.

### O.   Obtaining Federal Loans And Spending Down Of Assets

328.   Beginning in February 2021, Defendants began accepting large disbursements of funds from Federal loans that were transferred to a Truist Bank account titled to Maryland Congress.

75

329.    Between February 2021 and December 2021, Defendants accepted in excess of $300,000 of funds to a Truist Bank account titled to Maryland Congress.

330.    Upon information and belief, Defendants withdraw large sums of cash from the bank account of Maryland Congress via ATMs cash withdrawals at ATMs in casinos.

331.    Upon information and belief, Defendants drafted checks from a Maryland Congress bank account payable to Maryland Congress and purloined those funds.

332.    Upon information and belief, Defendants withdrew cash from bank accounts belonging to Maryland Congress at bank teller windows and purloined those funds.

333.    Upon information and belief, Maryland Congress has depleted its bank accounts, including by taking out large cash withdrawals and transferring funds.

334.    In total, at least $309,927.70 was removed from the Maryland Congress Truist Bank accounts by transfer or in cash from the period beginning in June 2021 through April 2022.

335.    Upon information and belief, Defendants have used the debit card associated with the bank accounts belonging to Maryland Congress to buy personal items.

336.    As of April 29, 2022, the Truist Bank accounts for Maryland Congress were empty or negative. *See* Affidavit of Alvaro Llosa, dated August 8, 2022 (hereafter "Llosa Aff."), attached hereto as Exhibit II, at attachment 5 ("Ex. II-5") at Bates No. TRUIST_000619. By May 31, 2022, the negative checking account was charged off and closed. *See Id.* at TRUIST_000622-623.

**CLAIMS FOR RELIEF**

## COUNT I: DECLARATORY JUDGMENT THAT DEFENDANTS CANNOT OPERATE UNDER THE MARYLAND PTA BYLAWS
**(All Defendants)**

337.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

338.   Maryland PTA was notified of National PTA's revocation of its charter on March 26, 2021.

339.   Defendants cannot operate under the Maryland PTA Bylaws because National PTA has revoked Maryland PTA's charter and Defendants cannot unilaterally cure the revocation or continue to operate as if it were the same organization as Maryland PTA, which it is not.

340.   Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., cannot operate as if it were the same organization as the Maryland PTA, and cannot operate under the Maryland PTA Bylaws, because Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., is not a "constituent association" of the National PTA.

341.   Defendants cannot operate Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., as if it were the same organization as Maryland PTA, and cannot operate under the Maryland PTA Bylaws, because Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., does not "exist for the purpose of accomplishing, at the state level, the purposes of National PTA in accordance with [National PTA's] policies."

342.   Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., cannot operate as if it were the same organization as Maryland PTA, and cannot operate under the Maryland PTA Bylaws, because Members of the Board of Directors of Alliance, a d/b/a for

Maryland Congress of Parents and Teachers, Inc., were not elected under the Maryland PTA Bylaws.

343.   Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., cannot operate as if it were the same organization as Maryland PTA, and cannot operate under the Maryland PTA Bylaws, because Members of the Board of Directors of Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., are not qualified to serve under the Maryland PTA Bylaws.

344.   Upon information and belief, Defendants have made threats to use Maryland PTA Bylaws to: (i) seize or attempt to seize, freeze or attempt to freeze, or otherwise take control or attempt to take control of Local PTAs' funds and/or bank accounts without Local PTAs' consent; (ii) withdraw charters of Local PTAs; and (iv) seek or otherwise cause the Internal Revenue Service ("IRS") to revoke Local PTAs' 501(c)(3) status without Local PTAs' consent.

345.   As Defendants cannot operate under the Maryland PTA Bylaws, intervention by this Court is necessary to ensure Defendants will not attempt to carry out its threats to the Local PTAs and to prohibit Defendants from continued attempts to operate under the Maryland PTA Bylaws.

## COUNT II: CONVERSION OF NATIONAL PTA'S AND LOCAL PTAS' PROPERTY
### (All Defendants)

346.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

347.   National PTA Bylaws provide that "[m]embers shall pay annual dues, as may be determined by the constituent association, which shall include the portion payable to the local and state PTA constituent association as determined by the local and state PTA constituent associations, and the portion payable to National PTA." Ex. A-31 at Article IV, Section 6.

348. Maryland PTA Bylaws provide that "[e]ach local PTA shall remit the National PTA and Maryland PTA portion of the dues to reach the Maryland PTA office by the dates designated by Maryland PTA." Ex. A-25 at Article VI, Section 13.

349. As described herein, all of the dues are "specific segregated or identifiable funds" that have been "segregated for a particular purpose" and/or "wrongfully obtained or retained … in an identifiable transaction." *Lasater v. Guttmann*, 194 Md. App. 431, 447, 5 A.3d 79, 88. As such, the dues are properly subject to a conversion claim.

350. Defendants converted National PTA and Local PTAs' property by improperly collecting payments due to Maryland PTA and National PTA, and by failing to remit a portion of the collected payments to National PTA, as required under the Maryland PTA and the National PTA Bylaws.

351. Defendants have converted National PTA's property by collecting dues from Local PTAs and failing to remit National PTA's portion of the collected dues in the amount of $19,028.25 to National PTA.

352. Defendants have converted National PTA's property by collecting national and state dues that were due and payable to Maryland PTA and National PTA after the revocation of Maryland PTA's charter on March 26, 2021 and failing to remit the collected dues to National PTA.

353. Defendants' actions have damaged and will continue to damage National PTA.

354. As a result of Defendants' wrongful acts, National PTA is entitled to damages for the violations.

## COUNT III: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (All Defendants)

355. Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

356. Defendants have engaged in intentional and willful acts to interfere with Plaintiff's business relations with Local PTAs and Council PTAs by: (i) falsely accusing National PTA of taking "unwarranted and aggressive action" against Maryland PTA; (ii) falsely accusing National PTA of "attempting to mismanage and bankrupt [Maryland PTA]"; (iii) stating to the Local PTAs and Council PTAs that National PTA is a "bureaucracy" full of "drama"; (iv) falsely claiming that the Maryland PTA charter was not revoked, that Alliance "is still operating the in space of Maryland PTA and Local PTAs and Council PTAs can join Alliance at various membership levels"; and (v) threatening that Local PTAs and Council PTAs that decided not to join Alliance, instead choosing to continue as members of National PTA: (a) would have their charter revoked per the Maryland PTA Bylaws, (b) would lose their tax exempt status as well as their current EIN; (c) would not be able to use their current names going forward; and (d) would lose all their assets, including all bank account funds, which would be taken by Alliance.  Ex. A-22 (Email from L. Carrera, dated March 26, 2021); Ex. A-28.

357. Defendants have engaged in intentional and willful acts to interfere with Plaintiff's business relations with Local PTAs and Council  PTAs by Defendants Carrera and the Board of Directors of Maryland PTA failing to comply with the requirements of the Maryland PTA Bylaws to amend the bylaws, by attempting to mislead local chapters to continue their membership in the Maryland Congress of Parents and Teachers, Inc. and/or join the Alliance, which is not affiliated with National PTA, in order to obtain monies in the form of membership dues, that according to new bylaws that Defendants have not disclosed to them, the dues may be called "membership dues" although according to the undisclosed bylaws they removed the Maryland PTA bylaws

provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership," and instead revised the bylaws to include provisions stating there are "no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors and that it may "in its sole discretion" "take corrective action" against local chapters who join by "dissolving" them or placing them "in involuntary receivership" to "manage" and "exercise governing authority" over them, and further "reserves the right as determined by the President, to involuntarily dissolve [them] and receive [their] assets, including allowing [the organization] to provide documentation to [their] bank to receive [their] funds," none of which was disclosed to them.

358. Defendants have intentionally and willfully interfered with Plaintiff's business relations with Local PTAs by collecting dues from Local PTAs and failing to remit National PTA's portion of the collected dues in the amount of $19,028.25 to National PTA. Ex. B (Affidavit of James Thomasell) at ¶¶4-10; *see also* Ex. A-31 at Article IV, Section 6; Ex. A-25 at Article IV, Section 4 and Article VI, Section 13; Ex. A-30 (Local PTA Bylaws Template) at Article IV, Section 1.

359. Defendants have intentionally and willfully interfered with Plaintiff's business relations with Local PTAs by collecting national and state dues that were due and payable to Maryland PTA and National PTA after the revocation of Maryland PTA's charter on March 25, 2021 and failing to remit the collected dues to National PTA.

360. Defendants' actions were calculated to cause damage to Plaintiff by intentionally, willfully and wrongfully inducing Local PTAs and Council PTAs to terminate their affiliation

with National PTA under the threat that, if they chose to remain as members of National PTA, they: (a) would have their charter revoked, (b) would lose their tax exempt status as well as their current EIN; (c) would not be able to use their current names going forward; and (d) would lose all their assets, including all bank account funds, which would be taken by Alliance.  Ex. A-28; Ex. A at ¶¶26-29.

361.    To the extent that some Local PTAs or Council PTAs choose to remain as members of National PTA as of June 15, 2021, Defendants' threatened actions to revoke their charters, tax exempt status, and current EINs and to seize their assets, including all bank account funds, were also calculated to cause damage.  *Id.*

362.    Defendants' actions in improperly retaining and failing to remit National PTA's dues were calculated to cause financial damage to National PTA in the amount of at least $19,028.25.  Ex. B at ¶¶4-10.

363.    Defendants acted with malice in that their actions, as described above, were taken with the unlawful purpose to cause damage and loss to Plaintiff and to Local PTAs and Council PTAs without right or justifiable cause.

364.    Defendants' actions were calculated to cause great damage to Local PTAs who are being forced to choose between joining Alliance, thereby losing the benefits of being National PTA members, or potentially losing their charters, tax exempt status, EINs and assets.

365.    There is no right or justifiable cause for Defendants to seize Local PTAs' or Council PTAs'  assets or for Defendants to revoke their charters, tax exempt status or EINs.

366.    Defendants' actions have already caused actual damage to National PTA in that, at the very minimum, Defendants' actions in improperly retaining and failing to remit National

PTA's dues to National PTA have caused actual financial damage to National PTA in the amount of at least $19,028.25.  Ex. B at ¶¶4-10.

367.    To the extent that some Local PTAs or Council PTAs choose to remain as members of National PTA as of June 15, 2021, Defendants' threatened actions will result in actual financial damage to them if Defendants seize all their funds and prevent them from raising any additional funds by revoking their charters, tax exempt status, and current EINs.  Ex. A-28; Ex. A at ¶¶26-29.

## COUNT IV: BREACH OF FIDUCIARY DUTY
### (Defendants Carrera and Board of Directors of Maryland PTA)

368.    Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

369.    Defendant Board of Directors of Maryland PTA, and Defendant Carrera as Maryland PTA President, owed fiduciary duties to the Local PTAs and Council PTAs who are constituent associations and members of the Maryland PTA.

370.    Fiduciary duties of directors to corporations, including non-profits, are "well known" in common law.  *Shah v. HealthPlus, Inc*., 116 Md. App. 327, 340–41, 696 A.2d 473, 479–80 (1997).

371.    In Maryland, fiduciary duties of the boards of directors are also codified in Maryland Code, Corporations and Associations Article (C & A) § 2–405.1, which states in pertinent part that:

> A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves:
> (1) In good faith;
> (2) In a manner he reasonably believes to be in the best interests of the corporation; and
> (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.

372.   Defendant Carrera acted as the President of Maryland PTA, and a member of the Board of Directors of Maryland PTA.  As such, Defendant Carrera owed fiduciary duties to the Local PTAs and Council PTAs, members of the Maryland PTA, to act in good faith and in the best interest of the Maryland PTA and its Local PTA and Council PTA members.  Maryland Code, C & A § 2–405.1.

373.   Defendant Board of Directors of Maryland PTA owed fiduciary duties to Local PTAs and Council PTAs, members of the Maryland PTA, to act in good faith and in the best interest of the Maryland PTA and its Local PTA and Council PTA members.  *Id.*

374.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by failing to act in good faith and in the best interest of the Maryland PTA and its Local PTA and Council PTA members.  Maryland Code, C & A § 2–405.1; *Shah*, 116 Md. App. at 340–41, 696 A.2d at 479–80.

375.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by forming Alliance and: (i) falsely claiming through Alliance and/or allowing Alliance to falsely claim that the Maryland PTA charter was not revoked, and that Alliance "is still operating in the space of Maryland PTA and Local PTAs can join Alliance at various membership levels."

376.    Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by using Alliance to threaten them that if they decided to continue as members of National PTA that they: (a) would have their charter revoked per the Maryland PTA Bylaws, (b) would lose their tax exempt status as well as their current EIN; (c) would not be able to use their current names going forward; and (d) would lose all their assets,

including all bank account funds, which would be taken by Alliance.  Ex. A-22; Ex. A-28; Ex. A at ¶¶26-29.

377.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by failing and/or refusing to provide them with notice of proposed amendments to the Maryland PTA Bylaws, as required under the Maryland PTA Bylaws.

378.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by failing and/or refusing to allow Local PTAs to vote on proposed amendments to the Maryland PTA Bylaws, as required under the Maryland PTA Bylaws, thereby unilaterally and without justification taking away their voting rights.

379.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by unilaterally amending the Maryland PTA Bylaws to take away their membership and management rights and to create the right of the President to place them in "involuntary receivership" and/or to "involuntarily dissolve [them] and receive [their] assets, including allowing [Defendants] to provide documentation to [their] bank to receive [their] funds."

380.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by failing to disclose to them that the Purported Amended Bylaws took away their membership and management rights and created the right of the President to place them in "involuntary receivership" and/or to "involuntarily dissolve [them] and receive [their] assets, including allowing [Defendants] to provide documentation to [their] bank to receive [their] funds."

381.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by misleading them into continuing their memberships in the Maryland Congress of Parents and Teachers, Inc. and/or joining the Alliance, which is not and was not affiliated with National PTA, in order to obtain monies in the form of "membership dues" without providing any "membership" benefits.

382.   Specifically, under the Purported Amended Bylaws, Defendants Carrera and the Board of Directors of Maryland PTA effectively took away all Local PTA and Council PTA "membership" benefits by: (i) removing the Maryland PTA bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership"; (ii)  stating that there are "no members" and "payment of dues shall not confer any management rights or vote in" its affairs; (iii) stating that the new organization "shall be solely managed by a Board of Directors," who may "in its sole discretion" "take corrective action" against local chapters by "dissolving" them, receiving their assets, and/ or placing them "in involuntary receivership."

383.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by illegally instructing and causing to be filed twenty-five fraudulent Articles of Dissolution without the knowledge, consent or authorization of the affected Local PTAs or Council PTAs.

384.   Defendants Carrera and the Board of Directors of Maryland PTA breached their fiduciary duties to Local PTAs and Council PTAs by illegally using, and/or causing to be used, Local PTAs' and Council PTAs' bank accounts to pay the filing fees for the unauthorized and

fraudulent Articles of Dissolution filings, without the knowledge, consent or authorization of the affected Local PTAs and Council PTAs.

385.   The aforementioned actions of Defendants Carrera and the Board of Directors of Maryland PTA were not in the best interest of Local PTAs and Council PTAs, but were instead calculated to cause harm to them, and resulted in harm to them through loss of their membership status in Maryland PTA and National PTA, loss of their assets, and loss and/or threatened loss of their charters, tax exempt status, and EINs.

386.   The aforementioned actions of Defendants Carrera and the Board of Directors of Maryland PTA were not in the best interest of the Local PTAs and Council PTAs, but were instead calculated to cause harm to them, and resulted in harm to then through loss of their membership status in Maryland PTA and National PTA, loss of their assets, loss of membership dues, and loss and/or threatened loss of their charters, tax exempt status, and EINs.

387.   The aforementioned actions of Defendants Carrera and the Board of Directors of Maryland PTA also caused harm to National PTA through loss of membership affiliations and membership dues by National PTA.

388.   Defendants' actions in improperly retaining and failing to remit National PTA's dues to National PTA have caused actual financial damage to National PTA in the amount of at least $19,028.25.  Ex. B at ¶¶4-10.

389.   To the extent that Local PTAs and Council PTAs have joined or continued their membership in Alliance or Maryland Congress of Parents and Teachers, Inc. and paid membership dues to Defendants, without knowledge of the Purported Amended Bylaws and the loss of their membership and voting and management rights, and without knowledge of the terms

for involuntary dissolution and involuntary receivership and the taking of their assets and bank funds, Defendants' actions have caused and will continue to cause harm to them.

390.   As a result of Defendants' wrongful acts, Local PTAs, Council PTAs and National PTA are entitled to a judgment that Defendants breached their fiduciary duties to Local PTAs and Council PTAs and to restitution of any benefit(s) obtained by Defendants as a result of their breaches of fiduciary duties to Local PTAs and Council PTAs.

391.   National PTA further prays that this Court appoint a receiver to take over the operations of Maryland Congress pursuant to Md. Code, Com. § 24-201.

### COUNT V: FRAUD
**(Defendants Carrera and Board of Directors of the Maryland PTA)**

392.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

393.   Defendants Carrera and the Board of Directors of the Maryland PTA engaged in fraud in connection with their solicitation of Local PTAs and Council PTAs to continue their memberships in or join the Alliance and/or Maryland Congress of Parents and Teachers, Inc., by intentionally making false statements of material fact or omissions of material facts with the intention that the false statements or omissions be relied upon to the detriment of the Local PTAs, Council PTAs and National PTA.

394.   Defendants Carrera and the Board of Directors of Maryland PTA engaged in fraud by forming Alliance and: (i) falsely claiming through Alliance and/or allowing Alliance to falsely claim that the Maryland PTA charter was not revoked, and that Alliance "is still operating in the space of Maryland PTA and Local PTAs can join Alliance at various membership levels" and (ii) using Alliance to threaten Local PTAs that decide to continue as members of National PTA that they: (a) would have their charter revoked per the Maryland PTA Bylaws, (b) would lose their

tax exempt status as well as their current EIN; (c) would not be able to use their current names going forward; and (d) would lose all their assets, including all bank account funds, which would be taken by Alliance.  Ex. A-22; Ex. A-28; Ex. A at ¶¶26-29.

395.   Defendants Carrera and the Board of Directors of Maryland PTA engaged in fraud by attempting to mislead Local PTAs and Council PTAs in soliciting them to continue their membership in Maryland Congress of Parents and Teachers, Inc. or join Alliance, which is not affiliated with National PTA, in order to obtain monies in the form of membership dues, that according to the Purported Amended Bylaws that Defendants have not disclosed to them, the dues may be called "membership dues" although according to the undisclosed Purported Amended Bylaws they removed the Maryland PTA Bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership," and instead revised the bylaws to include provisions stating there are "no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors and that it may "in its sole discretion" "take corrective action" against local chapters who join by "dissolving" them or placing them "in involuntary receivership" to "manage" and "exercise governing authority" over them, and further "reserves the right as determined by the President, to involuntarily dissolve [them] and receive [their] assets, including allowing [the organization] to provide documentation to [their] bank to receive [their] funds," none of which was disclosed to them.

396.   Defendants Carrera and the Board of Directors of Maryland PTA engaged in fraud by illegally instructing and causing to be filed twenty-five fraudulent Articles of Dissolution without the knowledge, consent or authorization of the affected Local PTAs or Council PTAs.

397.   Defendants Carrera and the Board of Directors of Maryland PTA engaged in fraud by illegally causing to be used the bank account numbers of the Local PTAs and Council PTAs to pay the filing fees for the unauthorized and fraudulent Articles of Dissolution filings, without the knowledge, consent or authorization of the respective Local PTAs and Council PTAs.

398.   The fraudulent actions of Defendants Carrera and the Board of Directors of Maryland PTA were taken with the intent and purpose to defraud Local PTAs and Council PTAs, and such actions were calculated to cause great damage to Local PTAs and Council PTAs, including harm which resulted in one PTSA being dissolved.

399.   The fraudulent actions of Defendants Carrera and the Board of Directors of Maryland PTA have also caused harm in that the 25 Local PTAs and Council PTAs whose bank account information was illegally accessed by Defendants in making unauthorized and fraudulent payments for the false and fraudulent Articles of Dissolution filings have incurred expenses in connection with seeking to reverse and/or obtain the return of monies fraudulently taken out of their bank accounts by Defendants, including but not limited to incurring the costs of closing their bank accounts and opening new accounts.

400.   To the extent that Local PTAs and Council PTAs choose to remain as members of National PTA as of June 15, 2021, Defendants' threatened fraudulent actions will cause harm to the Local PTAs and Council PTAs if Defendants seize all Local PTAs and Council PTAs funds and prevent them from raising any additional funds by revoking their charters, tax exempt status, and current EINs.  Ex. A at ¶¶29, 31, 32.

401.   To the extent that Local PTAs and Council PTAs have joined or continued their membership in Alliance or Maryland Congress of Parents and Teachers, Inc. and paid membership dues to Defendants, in reasonable reliance on the fraudulent actions or omissions of Defendants and without knowledge of the Purported Amended Bylaws and the loss of their membership and voting and management rights, and without knowledge of the terms for involuntary dissolution and involuntary receivership and the taking of their assets and bank funds, Defendants' fraudulent actions and omissions have caused and will continue to cause harm to the Local PTAs and Council PTAs and National PTA.

402.   Defendants' actions have damaged and will continue to damage Local PTAs and Council PTAs and National PTA.

403.   As a result of Defendants' wrongful acts, Local PTAs and Council PTAs and National PTA are entitled to damages for the violations.

## COUNT VI: INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK (LANHAM ACT, 15 U.S.C. § 1114(1))
### (All Defendants)

404.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

405.   Defendants' unauthorized use of the registered National PTA Trademarks and Infringing Properties or any confusingly similar variation of the registered National PTA Trademarks identified herein in connection with the promotion, advertising, provision, sale, and offering for sale of its services and operation of Defendants and their services is likely to confuse, mislead, or deceive relevant public as to the origin, source, sponsorship, or affiliation of said services with National PTA and is intended and is likely to cause such parties to believe in error that the Defendants' services have been authorized, sponsored, approved, endorsed, or licensed

by National PTA, or that Defendants are in some way related to or affiliated with National PTA after their charter had been lawfully revoked.

406.   Defendants have no rights to the registered National PTA Trademarks or Infringing Properties that pre-date National PTA's rights in the National PTA Trademarks.

407.   Defendant's use of the registered National PTA Trademarks after the March 26, 2021 Revocation letter is unauthorized.

408.   National PTA has not authorized Defendants to use the registered National PTA Trademarks or Infringing Properties or any confusingly similar variation of the registered National PTA Trademarks thereafter.

409.   Defendants' continued use of the registered National PTA Trademarks, or other confusingly similar marks, after repeated notices to cease and desist such use, demonstrates willfulness.

410.   Accordingly, Defendants' activities, as described herein, constitute willful infringement of the registered National PTA Trademarks in violation of the Lanham Act, including, but not limited to, 15 U.S.C. § 1114.

411.   Defendants' use of the registered National PTA Trademarks and Infringing Properties or any confusingly similar variations of the registered National PTA Trademarks with the promotion, advertising, and provision of their services has been and continues to be willful, deliberate, unfair, false, deceptive, and is intended to trade upon the goodwill and reputation appurtenant to National PTA's registered National PTA Trademarks.

412.   Defendants' actions have damaged and will continue to damage National PTA.

413.   As a result of Defendants' wrongful acts, National PTA is entitled to injunctive relief prohibiting Defendants from using the registered National PTA Trademarks and Infringing

Properties or any variation thereof, or any other trademarks confusingly similar to National PTA's registered National PTA Trademarks, in accordance with 15 U.S.C. § 1116, and to recover all damages, that National PTA has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a), and treble damages.

414.   This is an exceptional case justifying the award of attorneys' fees under Section 1117(a).

### COUNT VII: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (LANHAM ACT, 15 U.S.C. § 1125(a)) (All Defendants)

415.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

416.   Defendants' conduct complained of herein constitutes federal unfair competition, false designation of origin, and false advertising pursuant to 15 U.S.C. § 1125(a).

417.   Defendants' intentional and unlawful use in commerce of the National PTA Trademarks and Infringing Properties and any confusingly similar variations of the National PTA Trademarks is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' services by National PTA and therefore constitutes false designation of origin and false advertising, in violation of 15 U.S.C. § 1125(a).

418.   Defendants have no rights to the National PTA Trademarks or Infringing Properties that pre-date National PTA's rights in the National PTA Trademarks.

419.   As a direct and proximate result of Defendants' knowing, deliberate, and willful infringement of the National PTA Trademarks, National PTA has suffered and will continue to suffer harm to its organization, reputation, and goodwill.

420.   As a result of these wrongful acts, National PTA is entitled to injunctive relief prohibiting the Defendants from using the National PTA Trademarks and Infringing Properties and any other marks confusingly similar to the National PTA Trademarks, in accordance with 15 U.S.C. § 1116, and to recover all damages, that National PTA has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of its infringing acts in an amount not yet known, as well as the costs of this action, pursuant to 15 U.S.C. § 1117(a).

421.   This is an exceptional case justifying the award of attorneys' fees under Section 1117(a).

### COUNT VIII: ANTICYBERSQUATTING CONSUMER PROTECTION ACT (LANHAM ACT: 15 U.S.C.  § 1125 (d)) (All Defendants)

422.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

423.   Defendants are using the domain name https://mdpta.org/ ("Infringing Domain Name").

424.   The Infringing Domain Name incorporates and is confusingly similar to the National PTA Trademarks.

425.   The National PTA Trademarks were strong and distinctive at the time that Defendants began using the Infringing Domain Name. The National PTA Trademarks remain strong and distinctive at this time.

426.   National PTA has been damaged by Defendants' unlawful use of the Infringing Domain Name and will suffer irreparable harm.

427.   Defendants continue to use the Infringing Domain Name in bad faith, with the intent to profit from use of the National PTA Trademarks.

428.    Defendants' acts, as aforesaid, are in violation of the Anti-cybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

429.    As a result of Defendants' actions, National PTA is entitled to immediate transfer of any domain names incorporating the National PTA Trademarks, including the Infringing Domain Name, that are used, registered, or under the control of Defendants, in accordance with 15 U.S.C. § 1125(d)(1)(c); and an award of statutory damages of between $1,000 and $100,000 per each of the Infringing Domain Names pursuant to 15 U.S.C. § 1117(d).

**COUNT IX : DILUTION**
**(LANHAM ACT: 15 U.S.C. § 1125 (c))**
**(All Defendants)**

430.    Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

431.    National PTA's Trademarks "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" and "CONGRESS OF PARENTS AND TEACHERS" are famous, as that term is used in 15 U.S.C. § 1125 (c), to the relevant public as they have been in use by National PTA nationwide for over 100 years.

432.    Defendants' unauthorized use of the National PTA Trademarks and Infringing Properties and any confusingly similar variations of the National PTA Trademarks has caused National PTA's "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" and "CONGRESS OF PARENTS AND TEACHERS" marks to lose, and will continue to lose, their ability to serve as unique identifiers as an affiliate of the National PTA and as a unique source identifier for the PTA Goods and Services.

433.    The Infringing Properties' similarity to the famous "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" and

"CONGRESS OF PARENTS AND TEACHERS" has caused, and will continue to cause, local chapters and the public to mistakenly associate these famous National PTA Trademarks with Defendants.

434.    Defendants' use of the National PTA Trademarks and Infringing Properties and any confusingly similar variations of the National PTA Trademarks are likely to dilute the distinctive quality of the famous National PTA Trademarks "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" and "CONGRESS OF PARENTS AND TEACHERS" marks by blurring in violation of 15 U.S.C. § 1125(c).

435.    Defendants' use of the National PTA Trademarks and Infringing Properties and any confusingly similar variations of the National PTA Trademarks are likely to dilute the distinctive quality of the famous National PTA Trademarks "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" and "CONGRESS OF PARENTS AND TEACHERS" marks by tarnishment in violation of 15 U.S.C. § 1125(c).

436.    Defendants' continued use of the National PTA Trademarks and Infringing Properties and any confusingly similar variations of the National PTA Trademarks has caused, and will continue to cause, irreparable harm and injury to the National PTA and the National PTA's reputation and goodwill, for which the National PTA has no adequate remedy at law.

437.    The threat of future injury to the general public and to the National PTA identity, goodwill and reputation necessitates the award of injunctive relief to prevent the Defendants' continued wrongful and false acts and/or the use and infringement of National PTA's "PTA" and "PARENT TEACHER ASSOCIATION" and "PARENT TEACHER STUDENT ASSOCIATION" and "CONGRESS OF PARENTS AND TEACHERS" marks.

438.   As a result of Defendants' willful actions, National PTA is entitled to an injunction against further dilution, attorneys' fees and costs, monetary damages, and treble damages.

## COUNT X: TRADEMARK INFRINGEMENT UNDER MD. CODE BUS. REG. § 1-414
### (All Defendants)

439.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

440.   Defendants' willful use without Plaintiff's consent of the National PTA Trademarks and Infringing Properties or any confusingly similar variations of the National PTA Trademarks identified herein in connection with the promotion, advertising, provision, sale, and offering for sale of its services and operation of Defendants and their services is likely to confuse, mislead, or deceive relevant public as to the origin, source, sponsorship, or affiliation of said services with National PTA and is intended and is likely to cause such parties to believe in error that the Defendants' services have been authorized, sponsored, approved, endorsed, or licensed by National PTA, or that Defendants are in some way related to or affiliated with National PTA after their charter had been lawfully revoked.

441.   Upon revocation of Maryland PTA's charter with National PTA on March 26, 2021, National PTA has not authorized Defendants to use the National PTA Trademarks or Infringing Properties or any confusingly similar variations of the National PTA Trademarks. Defendants' activities, as described herein, constitute trademark infringement in violation of Md. Code Bus. Reg. § 1-414 *et seq.*

442.   Subsequent to the revocation of Maryland PTA's charter with National PTA on March 26, 2021, Defendants' use of the National PTA Trademarks and Infringing Properties or any confusingly similar variations of the National PTA Trademarks with the promotion, advertising, and provision of their services has been and continues to be willful, deliberate, unfair,

false, deceptive, and is intended to trade upon the goodwill and reputation appurtenant to the National PTA Trademarks.

443.   Defendants' actions have damaged and will continue to damage National PTA.

## COUNT XI: TRADEMARK INFRINGEMENT, FALSE ADVERTISING, AND UNFAIR COMPETITION UNDER MARYLAND COMMON LAW
### (All Defendants)

444.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

445.   Defendants' willful use without Plaintiff's consent of the National PTA Trademarks and Infringing Properties or any confusingly similar variations of the National PTA Trademarks identified herein in connection with the promotion, advertising, provision, sale, and offering for sale of its services and operation of Defendants and their services is likely to confuse, mislead, or deceive relevant public as to the origin, source, sponsorship, or affiliation of said services with National PTA and is intended and is likely to cause such parties to believe in error that the Defendants' services have been authorized, sponsored, approved, endorsed, or licensed by National PTA, or that Defendants are in some way related to or affiliated with National PTA after their charter had been lawfully revoked.

446.   National PTA has not authorized Defendants to use the National PTA Trademarks or Infringing Properties or any confusingly similar variations of the National PTA Trademarks.

447.   Defendants' actions, as described herein, constitute infringement of National PTA's proprietary rights in its National PTA Trademarks, misappropriation of National PTA's goodwill in those trademarks, and unfair competition under Maryland common law.

448.   Defendants' actions, as described herein, constitute false and misleading descriptions and misrepresentations of fact in commerce, which, in advertising and promotion,

materially misrepresent the nature, characteristics, and qualities of Defendants' services and constitute false and deceptive advertising under Maryland common law.

449.   Defendants' actions have damaged and will continue to damage National PTA.

## COUNT XII: VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT MD. CODE ANN. COMMERCIAL LAW § 13-303 UNFAIR OR DECEPTIVE TRADE PRACTICES
### (All Defendants)

450.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

451.   Md. Code Commercial Law § 13-303 (3) provides that "[a] person may not engage in any unfair, abusive, or deceptive trade practice. . . in [t]he offer for sale …of educational services."

452.   Md. Code Commercial Law  § 13-301 (1) defines unfair, abusive, or deceptive trade practices to include "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers…"

453.   Defendants violated Md. Code Commercial Law § 13-303 (3) by engaging in unfair and deceptive trade practices by attempting to mislead local chapters by soliciting them to continue their membership in Maryland Congress of Parents and Teachers, Inc. or join Alliance in order to obtain monies in the form of membership dues, that according to new bylaws that Defendants have not disclosed to them, the dues may be called "membership dues" although according to the undisclosed bylaws they removed the Maryland PTA bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership," and instead revised the bylaws to include provisions stating

99

there are "no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors and that it may "in its sole discretion" "take corrective action" against local chapters who join by "dissolving" them or placing them "in involuntary receivership" to "manage" and "exercise governing authority" over them, and further "reserves the right as determined by the President, to involuntarily dissolve [them] and receive [their] assets, including allowing [the organization] to provide documentation to [their] bank to receive [their] funds," none of which was disclosed to them.

454.  Plaintiff's claims herein fall within the purview of unfair or deceptive trade practices as defined by Md. Code Commercial Law § 13-301(1) as Defendants are repeatedly attempting to deceive and mislead local chapters in Maryland to obtain monies in the form of membership dues, that according to new bylaws that Defendants have not disclosed to them, the dues may be called "membership dues" although according to the undisclosed bylaws they removed the Maryland PTA bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership," and instead revised the bylaws to include provisions stating there are "no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors and that it may "in its sole discretion" "take corrective action" against local chapters who join by "dissolving" them or placing them "in involuntary receivership" to "manage" and "exercise governing authority" over them, and further "reserves the right as determined by the President, to involuntarily dissolve

[them] and receive [their] assets, including allowing [the organization] to provide documentation to [their] bank to receive [their] funds," none of which was disclosed to them.

455.    National PTA is entitled to recover reasonable attorney's fees pursuant to Md. Code Commercial Law § 13-408 (b) as a result of having to file claims against Defendants for attempting to mislead local chapters in Maryland to continue their membership in Maryland Congress of Parents and Teachers, Inc. or join Alliance and being misled as to the affiliation with National PTA and as to their status as members, as according to the undisclosed bylaws they removed the Maryland PTA bylaws provision stating that "[e]very individual who is a member of a local PTA is, by virtue of that fact, a member of National PTA and of Maryland PTA by which such local PTA is chartered, and is entitled to all the benefits of such membership," and instead revised the bylaws to include provisions stating there are "no members" and "payment of dues shall not confer any management rights or vote in" its affairs, and it "shall be solely managed by a Board of Directors," who are elected only by the Board of Directors and that it may "in its sole discretion" "take corrective action" against local chapters who join by "dissolving" them or placing them "in involuntary receivership" to "manage" and "exercise governing authority" over them, and further "reserves the right as determined by the President, to involuntarily dissolve [them] and receive [their] assets, including allowing [the organization] to provide documentation to [their] bank to receive its funds," none of which is disclosed in the membership solicitation.

456.    Defendants actions have violated Md. Code § 13-303 (3) by engaging in unfair and deceptive trade practices.

457.    Defendants' actions have damaged and will continue to damage National PTA.

## COUNT XIII: BREACH OF CONTRACT
### (Membership Dues)
### (Defendant Maryland PTA)

458.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

459.   Pursuant to Maryland PTA's agreements with National PTA, including the Standards of Affiliation (Ex. A-31) and the Memorandum of Understanding (Ex. A-29) agreeing to comply with National PTA's Standards of Affiliation, and the bylaws of both Maryland PTA (Ex. A-25) and National PTA (Ex. A-31), Maryland PTA is required to collect dues in the amount of $2.25 per member on behalf of National PTA for each new member that joins Maryland PTA each month.   August 3, 2022 Affidavit of James Thomasell ("August 3, 2022 Thomasell Aff."), Paragraphs 4-5, attached hereto as Exhibit HH.

460.   Further, pursuant to those agreements, specifically the Standards of Affiliation, Maryland PTA is required to "submit a monthly membership dues report and pay any outstanding amounts due using the Automated Clearing House (ACH) payment system also known as Electronic Fund Transfers." *See* August 3, 2022 Thomasell Aff., at Paragraphs 4-8 (Ex. HH).

461.   On or before April 5, 2021, Maryland PTA submitted the Excel spreadsheet referenced above through the State Portal, indicating that Maryland Congress of Parents and Teachers, Inc. had collected dues from 8,457 members for the month of or prior to March 2021. *Id*. at Paragraph 9; *see also* true and accurate copy of Excel spreadsheet, attached as Attachment A to the August 3, 2022 Thomasell Aff. (Ex. HH).

462.   At the rate of $2.25 per member for the portion of dues from each member owed to National PTA, the amount due and owing to National PTA from Maryland PTA  for the dues collected for the month of or prior to March 2021, equates to $19,028.25.  *Ibid*.

463.    Following its usual procedures set forth above, National PTA attempted to process the ACH for the amounts due from the State PTA for Maryland, Maryland Congress of Parents and Teachers, Inc., on April 20, 2021.  *See* National PTA's Wells Fargo checking account statement for April 1, 2021-April 30, 2021, Attachment B to the August 3, 2022 Thomasell Aff. (Ex. HH); *see also* August 3, 2022 Thomasell Aff., at Paragraph 10 (Ex. HH).

464.    The ACH that was processed as referenced above for the dues owed to National PTA collected by Maryland Congress of Parents and Teachers, Inc. was rejected due to insufficient funds on April 22, 2021.  *Ibid.*

465.    On May 6, 2021, National PTA sent an email to Maryland Congress of Parents and Teachers, Inc. stating that the ACH submitted to collect the $19,028.35 in membership dues for the period on or before March 2021 that Maryland PTA owed to National PTA was ejected due to insufficient funds."  *See* August 3, 2022 Thomasell Aff., at Paragraph 11 and Email from J. Thomasell to L. Carrera, dated May 6, 2021, Attachment C to August 3, 2022 Thomasell Aff. (Ex. HH).

466.    On May 18, 2021, National PTA sent to Maryland PTA a demand letter for the amount due and owing and demanding payment of $19,028.25 through the United States Postal Service with return receipt request and certified mail on May 18, 2021.  Letter from J. Thomasell to Maryland Congress of Parents and Teachers, Inc., dated May 18, 2021, Attachment D to August 3, 2022 Thomasell Aff. (Ex. HH). ;  August 3, 2022 Thomasell Aff., at Paragraph 12 (Ex. HH).

467.    As of the date of the filing of this Third Amended Complaint, National PTA has not received any response from Maryland PTA to the May 6, 2021 or May 18,  2021 demands for $19,028.25 due and owing National PTA from Maryland PTA, or payment of any portion of the $19,028.25 due and owing.  *Id*. at Paragraph 13.

468.   Subsequent to the identification by Maryland PTA of the 8,457 members from whom Maryland PTA received membership dues requiring payment to National PTA of the $19,028.25 portion due and owing to National PTA referenced in Paragraphs 267-282 above, Maryland PTA received Local PTA membership dues from Local PTAs in the form of checks made out to Maryland PTA, Maryland Congress of Parents and Teachers, Inc. or MDPTA, which Local PTA dues included the $2.25 portion of member dues Maryland PTA owed to National PTA.  These checks are reflected in Attachment 2 to the Affidavit of Alvaro Llosa, dated August 8, 2022 (hereafter "Llosa Aff."),  attached hereto as Exhibit II.

469.   Also subsequent to the identification by Maryland PTA of the 8,457 members from whom Maryland PTA received membership dues requiring payment to National PTA of the $19,028.25 referenced in Paragraphs 267-282 above, on information and belief, Maryland PTA received Local PTA membership dues from Local PTAs in the form of transfers from MemberHub LLC,  which transfers included the $2.25 portion of member dues Maryland PTA owed to National PTA.  These MemberHub transfers are reflected in Attachment 3 to the Llosa Aff. (Ex. II).

470.   Also subsequent to the identification by Maryland PTA of the 8,457 members from whom Maryland PTA received membership dues requiring payment to National PTA of the $19,028.25 referenced in Paragraphs 267-282 above, on information and belief, Maryland PTA received Local PTA membership dues from Local PTAs in the form of transfers from WePay, which transfers included the $2.25 portion of member dues Maryland PTA owed to National PTA. These WePay transfers are reflected in Attachment 4 to the Llosa Aff. (Ex. II).

471.   Also subsequent to the identification by Maryland PTA of the 8,457 members from whom Maryland PTA received membership dues requiring payment to National PTA of the

$19,028.25 referenced in Paragraphs 267-282 above, on information and belief, Maryland PTA received Local PTA membership dues from Local PTAs in the form of other transfers or payment methods, including cash, which dues payments included the $2.25 portion of member dues Maryland PTA owed to National PTA.

472.   As of the date of the filing of this Third Amended Complaint, National PTA has not received any of the $2.25 per member dues collected or received by Maryland PTA after the dues collected by Maryland PTA requiring payment to National PTA of the $19,028.25 referenced in Paragraphs 267-282 above.  *See* August 3, 2022 Thomasell Aff., at Paragraph 14 (Ex. HH).

473.   The failure of Maryland PTA to remit to National PTA the member dues that are due and owing to National PTA limits National PTA's ability to service the Local PTAs and their members.  *Ibid.*

474.    The harm resulting from Maryland PTA not meeting its contractual obligations to turn over to National PTA the $2.25 portion of the Local PTA members' dues paid by the Local PTAs and owed to National PTA has harmed National PTA in its ability to fund and maintain funding levels for programs and providing benefits, including programs, that National PTA is able to provide to Local PTAs and their members.  *Ibid*.

475.   Pursuant to its agreements with National PTA referenced above, Defendant Maryland PTA was required to remit payment to Plaintiff National PTA in the amount of $19,028.25.

476.   Defendant Maryland PTA did not remit payment to Plaintiff National PTA of $19,028.25.

477.   Defendant Maryland PTA collected and received member dues payments from Local PTAs after the period covered by the demand for $19,028.25,  which pursuant to Maryland

PTA's agreements with National PTA, Maryland PTA  was required to pay to National PTA $2.25 per new member,  the total amounts due and owing to National PTA to be determined.

478.   Defendant Maryland PTA did not submit any of the $2.25 member dues received and due and owing to National PTA after the period covered by the demand for $19,028.25.

479.   Defendant Maryland PTA did not report any National PTA membership dues collected or received by Maryland PTA after the period covered by the demand for $19,028.25.

480.   Defendant Maryland PTA did not remit payment to National PTA of any National PTA membership dues collected or received by Maryland PTA after the period covered by the demand for $19,028.25.

481.   Defendant Maryland PTA violated the agreements with National PTA, including the Standards of Affiliation and Memorandum of Understanding, by Maryland PTA failing to remit the $19,028.25 in dues owed to National PTA that Maryland PTA received from Local PTAs based on the 8,457 new members referenced in Paragraphs 271-276 and 459-472 above, and by failing to remit additional amounts in dues owed to National PTA that Maryland PTA collected or received from Local PTAs after the period covered by the demand for $19,028.25 through to the present.

482.   Plaintiff suffered damages in the amount of at least $19,028.25 as the result of Defendant's actions.

## COUNT XIV: BREACH OF CONTRACT
### (License Agreement)
### (Defendant Maryland PTA)

483.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

484.   As referenced herein, Maryland PTA signed a Memorandum of Understanding agreeing, among other things, to comply with the National PTA Standards of Affiliation and

"operate according to the vision, mission, values, and policies of National PTA" in order for Maryland PTA to maintain its affiliation with National PTA.  See Paragraphs 16-19 above.

485.   Among the "Privileges of Affiliation" provided to Maryland PTA by agreeing to be bound by he Standards of Affiliation, and by "remain[ing] in compliance with the Standards of Affiliation, the Requirements, and the Procedures," was continuing "Affiliation with National PTA-Status as a Chartered Congress."  *See* Paragraphs 20-21 above.

486.   Among the "Privileges of Affiliation" provided to Maryland PTA by agreeing to be bound by the Standards of Affiliation, and by "remain[ing] in compliance with the Standards of Affiliation, the Requirements, and the Procedures" is "[l]icense to use the National PTA trademarks: PTA, PARENT TEACHER ASSOCIATION, PTSA, PARENT TEACHER STUDENT ASSOCIATION and the related logos in conjunction with the name of the State Constituent Association; license to use the above marks as well as other National PTA marks . . . as permitted by the National PTA policies,  procedures and directives."  *Ibid*.

487.   With respect to the National PTA Trademarks, pursuant to the Standards of Affiliation, "National PTA is the sole and exclusive owner of the [National] PTA Trademarks" and "National PTA grants state constituent associations a license to use the [National] PTA Trademarks as part of their own names pursuant to the Standards of Affiliation" and "as permitted by the National PTA policies, procedures and directive." *See* Paragraph 24 above.

488.    With respect to the National PTA Trademarks, pursuant to the Standards of Affiliation, Maryland PTA agreed that as a "State constituent association" it "will take no action that will diminish the value and goodwill associated with the [National] PTA Trademarks" and "will not register with any governmental authority any name or mark which incorporates the [National] PTA Trademarks or any confusing similar marks."  *See* Paragraph 26 above.

489.   With respect to the National PTA Trademarks, pursuant to the Standards of Affiliation Maryland PTA agreed that if Maryland PTA as a "state constituent association receives notice from National PTA that its charter has been revoked, the state constituent association shall immediately cease to identify itself as affiliated with PTA, shall cease all use of the [National] PTA Trademarks, and shall take such other steps as directed by the National PTA." *Ibid*.

490.   Maryland PTA agreed that the right to use the names, Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, and using in any manner references to PTA, which includes mdpta, is dependent on (i) continuing affiliation with National PTA; (ii) continuing compliance with the terms specified in the Standards of Affiliation, the Procedures, the MOU, and any other policies, procedures or directives related to the use of the National PTA Trademarks; and (iii)  continuing to be a chartered constituent association of National PTA.  *See* Paragraphs 27-29  above.

491.   Maryland PTA agreed that the right to use the names, Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, and using in any manner references to PTA, which includes mdpta, would cease upon revocation of Maryland PTA's affiliation with National PTA. *See* Paragraphs 27-31 above.

492.    On May 20, 2020, after a lack of response from Maryland PTA to National PTA's requests for information relating to Maryland PTA's lack of compliance with National PTA Standards of Affiliation, National PTA placed Maryland PTA into the "Probation Phase of Noncompliance."  *See* Paragraph 34 above.

493.    Subsequently, National PTA continued to work with Maryland PTA through a Restructuring Phase "to help Maryland PTA move into compliance with the National PTA Standards of Affiliation Policy."  *See* Paragraph 45 above.

494.    In December 2020, National PTA was made aware that Defendant Carrera, the then acting President of Maryland PTA, was facing a criminal charge of "felony Financial Exploitation of an Elderly Person, in violation of D.C. Code § 22-933.01."  *See* Paragraph 46 above.

495.    After Defendant Carrera refused to remove herself from signing authority on the Maryland PTA bank accounts until the charges were successfully resolved, and based on Maryland PTA's repeated failures to come into compliance with its bylaws and the National Standards of Affiliation, on March 26, 2021, National PTA revoked the charter of the Maryland PTA.  *See* Paragraphs 47-49 above.

496.    Pursuant to the Standards of Affiliation, immediately upon receipt of notice from National PTA of revocation of a state constituent's charter, a state constituent association shall "cease to identify itself as affiliated with PTA" and "cease all use of the [National] PTA Trademarks" and the March 26, 2021 Revocation Letter informed Defendants that the revocation of Maryland PTA's charter with National PTA was "effective immediately" and that "[t]he entity currently known as the Maryland PTA must change its name effective immediately" and "[i]t is no longer part of the PTA family."  *See* Paragraphs 51-53 above.

497.    As a consequence of the March 26, 2021 revocation of its charter with National PTA, Maryland PTA was no longer considered a "constituent association" of National PTA and the license giving the right to use the names, Maryland  Congress of Parents and Teachers, Inc. and Maryland PTA, as well as the right use National PTA trademarks,  including "PTA, PARENT TEACHER ASSOCIATION, PTSA, PARENT TEACHER STUDENT ASSOCIATION and the

related logos in conjunction with the name of the state constituent association" and in any manner the use of PTA, including mdpta, was terminated. *See* Paragraphs 54-57 above.

498.   The March 26, 2021 Revocation Letter also specifically informed Defendants Carrera, Maryland PTA and Board of Directors that "[y]ou must cease all public use of the PTA names and logos immediately and cease representing your corporate entity as an affiliate of National PTA" and "we must instruct you to cease using the name and logo of the PTA." *See* Paragraph 58 above.

499.   Subsequent to the revocation of its charter with National PTA on March 26, 2021, Maryland PTA continued to use the name Maryland Congress of Parents and Teachers, Inc. and Maryland PTA and mdpta and logos with Maryland Congress of Parents and Teachers, Inc., in violation of its license agreement with National PTA, which license rights to use the names Maryland Congress of Parents and Teachers, Inc. and Maryland PTA and mdpta and logos with Maryland Congress of Parents and Teachers, Inc. terminated when the charter of affiliation with National PTA was revoked on March 26, 2021.

500.   Subsequent to the revocation of its charter with National PTA on March 26, 2021, Maryland PTA continued to use the National PTA trademarks: PTA, PARENT TEACHER ASSOCIATION, PTSA, PARENT TEACHER STUDENT ASSOCIATION, and the related logos as well as other National PTA Trademarks and and formulations of PTA, in violation of its license agreement with National PTA, which license rights terminated when the charter of affiliation with National PTA was revoked on March 26, 2021.

501.   Defendants' violations of Maryland PTA's license and other agreements with National PTA subsequent to March 26, 2021 include, among others, using the names Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, and formulations of PTA, including

mdpta, and the logo for Maryland Congress of Parents and Teachers, Inc., as well as referencing the ability to communicate with Maryland Congress of Parents and Teachers, Inc. and Maryland PTA at mdpta.org, in connection with identifying itself, advertising itself, soliciting members and other aspects of doing business, including Defendant Carrera identifying herself as "President of Maryland Congress of Parents and Teachers, Inc." and indicating she could be contacted via the mdpta email: president@mdpta.org and contactus@mdpta.org and also www.mdpta.org.  *See* Paragraphs 59, 189, 217, 322 above.

502.   The violations by Defendants of the Maryland PTA license and other agreements with National PTA has harmed and continues to harm National PTA in damage to its brand and name and loss of goodwill, and loss of members, as well as other damages to be determined

## COUNT XV: UNJUST ENRICHMENT
### (All Defendants)

503.   Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

504.   Defendant Maryland PTA collected and received payments from Local PTAs for the month of or prior to March 2021 for which demand was made to Maryland PTA for $19,028.25 for the 8,457 members, referenced in Paragraph ## above, that represented dues owed to National PTA.

505.   Defendant Maryland PTA collected and received payments from Local PTAs for new members after the period covered by the demand for $19,028.25, that included $2.25 per new member in dues owed to National PTA.

506.   Defendant Maryland PTA collected and received payments from Local PTAs for new members after the period covered by the demand for $19,028.25, in part based on Maryland PTA's use of the Maryland PTA or Maryland Congress of Parents and Teachers, Inc. names, and use of mdpta and National PTA trademarks and logos in communications to the public, in

violation of its license with National PTA to use those names, which license terminated when National PTA revoked its charter of affiliation with Maryland PTA.

507.   Defendant Maryland PTA deposited into and/or allowed to be deposited into its bank accounts the dues collected or received from Local PTAs that were owed to National PTA. *See* Paragraph 461 above.

508.   Defendant Maryland PTA retained in its bank accounts the dues collected or received from Local PTAs that were owed to National PTA.

509.   Defendant Maryland PTA failed to remit to National PTA the $2.25 per member in dues collected or received from Local PTAs covered by the demand for $19,028.25, that were owed to National PTA.

510.   Defendant Maryland PTA failed to remit to National PTA the $2.25 per new member in dues collected or received from Local PTAs after the period covered by the demand for $19,028.25, that were owed to National PTA.

511.   Defendant Maryland PTA used some portion of the funds in its bank accounts, which included the dues owed to National PTA, to pay for goods or services to benefit Maryland PTA.

512.   Defendant Carrera removed funds from Maryland PTA bank accounts, including the dues owed to National PTA, via ATM withdrawals, and on information and belief via counter check withdrawals, checks, and credit or debit card charges, to benefit herself through the receipt of cash for personal use and/or payment for goods and services for personal use.

513.   Defendant Maryland PTA directly benefited from the wrongful retention and misuse of the dues owed to National PTA.

514.   Defendant Carrera directly benefited from the wrongful retention and misuse of the dues owed to National PTA.

515.    Defendants directly benefited from the violations of Maryland PTA's license and other agreements with National PTA subsequent to March 26, 2021, including by using the names

Maryland Congress of Parents and Teachers, Inc. and Maryland PTA, and the logo for Maryland Congress of Parents and Teachers, Inc., as well as referencing the history and legacy of Maryland Congress of Parents and Teachers Inc. and Maryland PTA, and referencing the ability to communicate with Maryland Congress of Parents and Teachers, Inc. and Maryland PTA at mdpta.org, and in connection with identifying itself, advertising itself, soliciting members, submitting proposals for paying contracts, and other aspects of doing business.

516.    Defendants had knowledge of these benefits.

517.    Defendants accepted and retained these benefits.

518.     Plaintiff suffered damages in the amount of at least $19,028.25 as the result of Defendants' actions or inactions, and additional amounts to be determined.

## COUNT XVI: INVOLUNTARY DISSOLUTION
## (Against Maryland Congress of Parents and Teachers, Inc.)

519.    Plaintiff adopts and incorporates by reference all of the foregoing paragraphs of this Third Amended Complaint as if fully set forth herein.

520.    Plaintiff states that Defendant Maryland Congress of Parents and Teachers, Inc. owed Plaintiff dues from 8,457 National PTA members for the month of or prior to March 2021. Exhibit B at ¶8.  This equates to $19,028.25.  *Id*.

521.    National PTA attempted to process the ACH for the amounts due from Maryland PTA on April 20, 2021.  *Id*. at ¶9; National PTA's Wells Fargo checking account statement for April 1, 2021-April 30, 2021, attached at Ex. B, Attachment 1.  The ACH was rejected due to insufficient funds on April 22, 2021.  Ex. B at ¶9.

522.    A demand letter was sent to Maryland PTA through the United States Postal Service with return receipt request and certified mail on May 18, 2021.  *Id*. at ¶10; Letter from J. Thomasell to Maryland Congress of Parents and Teachers, Inc., dated May 18, 2021, attached at Ex. B, Attachment 2.

523.   The demand letter requested Maryland PTA pay the full amount of $19,028.25 by May 25, 2021.  *Id.*

524.   As of the date of this filing, National PTA has not received any response to its demand for payment of the $19,028.25 due and outstanding for the month of or prior to March 2021.

525.   As of the date of this filing, National PTA has not received payment of the $19,028.25 due and outstanding for the month of or prior to March 2021.  *Id.*

526.   Upon information and belief, as of May 31, 2022 Maryland Congress is insolvent.

527.   As of May 31, 2022, Maryland Congress's accounts at Truist Bank are at zero and/or charged off.  *See* Llosa Aff. (Ex. II) at Attachment 3.

528.   Maryland Congress has been sued by Quality Business Solutions, Inc. for failure to pay a debt.  *See* Maryland Judiciary Casesearch docket printout of *Quality Business Solutions vs. Maryland Congress of Parents and Teachers, Inc.*, in the District Court for Anne Arundel County, Case No. D-07-CV-22-008800, attached hereto as Exhibit JJ.

529.   Pursuant to MD. Corporations and Associations Code Ann. § 3-413(c), a creditor of a corporation "may petition a court of equity to dissolve the corporation on grounds that it is unable to meet its debts as they mature in the ordinary course of its business."

530.   Maryland Congress's debt to National PTA matured on April 20, 2021 in the ordinary course of business.

531.   Maryland Congress has yet to pay its debt to National PTA.

532.   National PTA is a creditor of Maryland Congress

533.   Upon information and belief, Maryland Congress is insolvent.

114

534.   National PTA, as a creditor of Maryland Congress, requests this Court dissolve Maryland Congress.

535.   As Maryland Congress is a nonstock corporation, pursuant to Md. Corporations and Associations Code Ann. § 5-208 (b)(4), after the liabilities and obligations of the corporation are met, the remaining assets are to be disposed of as stated in the Maryland Congress bylaws.

536.   Pursuant to Article IV Section 8 of the Maryland Congress bylaws, upon dissolution the remaining assets of the corporation are turned over to National PTA.  *See* Exhibit A25.

537.   Plaintiff requests that a receiver be appointed by the Court to locate all assets of Maryland Congress, operate Maryland Congress long enough to settle all debts and liabilities, dissolve the corporation, and transfer all remaining assets to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of actions, and for an Order:

I.     That Defendants are prohibited from operating under the Maryland PTA bylaws in effect as of July 2019 or as purported to be amended March 27, 2021;

II.    That the Maryland PTA Bylaws purported to be effective March 27, 2021 were not validly amended or adopted, and thus are invalid and not effective;

III.   That Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., cannot operate as if it were the same organization as the Maryland PTA, and cannot operate under the Maryland PTA Bylaws, because Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., is not a "constituent association" of the National PTA;

IV.   That Defendants cannot operate Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., as if it were the same organization as Maryland PTA, and cannot operate under the Maryland PTA Bylaws, because Alliance, a d/b/a for Maryland Congress of Parents and Teachers, Inc., does not "exist for the purpose of accomplishing, at the state level, the purposes of National PTA in accordance with [National PTA's] policies";

V.   That the Court order a receiver pursuant to Md. Code, Com. § 24-201 to manage Maryland Congress of Parents and Teachers, Inc., excluding Defendants LaTonja Carrera and Board of Directors of Maryland Congress of Parents and Teachers, Inc. from the management of or accessing the assets of Maryland Congress of Parents and Teachers, Inc.

VI.   That Defendants are prohibited from seizing or attempting to seize, freezing or attempting to freeze, threatening to seize or freeze, or otherwise taking control or attempting to take control of Local PTAs' or Council PTAs' funds and/or bank accounts without Local PTAs' or Council PTAs' consent;

VII.   That Defendants are prohibited from withdrawing or threatening to withdraw charters of Local PTAs;

VIII.   That Defendants are prohibited from seeking to prevent, or otherwise acting to prevent, or threatening to seek to prevent or act to prevent Local PTAs or Council PTAs from using their current names;

IX.   That Defendants are prohibited from seeking, or otherwise causing, or threatening to seek or cause the Internal Revenue Service ("IRS") to revoke Local PTAs' or Council PTAs' 501(c)(3) status or EINs without their consent;

116

X.     That Defendants are prohibited from collecting or seeking to collect any payments due to the National PTA;

XI.    That Defendants shall pay to National PTA dues owed in the amount of at least $19,028.25;

XII.   For general and special damages according to proof, in an amount to be determined at trial;

XIII.  Costs on Plaintiff's behalf expended;

XIV.   For restitution for benefits obtained by Defendants as a result of their breaches of fiduciary duties;

XV.    For an award of damages for Plaintiff's claim of fraud;

XVI.   The issuance of preliminary and permanent injunctions enjoining and restraining Defendants, their associates, agents, servants, employees, officers, members, directors, representatives, successors, assigns, attorneys and all persons in active concert or participation with it who learn of the injunction through personal service or otherwise from:

    A.   using the registered National PTA Trademarks and Infringing Properties or any variation thereof, or any other trademarks confusingly similar to National PTA's registered National PTA Trademarks, in accordance with 15 U.S.C. § 1116;

    B.   using the National PTA Trademarks and Infringing Properties and any other marks confusingly similar to the National PTA Trademarks, in accordance with 15 U.S.C. § 1116;

      C.  further dilution of National PTA Trademarks and Infringing Properties of the famous National PTA Trademarks "PTA", "PARENT TEACHER ASSOCIATION", "PARENT TEACHER STUDENT ASSOCIATION" and "CONGRESS OF PARENTS AND TEACHERS";

XVII.    That Defendants shall immediately transfer any domain names incorporating the National PTA Trademarks, including the Infringing Domain Name, that are used, registered, or under the control of Defendants, in accordance with 15 U.S.C. § 1125(d)(1)(c);

XVIII.    An award of statutory damages of between $1,000 and $100,000 per each of the Infringing Domain Names pursuant to 15 U.S.C. § 1117(d);

XIX.    An award for all damages that National PTA has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts in an amount not yet known;

XX.    An award for all damages that National PTA has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their breaches of agreements and license violations, in an amount not yet known;

XXI.    An award for all damages that National PTA sustained and will sustain by the unjust enrichment of Defendants;

XXII.    An award for the costs of this action, pursuant to 15 U.S.C. § 1117(a), and treble damages;

XXIII.    An award of attorney's fees pursuant to 15 U.S.C. §Section 1117(a) and Md. Code § 13-408(b);

XXIV.    Appoint a receiver to to locate all assets of Maryland Congress, operate Maryland Congress long enough to settle all debts and liabilities, dissolve the corporation, and transfer all remaining assets to Plaintiff; and

XXV.    Such other relief to which Plaintiff may be entitled by law or in equity, or as the Court deems just and proper.

*(Signature page follows)*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

|  | Respectfully submitted, |
|---|---|
|  | **THE PELS LAW FIRM L.L.C.** |
| Dated: August 8, 2022 |  |
|  | */s/ Jon D. Pels* |
|  | Jon D. Pels, Esq. (CPF # 9312160037) |
|  | jpels@pelslaw.com |
|  | Alvaro A. Llosa, Esq. (CPF # 1312180167) |
|  | allosa@pelslaw.com |
|  | Amira E. Khan, (CPF #1312180084) |
|  | akhan@pelslaw.com |
|  | 4845 Rugby Ave, Third Floor |
|  | Bethesda, MD 20814 |
|  | (301) 986-5570 (T) |
|  | (301) 986-5571 (F) |
|  | *Counsel for Plaintiff National PTA* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>August 8, 2022</u>, I caused a copy of the foregoing <u>Plaintiff's Third</u>

<u>Amended Complaint</u> to be served via the Court's MDEC electronic filing system on all registered

participants, including:

Elyse Strickland. Esq.
McMillan Metro, P.C.
7811 Montrose Road, Suite 400
Potomac, Maryland 20854
estrickland@mcmillanmetro.com
*Counsel for Defendants Maryland*
*Congress of Parents and Teachers, Inc.,*
*and Board of Directors of Maryland*
*Congress of Parents and Teachers, Inc.*

Charles Tucker, Jr., Esq.
The Cochran Firm - Hyattsville
8181 Professional Place, Suite 207
Hyattsville, MD 20785
Charles@tuckerlawgroupllp.com
*Counsel for Defendant LaTonja Carrera*

*/s/ Alvaro A. Llosa*
Alvaro A. Llosa, Esq. (CPF # 1312180167)