# EXHIBIT 6
# 2022-2023 Policy



June 10, 2022

Rachel Staph
Conway E&S Inc
100 Allegheny Dr
Warrendale, PA 15086-7564

Policy No.: UC24379596.22

Re:   Maryland Congress of Parents and Teachers
        Coverage Parts:
                    Crime Coverage Part

Dear Rachel,

In accordance with your request, and based upon the information submitted, we are pleased to bind coverage as follows:

## General Policy Details

1.      Policy Period: 07/01/2022 to 07/01/2023

2.      Hiscox Insurance Company, Inc., an Admitted Company, A.M. Best Financial Strength Rating: A (Excellent), Group Financial Size Category XV.

3.      General Terms and Conditions CSU P0001A CW (07-17) applies to this policy in conjunction with the specific wording detailed in each section below.

**Hiscox Inc.**
5 Concourse Parkway Suite 2150
Atlanta GA, 30328

**T** (646) 452-2353
**F** (678) 731-9501
**E** hiscox.usa@hiscox.com
www.hiscoxbroker.com

Page 1 of 3

CR1QLADREN23



## Coverage Summary

| Coverage Part | Limit | Deductible | Premium |
|---|---|---|---|
| **Crime** | | | $ 1,345 |
| Insuring Agreement A: Fidelity | | | |
| (1) Employee Theft | $ 500,000 | $ 2,500 | |
| (2) Third Parties' Property | Not Covered | N/A | |
| (3) Vendor Theft | Not Covered | N/A | |
| (4) Executives' Property | Not Covered | N/A | |
| (5) ERISA (Limit Applies Per Plan) | Not Covered | N/A | |
| Insuring Agreement B: Forgery | | | |
| (1) Checks | $ 500,000 | $ 2,500 | |
| (2) Payment Cards | $ 500,000 | $ 2,500 | |
| (3) Executives' Accounts | Not Covered | N/A | |
| (4) Counterfeit | $ 500,000 | $ 2,500 | |
| Insuring Agreement C: Inside and Outside Loss | | | |
| (1) Inside Premises | $ 500,000 | $ 2,500 | |
| (2) Outside Transit | $ 500,000 | $ 2,500 | |
| (3) Extortion | Not Covered | N/A | |
| Insuring Agreement D: Tech Fraud | | | |
| (1) Computer | $ 500,000 | $ 2,500 | |
| (2) Funds Transfer | $ 500,000 | $ 2,500 | |
| (3) Cyber Deception | $ 100,000 | $ 5,000 | |
| (4) Customers' Accounts | Not Covered | N/A | |
| (5) Erroneous Transfer | Not Covered | N/A | |
| (6) Telephone Toll | Not Covered | N/A | |
| (7) Virus Restoration | Not Covered | N/A | |
| (8) Licensing Violation | Not Covered | N/A | |
| Claim Expenses | $ 5,000 | N/A | |
| Identity Fraud Expenses | Not Covered | N/A | |

*All Crime Limits and Deductibles apply on a Per Occurrence Basis and are not shared with any other Coverage Part Limits*
*Claim Expenses is on a Per Occurrence Basis and is a part of, and not in addition to, the limit applicable to the loss*

**Total Premium**      $ 1,345

## Coverage Specific Details

**Hiscox Inc.**
5 Concourse Parkway Suite 2150
Atlanta GA, 30328

**T** (646) 452-2353
**F** (678) 731-9501
**E** hiscox.usa@hiscox.com
www.hiscoxbroker.com

Page 2 of 3

CR1QLADREN23



---

## Crime Terms and Conditions CSUCRI P0001A CW (07-17)

1.  Loss Discovered policy

2.  Attached endorsements apply:   E2507.1 - Nuclear Incident Exclusion Clause - Liability-Direct (Broad) Endorsement
    E2624.1 - War and Civil War Exclusion Endorsement
    E1090.1 - Maryland Amendatory Endorsement

The commission payable is:
    Crime Coverage: 20.00%.

Thank you for the bind order. Please give me a call if you have any questions or require anything further.

Sincerely,

Authorized Representative
Kevin Kerridge

---

**Hiscox Inc.**
5 Concourse Parkway Suite 2150
Atlanta GA, 30328

**T** (646) 452-2353
**F** (678) 731-9501
**E** hiscox.usa@hiscox.com
www.hiscoxbroker.com

Page 3 of 3

CR1QLADREN23

# HISCOX INSURANCE COMPANY INC. (A Stock Company)



104 South Michigan Avenue Suite 600 Chicago, IL 60603

(646) 452-2353

## Commercial Crime Insurance Policy

## DECLARATIONS

| | | |
|---|---|---|
| **Broker no.:** | US 0000050 | Conway E&S Inc |
| **Policy no.:** | UC24379596.22 | 100 Allegheny Dr |
| **Renewal of:** | UC24379596.21 | Warrendale, PA 15086-7564 |

**1. Named insured:** Maryland Congress of Parents and Teachers
**Address:** 5 Central Ave
Glen Burnie, MD 21061

**2. Policy period:**       **Inception date: 07/01/2022**       **Expiration date: 07/01/2023**
Inception date shown shall be at 12:01 A.M. (Standard Time) to expiration date shown above at 12:01 A.M. (Standard Time) at the address of the named insured.

**3. General terms and conditions wording:** CSU P0001A CW (07-17)
The General Terms and Conditions applies to this policy in conjunction with the specific wording detailed in each section below.

**4. Endorsements:** E2507.1 - Nuclear Incident Exclusion Clause - Liability-Direct (Broad) Endorsement
E2624.1 - War and Civil War Exclusion Endorsement
E1090.1 - Maryland Amendatory Endorsement

**5. Notification of claims to:** Hiscox Claims
5 Concourse Parkway, Suite 2150
Atlanta GA, 30328
Fax: 678-731-9501
Email: C-SuiteClaims@Hiscox.com

**6. Total premium:** $ 1,345
**State surcharge:** N/A

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue Suite 600 Chicago, IL 60603

(646) 452-2353



## Commercial Crime Insurance Policy

## DECLARATIONS

### Crime Coverage Part: CSUCRI P0001A CW (07-17)

|  | Limit | Deductible |
|---|---|---|
| Insuring Agreement A: Fidelity |  |  |
| (1) Employee Theft | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (2) Third Parties' Property | Not Covered | N/A |
| (3) Vendor Theft | Not Covered | N/A |
| (4) Executives' Property | Not Covered | N/A |
| (5) ERISA (Limit Applies Per Plan) | Not Covered | N/A |
|  |  |  |
| Insuring Agreement B: Forgery |  |  |
| (1) Checks | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (2) Payment Cards | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (3) Executives' Accounts | Not Covered | N/A |
| (4) Counterfeit | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
|  |  |  |
| Insuring Agreement C: Inside and Outside Loss |  |  |
| (1) Inside Premises | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (2) Outside Transit | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (3) Extortion | Not Covered | N/A |
|  |  |  |
| Insuring Agreement D: Tech Fraud |  |  |
| (1) Computer | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (2) Funds Transfer | $ 500,000 Per Occurrence | $ 2,500 Per Occurrence |
| (3) Cyber Deception | $ 100,000 Per Occurrence | $ 5,000 Per Occurrence |
| (4) Customers' Accounts | Not Covered | N/A |
| (5) Erroneous Transfer | Not Covered | N/A |
| (6) Telephone Toll | Not Covered | N/A |
| (7) Virus Restoration | Not Covered | N/A |
| (8) Licensing Violation | Not Covered | N/A |
|  |  |  |
| Claim Expenses | $ 5,000 Per Occurrence (Shared with limit applicable to loss) |  |
| Identity Fraud Expenses | Not Covered | N/A |
| Crime Premium: | $ 1,345 |  |

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by the Insurer's duly authorized representative.

CR1DECADREN23

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue Suite 600 Chicago, IL 60603

(646) 452-2353



## Commercial Crime Insurance Policy

## DECLARATIONS

President

Secretary

Authorized Representative
Kevin Kerridge

June 10, 2022

Hiscox Inc.

 **DEBIT NOTE / COMMISSION STATEMENT**

---

**Policy No.:**      UC24379596.22
**Attention:**

**Rachel Staph**
**Conway E&S Inc**
**100 Allegheny Dr**
**Warrendale, PA 15086-7564**

**Your reference:**                                                    **Transaction:**      RENEWAL CONFIRMED BIND

**Insured:**      Maryland Congress of Parents and Teachers **Effective Date:**      July 1, 2022
**Address:**      5 Central Ave
              Glen Burnie, MD 21061

---

| | | |
|---|---|---|
| **Premium** | $ | 1,345.00 |
| **Total amount:** | $ | 1,345.00 |
| **Commission due to you:** | $ | 269.00 |
| **Total due:** | $ | 1,076.00 |

---

Please remit within thirty days of receipt.

Kindly reference our policy number(s) on all checks, wire transfers and remittances.

Please email remittance advice for all premium payments to USaccountsreceivable@hiscox.com

Please email all refund requests to USARefunds@hiscox.com

**Wire transfer instructions:**          **For 1st Class Mail:**

JP Morgan Chase Bank, NA          Hiscox Inc.
New York, NY                      PO Box 5945
ABA # 021000021                   New York, NY 10087-5945
Acct # 800795643

**For Mail Sent via Fedex, DHL, UPS (aka overnight payments):**

JP Morgan Chase
Attn R1 - lbx5945
4 Chase Metrotech Center 7Fl
Brooklyn, NY 11245
Tel: 718-242-0716

---

**Hiscox Inc.**                    **T** (646) 452-2353                    Page 1 of 1
5 Concourse Parkway Suite 2150    **F** (678) 731-9501
Atlanta GA, 30328                 **E** hiscox.usa@hiscox.com
                                  www.hiscoxbroker.com                   CR1DEBADREN2

 **Commercial Crime Insurance Policy**

---

**A modern insurance solution for fraud risks faced by businesses.**

Please read this wording, together with any endorsements and the declarations, very carefully. If anything is not correct, please notify **us** immediately. The policy describes **your** and **our** rights and duties.

---

## Our promise to you

In return for the premium **you** have paid, **we** agree to insure **you** in accordance with the terms and conditions of the policy.

---

## Your policy documents

**Declarations Page**
This contains a summary of policy information including the limits of liability and **retention** amounts **you** have selected.

**General Terms and Conditions**
This contains terms and conditions which apply to the policy in its entirety.

**Coverage Parts**
These contain terms and conditions which apply only to the coverage part in which they appear.

**Endorsements**
These modify the declarations page, general terms and conditions, and/or coverage parts.

**Notices**
These provide information that may affect **your** coverage as required by **your** state.

---

## Reporting a claim

Please inform **us** immediately if **you** have a **claim** or loss to report. Additional details on **claim** reporting provisions can be found on the declarations page and/or coverage parts.

Email: C-SuiteClaims@Hiscox.com

---

**Hiscox Inc.**
5 Concourse Parkway Suite 2150
Atlanta GA, 30328

**T** (646) 452-2353
**F** (678) 731-9501
**E** hiscox.usa@hiscox.com
www.hiscoxbroker.com

CR1COVADREN2

 **General Terms and Conditions**

| | | |
|---|---|---|
| **I. Our promise to you** | | In consideration of the premium charged, and in reliance on the statements made and information provided to **us**, **we** will pay **covered amounts** as defined in this policy, provided **you** properly notify **us** of **claims**, **breaches**, **events**, **coverage enhancements**, or losses, and meet **your** obligations to **us** in accordance with the terms of this policy. |

## II. Limits of liability

Regardless of the number of Coverage Parts **you** have purchased, the maximum **we** will pay for all **covered amounts** will be as follows:

Coverage part limit

A. Each Coverage Part purchased will be subject to a **coverage part limit** (if one is stated in the Declarations), which is the maximum amount **we** will pay for all **covered amounts** under that Coverage Part, other than **coverage enhancements** or other items **we** have expressly agreed to pay in addition to the limit. The **coverage part limit** will be in excess of any applicable **retention**.

Each claim limit

B. The Each Claim Limit stated in the Declarations is the maximum amount **we** will pay for all **covered amounts** for each covered **claim**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **claim** to which the sublimit applies. The Each Claim Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

Each breach limit

C. The Each Breach Limit stated in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **breach**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **breach** or costs to which the sublimit applies. The Each Breach Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

Multiple Coverage Parts

D. If the same **claim** or **related claims**, **breach**, **event**, or **coverage enhancement** is covered under more than one Coverage Part (other than under the **Management Liability Coverage Parts**), **we** will pay only under one Coverage Part, which will be the Coverage Part that provides the most favorable coverage.

If the same **claim** or **related claims** or **coverage enhancement** is covered under more than one **Management Liability Coverage Part**, **we** will pay under all applicable Coverage Parts, up to the combined **coverage part limits** of the triggered Coverage Parts. However:

1. if **loss** is payable under two or more Coverage Parts subject to separate **coverage part limits**, the **retentions** under each triggered Coverage Part will apply separately and one **retention** will not be eroded by payment of the **retention** applicable to another Coverage Part; and

2. if **loss** is payable under two or more Coverage Parts subject to a shared **coverage part limit**, **you** will be responsible only for the payment of one **retention**, which will be the highest applicable **retention** of the triggered Coverage Parts.

## III. Your obligations to us

Your duty to cooperate

A. **You** must cooperate with **us** in the defense, investigation, and settlement of any **claim**, **potential claim**, **breach**, **event**, or **coverage enhancement** notified to **us**, including but not limited to:

1. notifying **us** immediately if **you** receive any settlement demands or offers, and sending **us** copies of any demands, notices, summonses, or legal papers;

2. submitting to examination and interrogation under oath by **our** representative and giving **us** a signed statement of **your** answers;

3. attending hearings, depositions, and trials as **we** request;

 **General Terms and Conditions**

4.     assisting in securing and giving evidence and obtaining the attendance of witnesses;

5.     providing written statements to **our** representative and meeting with such representative for the purpose of investigation and/or defense;

6.     providing all documents and information **we** may reasonably request, including authorizing **us** to obtain records; and

7.     pursuing **your** right of recovery from others.

Your obligation not to incur any expense or admit liability

B.     **You** must not make any payment, incur any expense, including any **claim expenses**, admit any liability, or assume any obligation without **our** prior consent. If **you** do so, it will be at **your** own cost and expense.

Your representations

C.     **You** warrant that all representations made and all materials submitted by **you** or on **your** behalf in connection with the **application** for this policy are true, accurate, and not misleading, and agree they were relied on by **us** in **our** decision to issue this policy to **you**. In the event the representations or materials are not true, accurate, and complete, **we** will not impute the knowledge of one **insured** to any other **insured**, and only the knowledge of any past, present, or future Chief Executive Officer, Chief Financial Officer, or Risk Manager (or equivalent positions) of the **named insured** will be imputed to the **named insured**. However, other than the Crime Coverage Part, to which this subsection C will not apply, **we** will not rescind this policy in whole or in part for any reason.

## IV.  Discovery period

A.     If **we** or the **named insured** cancel or non-renew this policy, then the **named insured** will have the right to purchase a **discovery period** for the duration and at the percentage of the expiring premium stated in Item 4 of the Declarations.

The **discovery period**, if purchased, will start on the effective date of cancellation or non-renewal. However, the right to purchase a **discovery period** will not apply if:

1.     this policy is canceled by **us** for nonpayment of premium; or

2.     the total premium for this policy has not been fully paid.

Notice of election and full payment of the additional premium for the **discovery period** must be received by **us** within 30 days after the effective date of cancellation or non-renewal, otherwise any right to purchase the **discovery period** will lapse.

B.     If an **insured organization** experiences a change in control as described in Section V. Other provisions affecting coverage, D. Change in control, the **named insured** will have the right to request an offer of a **discovery period** from **us** within 30 days of the change in control event. The duration and percentages stated in Item 4 of the Declarations will not apply to any **discovery period** purchased under this subsection B. Instead, **we** and the **insured organization** will agree to the duration of and premium to be charged for the **discovery period** at the time of the change in control event. In the event of a change in control, the **named insured** will have no other right to purchase a **discovery period** except as described in this subsection B.

C.     Regardless of how it is purchased, the **discovery period** will apply only to **claims** that:

1.     are first made against **you** and reported to **us** during the **discovery period**; and

2.     arise from:

a.     **wrongful acts** that take place prior to the effective date of the (i) cancellation or non-renewal of this policy, or (ii) change in control; or

b.     a **breach** that takes place on or after the **retroactive date** but prior to the effective date of the (i) cancellation or non-renewal of this policy, or (ii) change in control.

The **discovery period** will not apply to any **reputation risk event** which occurs during the **discovery period**.

D.     The additional premium will be fully earned at the inception of the **discovery period**.

 **General Terms and Conditions**

The limits of liability applicable during any purchased **discovery period** will be the remaining available **coverage part limit**. There will be no new or additional limit of liability available for any purchased **discovery period**.

The right to purchase a **discovery period** will apply only to Coverage Parts **you** have purchased that include coverage written on a claims-made basis, and will not apply to the Crime Coverage Part.

## V. Other provisions affecting coverage

**Alteration and assignment** A. No change in, modification of, or assignment of interest under this policy will be effective unless made by written endorsement to this policy signed by **our** authorized representative.

**Bankruptcy or insolvency** B. **Your** bankruptcy or **insolvency** will not relieve **us** of any of **our** obligations under this policy.

**Cancellation** C. 1. This policy may be canceled by the **named insured** by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations.

2. This policy may be canceled by **us** only if **you** fail to pay the premium. **We** will mail to the **named insured** by registered, certified, or other first-class mail (or by email where allowed by applicable law), at the **named insured's** address (or email address) stated in Item 1 of the Declarations, written notice which must include the date the cancellation will be effective. The effective date of the cancellation will be no less than fifteen days after the date of the notice of cancellation.

3. The mailing (or emailing) of the notice will be sufficient proof of notice, and this policy will terminate at the date and hour specified in the notice.

4. If this policy is canceled by the **named insured**, **we** will return a pro rata proportion of the premium.

5. Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible.

6. If **you** have purchased a Crime Coverage Part, the rules for cancellation contained in Section VIII. Other provisions affecting coverage, A. Cancellation of that Coverage Part will govern its cancellation.

**Change in control** D. If, during the policy period stated in Item 2 of the Declarations:

1. any other person or entity acquires **management control** of an **insured organization**; or

2. any **insured organization** changes its status from nonprofit to for-profit,

as to that **insured organization**, this policy will cover only **claims** arising from **wrongful acts**, **breaches**, or **events** that took place prior to the effective date of change in control, unless **you** and **we** agree in writing otherwise.

If the **named insured** undergoes a change in control, the **named insured** must provide **us** with written notice no later than 30 days after the effective date of such change in control, together with any other information **we** may require.

This subsection D. Change in control does not apply to the Crime Coverage Part.

**Coverage territory** E. This policy will apply to **wrongful acts**, **breaches**, **events**, **coverage enhancements**, or losses that take place anywhere in the world.

However, with respect to **claims** brought outside the United States, its territories or possessions, or Canada, this policy will not apply:

1. to any **claim** brought in any country in which the United States (or any of its

 **General Terms and Conditions**

departments, agencies, or subdivisions) administers or enforces economic or trade sanction laws; or

2.    if it would otherwise be in violation of the laws of the United States.

**Estates, heirs, legal representatives, spouses, and domestic partners**

F.    If this policy is triggered by a **claim** brought against an **employee**, it will also apply to the **employee's**:

1.    estates, heirs, executors, administrators, trustees in bankruptcy, assignees, and legal representatives; or

2.    lawful spouse or lawful domestic partner;

but only:

a.    for a covered **claim** arising from the scope of the **employee's** work for **you**; or

b.    in connection with their ownership interest in property which the claimant seeks as recovery in a covered **claim** arising from the scope of the **employee's** work for **you**.

**Other insurance**

G.    Any payment due under this policy is specifically excess of and will not contribute with any other valid and collectible insurance, unless such other insurance is written specifically as excess over this policy.

However, if **you** have purchased:

1.    an EPL Coverage Part, that Coverage Part will be primary with respect to and will not contribute with any other valid and collectible insurance, except when such other insurance is expressly written to be excess over other applicable insurance.

2.    a Crime Coverage Part, rules for how that Coverage Part will be treated when there is other valid and collectible insurance are contained in Section VIII. Other provisions affecting coverage, I. Other insurance of that Coverage Part.

**Related claims/wrongful acts**

H.    All **related claims**, regardless of when made, will be treated as one **claim**, and all subsequent **related claims** will be deemed to have been made against **you** on the date the first such **claim** was made.

However, if more than one **claim** is made against **you** resulting from the same **breach**, and such **claims** trigger both a **Management Liability Coverage Part** and another Coverage Part, the **claim(s)** triggering any **Management Liability Coverage Part** will be treated as one **claim**, and the **claim(s)** triggering any other Coverage Part(s) will be treated as another **claim**.

If, by operation of this provision, the **claim** is deemed to have been made during any period when **we** insured **you**, it will be subject to only one **retention** and one limit of liability regardless of the number of claimants, **insureds**, or **claims** involved..

**Subrogation**

I.    In the event of any payment by **us** under this policy, **we** will be subrogated to all of **your** rights of recovery to that payment. **We** will not, however, subrogate against any **insured person**, unless such **insured person** has been convicted of a criminal act, or been determined by a final, non-appealable adjudication to have committed a dishonest or fraudulent act, or obtained any profit or advantage to which such **insured** was not legally entitled.

**You** will do everything necessary to secure and preserve **our** subrogation rights, including but not limited to the execution of any documents necessary to allow **us** to bring suit in **your** name.

**You** will do nothing to prejudice **our** subrogation rights without **our** prior written consent.

With the exception of any recovery under the Crime Coverage Part, any recovery first will be paid to **you** up to the amount of any **retention you** have paid, and then to **us** up to the amount of any **covered amounts we** have paid.

In the event **we** pay **indemnifiable loss** on behalf of an **insured person**, **our** subrogation rights will also include the assertion of indemnification or contribution rights with respect to any such payments **we** make. Additionally, at the point **we** make any payment of **loss** within the **retention**, **we** will have a direct contractual right under this policy to recover from the **insured organization**, or in the event of the bankruptcy of the **insured organization**, from

 **General Terms and Conditions**

the debtor-in-possession (or equivalent position outside the United States), **loss we** paid within the **retention**. This contractual right of recovery will be in addition to and independent of **our** subrogation rights under this subsection I and any other rights **we** may have under applicable law.

Solely with respect to the Fiduciary Coverage Part, **we** will not exercise **our** subrogation rights unless required to exercise **our** recourse rights under **ERISA**, in which case any amounts **we** recover based on such recourse rights will be added back to the **coverage part limit** applicable to the Fiduciary Coverage Part, accounting for any costs, expenses, or reimbursements **we** incurred in pursuing such recovery.

With respect to any loss under the Crime Coverage Part, **you** must transfer to **us** all of **your** rights of recovery against any person or organization for any loss **you** sustain and which **we** have paid. Additional rules governing the payment of recoveries under the Crime Coverage Part are contained in Section IV. Limits of liability and settlement, E. Recoveries, of that Coverage Part.

| | | |
|---|---|---|
| Titles | J. | Titles of sections of and endorsements to this policy are inserted solely for convenience of reference and will not be deemed to limit, expand, or otherwise affect the provisions to which they relate. |

## VI. Definitions applicable to all Coverage Parts

The following definitions apply to all Coverage Parts **you** have purchased. If the same term is defined here and in a Coverage Part, then the definition in the Coverage Part will govern the coverage provided under that Coverage Part.

**Application**      means the signed application for the policy, any attachments and materials submitted with that application, and any other information that is filed by an **insured** or otherwise publicly available. If this policy is a renewal or replacement of a previous policy issued by **us**, **application** also includes all previous signed applications, attachments, and materials. With respect to the Fiduciary Coverage Part (if purchased), **application** will also mean any public documents filed by the **named insured** or any **subsidiary** with any federal, state, local, or foreign regulatory agency, during the one-year period prior to the inception of the **policy period**. The **application** forms a part of this policy.

**Continuity date**      means the date stated as such in the Declarations with respect to each Coverage Part **you** have purchased which includes a **continuity date**.

**Coverage part limit**      means the amount stated in the Declarations as the aggregate limit applicable to each Coverage Part **you** have purchased which is subject to an aggregate limit.

**Covered amounts**      means any amounts **we** have expressly agreed to pay under any Coverage Part **you** have purchased.

**Discovery period**      means the time period described in Section IV. Discovery period of these General Terms and Conditions which is purchased by the **named insured** to extend the length of time **you** have to report **claims** arising from otherwise covered **wrongful acts** committed, or **breaches** that take place, before the inception of the **discovery period**.

**Employee**      means an **employee** as defined in each Coverage Part **you** have purchased.

**Foreign jurisdiction**      means any jurisdiction other than the United States or any of its territories or possessions.

**Insolvency**      means the:

     1.    appointment by any government official, agency, commission, court, or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator, or similar official to take control of, supervise, manage, or liquidate an insolvent **insured organization**;

     2.    filing of a petition under the bankruptcy laws of the United States; or

     3.    foreign equivalent of 1 or 2 above.

 **General Terms and Conditions**

| | |
|---|---|
| **Management control** | means having: |
| | 1.   an ownership interest of more than 50%; |
| | 2.   an ownership interest representing more than 50% of the voting, appointment, or designation power for the selection of a majority of the board of directors, the management committee members, or the members of the management board, whichever is applicable; or |
| | 3.   the right, whether by law, contract, or otherwise, to elect, appoint, or designate a majority of the board of directors, the management committee, or the management board, whichever is applicable. |
| **Management Liability Coverage Part** | means any D&O Coverage Part, the Public Officials Liability Coverage Part, the Educators Legal Liability Coverage Part, the EPL Coverage Part, the Fiduciary Coverage Part, and/or the Employed Lawyers Coverage Part. |
| **Policy period** | means the period of time stated in Item 2 of the Declarations, and any **discovery period**, if purchased. |
| **Related claims** | means all **claims** that are based upon, arise out of, or allege: |
| | 1.   the same **wrongful act** or **related wrongful acts**; or |
| | 2.   the same **breach**. |
| | The determination of whether a **claim** is related to another **claim** will not be affected by the number of claimants or **insureds** involved, causes of action asserted, or duties involved. |
| **Related wrongful acts** | means **wrongful acts** that: |
| | 1.   are based upon, arise out of, or allege the same, repeated, or continuous breach of duty, neglect, error, misstatement, misleading statement, omission, or act; |
| | 2.   are based upon, arise out of, or allege a common fact, circumstance, situation, event, service, transaction, cause, or origin, or the same or related damages; or |
| | 3.   have as a common nexus or nucleus any facts or series of facts. |
| **Retention** | means the amount or time stated as such in the Declarations. Any references to "**deductible**" in any Coverage Part **you** have purchased will have the same meaning as **retention**. |
| **Retroactive date** | means the date stated as such in the Declarations with respect to each Coverage Part **you** have purchased which includes a **retroactive date**. |
| **We**, **us**, or **our** | means the Company stated in the Declarations as issuing this policy. |
| **Wrongful act** | means **wrongful act** (as defined in any D&O Coverage Part, the Public Officials Liability Coverage Part, or the Educators Legal Liability Coverage Part), **employment practices wrongful act** (as defined in the EPL Coverage Part), **fiduciary wrongful act** (as defined in the Fiduciary Coverage Part), or **employed lawyers wrongful act** (as defined in the Employed Lawyers Coverage Part). |
| **You**, **your**, or **insured** | means any individual or entity expressly described as an **insured** in any Coverage Part **you** have purchased. |



# Crime Coverage Part
**Loss Discovered Policy**

| | | |
|---|---|---|
| **I. Insuring agreements** | | If a limit appears on the Declarations indicating **you** have purchased the coverage, **we** will pay up to the stated limit for any loss which exceeds the applicable **deductible** (except no **deductible** will apply to Insuring agreement A.5. ERISA) for: |

Fidelity

A.  loss of or damage to **money**, **securities**, or **other property**:

1.  <u>Employee Theft</u>: sustained by **you** resulting directly from **theft** or **forgery** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons;

2.  <u>Third Parties' Property</u>: sustained by **your client** or **vendor**, or other persons with whom **you** or **your employees** interact in connection with the performance of **your** business operations, resulting directly from **theft** or **forgery** committed by an identified **employee**, acting alone or in collusion with other persons, including an **employee** in collusion with an employee of **your client** or **vendor** or other persons;

3.  <u>Vendor Theft</u>: sustained by **you** resulting directly from **theft** committed by an identified employee of **your vendor**, other than an employee with an ownership interest greater than 25% in the **vendor**, acting alone or in collusion with other persons, but only to the extent **you** cannot recover under **your** contract with the **vendor** or from any insurance or indemnity carried by the **vendor**;

4.  <u>Executives' Property</u>: sustained by an **executive employee** resulting directly from **theft** or **forgery** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons; or

5.  <u>ERISA</u>: sustained by an **employee benefit plan** resulting directly from fraudulent or dishonest acts, including larceny, **theft**, embezzlement, **forgery**, misappropriation, wrongful abstraction or conversion, wrongful misapplication, or any other fraudulent or dishonest act prohibited under 18 U.S.C. § 1954, committed by a **fiduciary** of any **employee benefit plan**, whether identified or not, acting alone or in collusion with other persons.

The coverage provided under this Insuring agreement A. Fidelity will terminate:

a.  as to any loss, once **you** or an **executive employee** not acting in collusion with any person who committed the act in question **discovers** the **theft**, **forgery**, or other dishonest act.

b.  as to an **employee**, once an **executive employee** not acting in collusion with the **employee** learns the **employee** committed the **theft**, **forgery**, or other dishonest act, but only if the **employee** committed such act after becoming employed by **you** or, if committed before becoming employed by **you**, the resulting loss exceeded $10,000.

The coverage provided under Insuring agreement A.3. Vendor Theft will apply only if there is a written agreement between **you** and **your vendor** requiring the **vendor** to provide Crime or Fidelity Insurance with limits of liability equal to or greater than those available under this Coverage Part, and which covers **your** property in the care, custody, and control of the **vendor** and/or its employees.

Forgery

B.  loss:

1.  <u>Checks</u>: sustained by **you** resulting directly from **forgery**, alteration, or counterfeiting of any negotiable instruments that are made or drawn by **you** (or by **your** agent) or purported to have been so made or drawn;

2.  <u>Payment Cards</u>: sustained by **you** resulting directly from the fraudulent use of any credit, debit, convenience, stored-value, charge, gas, p-, purchase, or procurement card, or a similar instrument issued to **you** or any **employee** for business purposes, and which is not reimbursed by the issuing bank, so long as **you** or the **employee** have complied fully with the provisions, conditions, or other terms under which the card or instrument was issued;

3.  <u>Executives' Accounts</u>: sustained by an **executive employee** resulting directly from **forgery**, alteration, or counterfeiting of any negotiable instruments made or drawn by the **executive employee** or purported to have been so made or drawn; or



**Crime Coverage Part**
Loss Discovered Policy

4. Counterfeit: sustained by **you** resulting directly from **your** good faith exchange of merchandise, **money**, or services for:

    a. money orders issued by any post office, express company, or **financial institution**, and that are not paid upon presentation; or

    b. counterfeit **money** received during the regular course of business,

provided:

    i. a substitute check as defined in the Check Clearing for the 21st Century Act will be treated the same as the original it replaced;

    ii. signatures produced or reproduced electronically, mechanically, or by other means will be treated the same as handwritten signatures; and

    iii. **you** include with **your** proof of loss any instrument involved in the loss or an affidavit stating the amount and cause of loss if **you** cannot provide the instrument.

**Inside and outside loss**

C. 1. Inside Premises:

    a. loss of **money** or **securities** inside the **premises** or **financial institution premises** resulting directly from:

        i. **theft** committed by a person present inside the **premises** or **financial institution premises**; or

        ii. disappearance or destruction of such **money** or **securities**;

    b. loss of or damage to **other property**:

        i. inside the **premises** resulting directly from an actual or attempted **robbery** of a **custodian**; or

        ii. in a safe or vault inside the **premises** resulting directly from an actual or attempted **safe burglary**;

    c. damage to the **premises** or its exterior resulting directly from an act described in parts a or b above if **you** are the owner of the **premises** or are liable for damage to it; or

    d. loss of or damage to a locked safe, vault, cash register, cash box, or cash drawer located inside the **premises** resulting directly from an actual or attempted **theft** of or unlawful entry into such containers;

2. Outside Transit:

    a. loss of **money** or **securities** outside the **premises** or **financial institution premises** in the care and custody of a **messenger** or armored motor vehicle company, regardless of whether such **messenger** or vehicle is in transit, and resulting directly from **theft**, disappearance, or destruction; or

    b. loss of or damage to **other property** outside the **premises** or **financial institution premises** in the care and custody of a **messenger** or armored motor vehicle company, regardless of whether such **messenger** or vehicle is in transit, and resulting directly from an actual or attempted **robbery**; or

3. Extortion: loss of **money**, **securities**, or **other property** resulting directly from **extortion** outside the **premises**.

However, **we** will only pay:

    a. for the amount of loss **you** cannot recover under **your** contract with the armored motor vehicle company and from any insurance or indemnity carried by or for the benefit of customers of the company; or

    b. up to $10,000 for any one **occurrence** of loss of or damage to:

        i. precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials constituting the principal value of such articles; or



**Crime Coverage Part**
Loss Discovered Policy

ii.   manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

Tech fraud

D.   1.   <u>Computer</u>: loss of or damage to **money**, **securities**, or **other property** resulting directly from **computer fraud**, but **we** will only pay up to $10,000 for any one **occurrence** of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them;

2.   <u>Funds Transfer</u>: loss of or damage to **money** or **securities** contained in **your transfer account** sustained by **you** resulting directly from **funds transfer fraud**;

3.   <u>Cyber Deception</u>: loss of or damage to **money** or **securities** sustained by **you** resulting directly from **cyber deception**;

4.   <u>Customers' Accounts</u>: loss of or damage to:

   a.   **money**, **securities**, or **other property** sustained by **your client** or **vendor**, or other persons with whom **you** or **your employees** interact in connection with the performance of **your** business operations, resulting directly from **computer fraud**, **funds transfer fraud**, or **cyber deception**, provided such loss is asserted against **you** by the **client**, **vendor**, or other person based on **your** access to that **client's**, **vendor's**, or other person's **money**, **securities**, or **other property** maintained in a **financial institution premises** or **transfer account**; or

   b.   **money** sustained by **your client** or **vendor** resulting directly from the intentional use of **your** computer system to mislead or deceive **your client** or **vendor** and which results in **your client's** or **vendor's** transfer of **money** intended for **you** to another person or entity;

5.   <u>Erroneous Transfer</u>: loss of or damage to **money** or **securities** sustained by **you** resulting directly from an **erroneous funds transfer** by an **employee** or **executive employee**, provided **you** must notify and request reimbursement from the **financial institution** from which the **money** or **securities** were transferred within two business days after **discovery** of the error, and such loss will not be covered until the **financial institution** has:

   a.   attempted to recover the **money** or **securities** from the **financial institution** to which they were transferred; and

   b.   formally denied **your** request to return the **money** or **securities** to **you**;

6.   <u>Telephone Toll</u>: loss from long distance telephone charges incurred by **you** resulting directly from fraudulent use or manipulation of an account code or system password required to gain access into **your voice computer system**, provided such loss did not result from the failure to:

   a.   install and maintain in operating condition a call disconnect feature to terminate a caller's access after three unsuccessful attempts to enter an account code;

   b.   incorporate a system password; or

   c.   change a system password every 60 days.

   **We** will only pay for loss resulting from telephone toll charges for a period of not more than 30 days, beginning on the date on which the first such charges were incurred, for all telephone lines directly controlled by one **voice computer system**.

7.   <u>Virus Restoration</u>: costs **you** incur to restore or replace damaged or destroyed electronic data or computer programs stored within **your** computer system resulting directly from:

   a.   a virus directed solely against **you** designed to damage or destroy electronic data or computer programs and introduced maliciously by a natural person; or

   b.   vandalism by a natural person who has gained unauthorized access to **your** computer system,

   including reasonable costs **you** incur to:



**Crime Coverage Part**
Loss Discovered Policy

    i.   restore **your** computer system to the level of operational capability that existed before the virus or vandalism occurred; or

    ii.   identify and remediate errors or vulnerabilities in **your** computer system in order to prevent future similar incidents.

8.   <u>Licensing Violation</u>: fines and penalties for which **you** are legally liable as a direct result of the unauthorized reproduction of computer software, sound recordings, or visual media by an **employee** in violation of a licensing agreement with a third party vendor, provided the unauthorized reproduction is done:

    a.   without **your** or an **executive employee's** knowledge; and

    b.   without the knowledge of any other person having responsibility for compliance with the terms of the software licensing agreement.

**We** will pay loss under this Coverage Part only if the loss results directly from an **occurrence** that is **discovered** by **you** or an **executive employee** during the **policy period**, and is reported to **us** in accordance with Section V. Your obligations, B. Notifying us of losses.

---

## II. Coverage enhancements

**We** will also make the following payments:

**Additional premises or employees**

A.   If, while this policy is in force, **you** establish any additional **premises** or hire additional **employees**, other than through consolidation, merger, purchase, or acquisition with or of another entity, such **premises** and **employees** will automatically be covered under this Coverage Part. **You** will not be required to notify **us** of such increase in the number of **premises** or **employees**, and **we** will not charge any additional premium for the remainder of the **policy period** for this coverage.

**Claim expenses**

B.   **We** will reimburse **you** up to the limit stated in the Declarations for the reasonable costs, fees, and other expenses incurred by **you** with **our** prior written consent to pay an independent accounting, auditing, or other service, that is not a **client**, to determine the existence or amount of a loss covered under this Coverage Part.

   **We** will not make any payment under this subsection B unless there is a covered loss which exceeds the **deductible**, and any amounts **we** pay will be a part of, and not in addition to, the limit of liability applicable to such loss.

**Forgery claim expenses**

C.   If **you** or an **executive employee** are sued because of the refusal to pay any instrument described in Section I. Insuring agreement B. Forgery on the basis it has been forged, altered, or counterfeited, and if **you** have **our** prior written consent to defend against the suit, **we** will pay for the reasonable legal expenses that **you** or the **executive employee** incur for that defense.

   No **deductible** will apply to this subsection C, and any amounts **we** pay will be in addition to, and not a part of, the limit of liability applicable to Section I. Insuring agreement B. Forgery.

**Identity fraud expenses**

D.   **We** will pay up to the limit stated in the Declarations for **identity fraud expenses** incurred by **you** or an **executive employee** resulting directly from **identity fraud**, provided the **identity fraud** results from an **occurrence** that is **discovered** by **you** or an **executive employee** during the **policy period**, and the loss is reported to **us** in accordance with Section V. Your obligations, B. Notifying us of losses.

   **We** will not make any payment under this subsection D unless there is a covered loss which exceeds the **deductible**.

---

## III. Who is an insured

For purposes of this Coverage Part, **you**, **your**, or **insured** means a **named insured**, **subsidiary**, **employee benefit plan**, or **acquired entity**, as defined below:

---



# Crime Coverage Part
**Loss Discovered Policy**

| | |
|---|---|
| **Named insured** | means the entity identified in Item 1 of the Declarations. |
| **Subsidiary** | means any entity of which the **named insured** has **management control**, either directly or indirectly through one or more other **subsidiaries**, before or during the **policy period**, but only for losses that take place while under the **named insured's management control** and are **discovered** by **you** or an **executive employee** during the **policy period**. |
| **Employee benefit plan** | means any welfare or pension benefit plan that is sponsored by the **named insured**, a **subsidiary**, or an **acquired entity**, whether or not such plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA), as may be amended. |
| **Acquired entity** | means an entity in which the **named insured**, during the **policy period**: |

1. acquires substantially all of the assets;

2. acquires the majority of its voting securities, as a result of which it becomes a **subsidiary**; or

3. merges and leaves the **named insured** as the surviving entity.

This Coverage Part will cover losses sustained by an **acquired entity** at any time, including prior to such **acquired entity's** acquisition, provided the loss is **discovered** by **you** or an **executive employee** during the **policy period**.

With respect to an **acquired entity** whose total assets exceed 35% of the **named insured's** total assets (as reflected in **your** most recent quarterly consolidated financial statements prior to the inception of this policy) at the time of its acquisition, any coverage under this Coverage Part will expire 90 days after the effective date of its acquisition unless, within such 90 day period:

1. the **named insured** provides **us** with written notice of such acquisition;

2. the **named insured** provides **us** with information related to such acquisition as **we** may reasonably require;

3. the **named insured** accepts any special terms, conditions, exclusions, or additional premium charge as **we** may reasonably require; and

4. **we** agree by written endorsement to provide such coverage.

---

## IV. Limits of liability and settlement

| | | |
|---|---|---|
| Employee dishonesty | A. | **We** will pay loss resulting from **theft**, **forgery**, **extortion**, or any other dishonest act committed by **your employees**, **managers**, directors, trustees, or authorized representatives only under Insuring agreements A. Fidelity or D. Tech fraud, 7. Virus Restoration or 8. Licensing Violation. There will be no coverage under any other Insuring agreements for loss resulting from such acts of employee dishonesty. |
| Limits of liability | B. | The maximum **we** will pay for all covered loss will be as follows: |

    1. The maximum amount **we** will pay for all covered loss resulting directly from an **occurrence** is the applicable limit stated in the Declarations. If the same **occurrence** is covered under more than one Insuring agreement, **we** will pay only under one limit, which will be the highest applicable limit.

    2. However, if the same **occurrence** is covered under Insuring agreement D.3. Cyber Deception and any other Insuring agreement(s), **we** will pay only under Insuring agreement D.3. Cyber Deception, regardless of which Insuring agreement has the highest applicable limit.

    3. Solely with respect to the coverage provided by Insuring agreement A.5. ERISA, the limit will apply separately to each **employee benefit plan**. If the same **occurrence** triggers both Insuring agreements A.1. Employee Theft and A.5. ERISA, **we** will pay under both limits.

---



**Crime Coverage Part**
Loss Discovered Policy

4. If the limit stated in the Declarations for Insuring agreement A.5. ERISA no longer complies with the minimum amount of coverage required for an **employee benefit plan** under ERISA, **we** agree to increase the limit applicable to each such **employee benefit plan** to an amount equal to the minimum amount of coverage required under ERISA, provided:

    a. the noncompliance was not due to investment in non-qualified assets; and

    b. the original limit was in compliance at the inception of the **policy period**.

5. Any payments **we** make to an **employee benefit plan** for losses it sustains must be held by that **employee benefit plan's** sponsor for the use and benefit of the **employee benefit plan**.

**Ownership of property and interests covered**

C. This Coverage Part applies to personal property only as follows:

1. With respect to Insuring agreements A.1. Employee Theft and A.3. Vendor Theft, coverage is limited to property **you** own or lease.

2. With respect to Insuring agreements A.2. Third Parties' Property and D.4. Customers' Accounts, coverage is limited to property:

    a. **your client** or **vendor**, or other person with whom **you** or **your employees** interact in connection with the performance of **your** business operations, owns or leases;

    b. **your client** or **vendor**, or other person with whom **you** or **your employees** interact in connection with the performance of **your** business operations, holds for others, whether or not anyone described in this part b is legally liable for the loss of such property; or

    c. that is owned, leased, or held by any individual or entity (other than **you** or an **employee**) for which **you** are legally liable.

3. With respect to Insuring agreements, A.4. Executives' Property, B.3. Executives' Accounts, coverage is limited to property that an **executive employee** owns, leases, or holds for others.

4. With respect to all other Insuring agreements, coverage is limited to property:

    a. **you** own or lease; or

    b. **you** hold for others whether or not **you** are legally liable for the loss of such property.

However, this policy is for **your** benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss under this Coverage Part must be presented by **you**.

**Policy Bridge – Discovery replacing loss sustained**

D. If this policy replaces insurance that provided **you** with an extended period of time after cancellation to **discover** loss, which did not terminate at the time this policy became effective, **we** will not pay for any loss that occurred during the prior policy's policy period which **you** or an **executive employee discover** during that extended period to discover loss.

However, **we** will pay the amount of any loss which exceeds the combined total of the limit and deductible of that prior policy if the loss would otherwise be covered under this Coverage Part. Any such payments will not be greater than the difference between the limit of that prior policy and the applicable limit of this Coverage Part. No **deductible** will apply to this excess loss.

**Recoveries**

E. 1. Any recoveries, whether made before or after any payment under this Coverage Part, or by **you** or **us**, will be applied as follows:

    a. first, to the expenses incurred by **you** or **us** to pursue the recovery, whoever incurred it;

    b. second, to **you** for **your** loss in excess of the amount of loss **we** paid under this Coverage Part, if the excess loss would otherwise be covered;



**Crime Coverage Part**
Loss Discovered Policy

c.  third, to **us** for all amounts **we** paid in settlement of **your** claim;

d.  fourth, to **you** for the amount of any applicable **deductible you** paid; and

e.  fifth, to **you** for any loss not covered under this Coverage Part resulting from the same **occurrence**.

2.  Accelerated Deductible Recovery:

A percentage of all recoveries under part 1 above will be paid to **you** in satisfaction of any **deductible**. This percentage is the relationship between such **deductible** and the amount paid under this Coverage Part (e.g. a $50,000 payment with a $5,000 **deductible** will result in a 10% recovery percentage).

3.  Recoveries under this subsection D do not include any recovery:

a.  from insurance, suretyship, reinsurance, security, or indemnity taken for **our** benefit; or

b.  of original **securities** after duplicates of them have been issued.

**Valuation**   F.  **We** will determine the value of any loss as follows:

1.  **Money**:

**We** will pay for loss of **money** issued by the United States up to its face value.

At **your** option, **we** will pay for loss of **money** issued by any country other than the United States at face value in the **money** issued by that country or in the United States dollar equivalent.

With respect to Bitcoin or any other digital currency, crypto currency, or electronic currency, **we** will pay for loss of such **money** in the United States dollar equivalent determined by the exchange rate published by the exchange in which **you** held such currency on the date the loss was **discovered**.

2.  **Securities**:

**We** will pay for loss of **securities** up to their face value at the close of business on the date the loss was **discovered**. At **our** option, **we** may pay:

a.  the market value of such **securities** or replace them in kind, and in return **you** must assign to **us** all of **your** rights, title, and interest in those **securities**; or

b.  the cost of any Lost Securities Bond required in connection with issuing duplicates of the **securities**. However, **we** will pay only up to the amount of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of:

i.  the market value of the **securities** at the close of business on the date the loss was **discovered**; or

ii.  the limit of liability applicable to the loss.

However, solely with respect to any loss of **securities** directly resulting from an **extortion**, **we** will pay the market value of such **securities** on the date they were surrendered, and not the date the **extortion** was **discovered**.

3.  **Other property**:

**We** will pay replacement cost, without deduction for depreciation, for loss of or damage to **other property**, or for loss from damage to the **premises** or its exterior.

However, **we** will not pay more than the lowest of the following:

a.  the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

b.  the amount **you** actually incur that is necessary to repair or replace the lost or damaged property; or

c.  the limit of liability applicable to the loss.



# Crime Coverage Part
**Loss Discovered Policy**

However, solely with respect to any loss of **other property** directly resulting from an **extortion**, **we** will pay the lesser of: (1) its replacement cost without deduction for depreciation at the time such **other property** was surrendered, or (2) the limit of liability applicable to the loss.

**We** will not make any payment on a replacement cost basis:

i.    until the lost or damaged property is actually repaired or replaced; and

ii.   unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, **we** will pay on an actual cash value basis.

**We** will, at **our** option, pay loss of or damage to property other than **money** in the currency of the country in which the loss or damage occurred or in the United States dollar equivalent.

If **you** sustain a covered loss in a country outside of the United States or its territories or possessions, and **you** incur additional federal or state tax liability as a result of **our** payment in the United States rather than the country in which the loss was sustained, **we** will adjust the loss to compensate **you** for such tax liabilities.

Any property **we** pay for or replace becomes **our** property.

---

# V.   Your obligations

Deductible | A. | Except for loss covered by Insuring agreement A.5. ERISA, **we** will have no obligation to make any payment under this Coverage Part unless the amount of the loss exceeds the applicable **deductible**. **We** will then pay the amount of loss in excess of the **deductible**, up to the applicable limit of liability.

Notifying us of losses | B. | After **you** or an **executive employee discovers** a loss of, damage to, or a situation that may result in loss of or damage to, **money**, **securities**, or **other property** that, in **your** best estimate, would exceed 50% of the **deductible**, **you** must:

1.    notify **us** as soon as possible after **discovery** of such loss, damage, or situation;

2.    give **us** a detailed, sworn proof of loss within 120 days after **your** notification to **us** of such loss, damage, or situation;

3.    cooperate with **us** in the investigation and settlement of any claim;

4.    produce for **our** examination all pertinent records;

5.    submit to examination under oath at **our** request and give **us** a signed statement of **your** answers;

6.    secure all of **your** rights of recovery against any person or organization responsible for the loss and do nothing to impair those rights;

7.    send **us**, within 60 days after **our** request, receipts, bills, or other records that support any claim for **identity fraud expenses** covered under Section II. Coverage enhancements, D. Identity fraud expenses; and

8.    notify the local law enforcement authorities, but only if **you** have reason to believe any loss (except for loss covered under Insuring agreement A. Fidelity) involves a violation of law.

Records | C. | **You** must keep records of all property covered by this Coverage Part so that **we** can verify the amount of any loss.

Unreported extortion | D. | As a condition precedent to coverage under Insuring agreement C.3. Extortion, **you** must use reasonable efforts to report any threat communicated to **you** to an **executive employee**, the appropriate local law enforcement authorities, and the FBI prior to surrendering the **money**, **securities**, or **other property**.

---



**Crime Coverage Part**
Loss Discovered Policy

---

## VI. Exclusions – What is not covered

**A. Exclusions applicable to the entire Crime Coverage Part**

**We** will have no obligation to pay any sums under this Coverage Part for any:

Acts committed by owners

1. loss resulting from **theft** or any other dishonest act committed by:

   a. **you**;

   b. any of **your** partners or **members**; or

   c. any natural person who has a 25% or greater ownership in any one or more **insureds**,

   whether acting alone or in collusion with other persons.

   However, this exclusion will not apply to otherwise covered acts committed by a **fiduciary** under Insuring agreement A.5. ERISA.

Confidential or personal information

2. loss resulting from:

   a. the disclosure or use of another person's or organization's confidential or personal information; or

   b. the disclosure of **your** confidential or personal information; however, this subsection b will not apply to otherwise covered loss directly resulting from the use of **your** confidential or personal information.

   For purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, social security numbers, health information, or any other type of non-public information.

Data security breach

3. fees, costs, fines, penalties, or other expenses arising out of or related to the acquisition, access, use, disclosure, or improper collection of, or failure to protect, any personally identifiable information or confidential corporate information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, social security numbers, health information, or any other type of non-public information.

Governmental action

4. loss resulting from seizure or destruction of property by order of any governmental authority.

Indirect loss

5. loss that is an indirect result of a covered **occurrence**, including but not limited to:

   a. loss resulting from the inability to realize income that would have been realized had there been no loss of or damage to **money**, **securities**, or **other property**;

   b. payment of damages of any type for which **you** are legally liable; however, **we** will pay compensatory damages directly resulting from an otherwise covered loss; or

   c. payment of costs, fees, or other expenses **you** incur to establish the existence or amount of loss under this Coverage Part, except amounts covered under Section II. Coverage enhancements, B. Claim expenses or D. Identity fraud expenses.

Legal fees, costs, and expenses

6. fees, costs, and expenses incurred by **you** which are related to any legal action, except amounts covered under Section II. Coverage enhancements, B. Claim expenses, C. Forgery claim expenses, or D. Identity fraud expenses.

Prior dishonesty

7. loss caused by an **employee** if **you** or an **executive employee** who did not act in collusion with the **employee** learned, prior to the **policy period**, that the **employee** had committed any **theft**, **forgery**, or other dishonest act; however, this exclusion will not apply if the **theft**, **forgery**, or other dishonest act was committed prior to the **employee** becoming **your employee** and the amount involved in such act did not exceed $10,000.



## Crime Coverage Part
**Loss Discovered Policy**

| | | |
|---|---|---|
| **B. Exclusion applicable only to Insuring agreement A. Fidelity** | | **We** will have no obligation to pay any sums under Insuring agreement A. Fidelity for any: |
| Trading | 8. | loss resulting from trading, whether in **your** name or in a genuine or fictitious account; however, this exclusion will not apply to direct losses caused by **theft** or **forgery** which result in improper financial gain to an **employee**. |
| | | For purposes of this exclusion, direct losses mean only the amount of improper financial gain to the **employee** and do not include salary, commissions, fees, or other compensation, including but not limited to promotions and raises associated with employment, paid by **you** to such **employee**. |
| **C. Exclusions applicable only to Insuring agreement C. Inside and outside loss** | | **We** will have no obligation to pay any sums under Insuring agreement C. Inside and outside loss for any: |
| Accounting or arithmetic errors or omissions | 9. | loss resulting from accounting or arithmetic errors or omissions. |
| Exchanges or purchases | 10. | loss resulting from the giving or surrendering of property in any exchange or purchase; however, this exclusion will not apply to an otherwise covered **extortion**. |
| Fire | 11. | loss or damage resulting from fire, however caused, except **we** will pay for otherwise covered: |
| | | a. loss of or damage to **money** or **securities**; and |
| | | b. loss from damage to a safe or vault. |
| Motor vehicles or equipment and accessories | 12. | loss of or damage to motor vehicles, trailers or semi-trailers, or equipment and accessories attached to them. |
| Vandalism | 13. | loss of or damage to the **premises** or its exterior, or to any safe, vault, cash register, cash box, cash drawer, or **other property** resulting from vandalism or malicious mischief. |
| Voluntary parting of title to or possession of property | 14. | loss resulting from **you**, or anyone acting on **your** express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property; however, this exclusion will not apply to an otherwise covered **extortion**. |
| **D. Exclusions applicable only to Insuring agreement D. Tech fraud** | | **We** will have no obligation to pay any sums under Insuring agreement D. Tech fraud, parts 1, 2, 3, 4, or 5 for any loss resulting from: |
| Authorized users | 15. | the use of **your** computer system by a person who is authorized to access such computer system, except **we** will pay otherwise covered loss resulting from **cyber deception** or **erroneous funds transfer**. |
| Credit card transactions | 16. | the actual or purported use of credit, debit, charge, access, convenience, identification, stored-value, or other cards, or the information contained on such cards. |
| Exchanges or purchases | 17. | the giving or surrendering of property in any exchange or purchase. |
| | | **We** will have no obligation to pay any sums under Insuring agreement D. Tech fraud, parts 7 or 8 for any loss resulting from: |
| Errors or omissions | 18. | errors or omissions in the design, programming, or processing of computer programs or electronic data; however, this exclusion will not apply to loss resulting from a virus which is contracted because of an innocent mistake or omission by **you** or anyone on **your** behalf in securing **your** computer system. |



**Crime Coverage Part**
**Loss Discovered Policy**

| | |
|---|---|
| Fraudulent preparation or input | 19.  the fraudulent preparation or input of electronic data or computer programs; however, this exclusion will not apply to loss resulting from a virus which is contracted because of an innocent mistake or omission made by **you** or anyone on **your** behalf in the course of securing **your** computer system. |

## VII.  Definitions

The following definitions apply to this Coverage Part. Additional definitions are contained in Section III. Who is an insured, and in the General Terms and Conditions, Section VI. Definitions applicable to all Coverage Parts. If a term is defined in this Coverage Part differently than defined anywhere else in this policy, the definitions in this Coverage Part will apply to the coverage afforded under this Coverage Part.

**Client**

means any individual or entity to whom **you** provide goods or services, including any client of such **client**.

**Computer fraud**

means the use of any computer system to make a fraudulent transfer of **money**, **securities**, or **other property** from inside the **premises** or **financial institution premises** to a person (other than a **messenger**) or place outside the **premises** or **financial institution premises**.

**Computer fraud** does not include any fraudulent transfer of **money**, **securities**, or **other property** which required **you**, **your employees**, **your executive employees**, or others on **your** behalf to take any action in order to complete the transfer of such **money**, **securities**, or **other property**.

**Custodian**

means **you**, any of **your** partners or **members**, or any **employee**, but only while having care and custody of property covered by this Coverage Part inside the **premises**. **Custodian** does not include any person while acting as a **watchperson** or janitor, unless such person is also an **employee**.

**Cyber deception**

means the intentional misleading or deception of an **employee** or **executive employee** by a person falsely purporting to be **your client**, **vendor**, **employee**, or **executive employee** through social engineering, pretexting, phishing, spear phishing, whaling, or any other confidence trick communicated by email, text, instant message, telephone, or other electronic means, which results in **your** transfer, payment, or delivery of **money** or **securities**.

**Deductible**

means the amount stated as such under the Crime section of the Declarations.

**Discover**, **discovered**, or **discovery**

means when **you** or an **executive employee** first becomes aware of facts which would cause a reasonable person to believe a loss has been or will be sustained, regardless of whether the exact amount or details of the loss is known.

Solely with respect to an **extortion**, **discover**, **discovered**, or **discovery** means when the threat is first communicated to **you** or an **executive employee**.

**Discover**, **discovered**, or **discovery** also means the first receipt by **you** or an **executive employee** of notice of an actual or potential claim in which it is alleged that **you** are liable to a third party under circumstances which would constitute a loss under this Coverage Part.

**Employee**

means any:

1.  natural person:

    a.  while in **your** service;

    b.  whom **you** compensate directly by salary, wages, or commissions; and

    c.  whom **you** have the right to direct and control while performing services for **you**;

2.  natural person independent contractor who is contracted by **you** to perform services or provide goods for or on **your** behalf;

3.  natural person who is leased to **you** or who is **your** temporary employee;

4.  natural person who is a former **employee**, partner, **member**, **manager**, director, or trustee retained as a consultant while performing services for **you**;

5.  natural person who is a student, volunteer, or intern performing services for **you**;



**Crime Coverage Part**
Loss Discovered Policy

6.   natural person who is **your manager**, director, or trustee while performing acts within the usual duties of an employee;

7.   natural person who is a non-compensated officer of an **insured**;

8.   natural person who is a committee member of an **insured**; or

9.   person described in parts 1 through 8 above while on military, disability, family, medical, or similar leave.

Coverage under this Coverage Part will apply to any **employee** for the first 60 days immediately after their termination, unless such termination is due to **theft**, **forgery**, or any other dishonest act committed by the **employee**.

**Employee** does not include any agent (regardless of whether there is a written agreement as specified in the definition of **vendor**), broker, factor, commission merchant, consignee, representative, or person in a similar position unless specified in 1 through 9 above.

**Erroneous funds transfer**   means the accidental and erroneous transfer of **money** or **securities** to an unauthorized account resulting directly from the inputting of an inaccurate account number, routing number, or other identifier for the account to which the **money** or **securities** are intended and authorized to be transferred. **Erroneous funds transfer** does not include the accidental and erroneous transfer of **money** or **securities** to an unauthorized account as the result of a **cyber deception**.

**Executive employee**   means **your** proprietor, natural person partner, member of the board of directors, member of the board of trustees, **member**, **manager**, officer, and any **employee** in a risk management, general counsel, insurance, or human resources department or function.

Solely with respect to Insuring agreement A.5. ERISA, **executive employee** also includes a **fiduciary**.

Solely with respect to Section II. Coverage enhancements, D. Identity fraud expenses, **executive employee** also includes any spouse, child under the age of 18, or relative living in the household of the **executive employee**.

**Extortion**   means a communication directed toward **you** threatening to:

1.   inflict bodily harm on **you** (if **you** are a sole proprietorship) or any of **your employees**, **executive employees**, **members**, **managers**, or any relative(s) or invitee(s) of any of these persons, if such person was captured or allegedly captured in a country not excluded under Section VIII. Other provisions affecting coverage, C. Excluded countries for extortion;

2.   damage the **premises** or any property within the **premises**, provided such **premises** is not located in a country excluded under Section VIII. Other provisions affecting coverage, C. Excluded countries for extortion;

3.   introduce a denial of service attack into **your** computer system;

4.   contaminate, pollute, or render **your** products or goods unmarketable; or

5.   disseminate, divulge, or use **your** confidential or personal information, another person's or organization's confidential or personal information, or any weaknesses in the source code in **your** computer system,

for the purpose of inducing **you** to surrender **money**, **securities**, or **other property**.

**Fiduciary**   means any natural person fiduciary, trustee, administrator, or other plan official, while in the regular service of an **employee benefit plan**, and any other natural person who handles **employee benefit plan** assets (including an employee of a TPA or other **vendor**) who is required to be bonded by the Employee Retirement Income Security Act of 1974 (ERISA), as may be amended.

**Financial institution**   means:

1.   a bank, savings bank, savings and loan association, trust company, credit union, or similar thrift depository institution;

2.   an insurance company; or

3.   a stock brokerage firm, mutual fund, liquid assets fund, or similar investment company.



# Crime Coverage Part
**Loss Discovered Policy**

| | |
|---|---|
| **Financial institution premises** | means the interior of that portion of any building occupied by a **financial institution**, transfer agent or registrar, or similarly recognized place of safe deposit including a night depository chute, ATM owned by such **financial institution** (wherever located), or safe of such institution. |
| **Forgery** | means signing the name of another person or organization with the intent to deceive, whether in writing or through an electronic identifier. **Forgery** does not include a signature which consists in whole or in part of one's own name, whether signed with or without authority, in any capacity, and for any purpose. |

**Funds transfer fraud**     means a:

1. telefacsimile, telephone, or other electronic instruction directing a **financial institution** to debit a **transfer account** and to transfer, pay, or deliver **money** or **securities** from that **transfer account**, which instruction purports to have been transmitted by **you**, but was in fact fraudulently transmitted by someone else without **your** knowledge or consent; or

2. written instruction (other than those described in Insuring agreement B. Forgery) issued to a **financial institution** directing such institution to debit a **transfer account** and to transfer, pay, or deliver **money** or **securities** from that **transfer account**, through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by **you**, but was in fact issued, forged, or altered by someone else without **your** knowledge or consent.

**Funds transfer fraud** does not include any transfer, payment, or delivery of **money** or **securities** which required **you**, **your employees**, **your executive employees**, or others on **your** behalf to take any action in order the complete the transfer, payment, or delivery of such **money** or **securities**.

**Identity fraud**     means the unlawful and knowing transfer or use of a form of identification belonging to **your** business or any **executive employee** with the intent to commit, or to aid or abet another to commit, any unlawful activity constituting a violation of federal law or a felony under any applicable state or local law.

**Identity fraud expense**     means:

1. advertising and public relations expenses incurred by **you** to restore **your** business reputation as a result of an **identity fraud**;

2. costs incurred by **you** or any **executive employee** to notarize affidavits or similar documents attesting to fraud, as required by financial institutions or similar credit grantors or credit agencies;

3. costs incurred by **you** or any **executive employee** for certified mail to law enforcement agencies, credit agencies, financial institutions, or similar credit grantors;

4. costs incurred by **you** or any **executive employee** to obtain credit reports;

5. costs to provide one year of credit monitoring services to monitor, restore, and/or protect **your** or any **executive employee's** credit;

6. lost income incurred by **you** or any **executive employee** resulting from any time taken off work to complete fraud affidavits or meet with or talk to law enforcement agencies, credit agencies, and/or legal counsel, up to a maximum of $250 per day. The most **we** will pay for lost income under this part 6 will be $10,000 or the applicable limit of liability, whichever is less;

7. loan application fees incurred by **you** or any **executive employee** to reapply for a loan when the original application is rejected solely because the lender received incorrect credit information;

8. reasonable attorneys' fees to:

    a. defend lawsuits brought against **you** or any **executive employee** by merchants, vendors, suppliers, financial institutions, or their collection agencies;

    b. remove any criminal or civil judgments wrongly entered against **you** or any **executive employee**; or

---

Includes copyrighted material of
Insurance Services Offices, Inc., with its permission



## Crime Coverage Part
**Loss Discovered Policy**

    c.   challenge the accuracy or completeness of any information in a consumer credit report for **you** or any **executive employee**;

9.   charges incurred by **you** or any **executive employee** for long distance telephone calls to merchants, vendors, suppliers, customers, law enforcement agencies, financial institutions, or similar credit grantors or credit agencies to report or discuss an actual **identity fraud**; and

10.   any other reasonable expense incurred by **you** or any covered individual with **our** prior written consent.

**Manager**         means a natural person serving in a directorial capacity for a limited liability company.

**Member**         means an owner of a limited liability company represented by its membership interest, who, if a natural person, may also serve as a **manager**.

**Messenger**    means **you**, **your** relative, any of **your** partners or **members**, or any **employee** while having care and custody of property covered by this Coverage Part outside the **premises**.

**Money**         means:

1.   currency, including Bitcoin or any other digital currency, crypto currency, or electronic currency, coins, or bank notes in current use anywhere in the world and having a face value;

2.   bullion;

3.   traveler's checks and money orders held for sale to the public; or

4.   funds on deposit at a **financial institution**.

**Occurrence**   means:

1.   under Insuring agreements, A. Fidelity and D.8. Licensing Violation:

    a.   an individual act;

    b.   the combined total of all separate acts whether or not related; or

    c.   a series of acts whether or not related,

    committed by an **employee**, **fiduciary**, or employee of a **vendor** acting alone or in collusion with other persons, prior to or during the **policy period**, or both.

2.   under Insuring agreement B. Forgery:

    a.   an individual act;

    b.   the combined total of all separate acts whether or not related; or

    c.   a series of acts whether or not related;

    committed by a person acting alone or in collusion with other persons, involving one or more instruments, prior to or during the **policy period**, or both.

3.   under all other Insuring agreements:

    a.   an individual act or event;

    b.   the combined total of all separate acts or events whether or not related; or

    c.   a series of acts or events whether or not related;

    committed by a person acting alone or in collusion with other persons, or not committed by any person, prior to or during the **policy period**, or both.

Under Insuring agreement D.7. Virus Restoration, with respect to a virus only, once **you** have restored **your** computer system to the level of operational capability that existed before the virus occurred, any recurrence of the same virus will constitute a separate **occurrence**.

**Other property**   means any tangible property other than **money** or **securities** that has intrinsic value. **Other property** does not include computer programs, electronic data, or any property specifically excluded under this Coverage Part.

 **Crime Coverage Part**
Loss Discovered Policy

| | |
|---|---|
| **Policy period** | means the period of time stated in Item 2 of the Declarations. |
| **Premises** | means the interior of that portion of any building **you** occupy in conducting **your** business operations. |
| | If **you** conduct **your** business operations outdoors or in an open air venue, **premises** will also mean the area **you** or **your employees**, **clients**, or **vendors** occupy in the course of such business operations. |
| **Robbery** | means the unlawful taking of property from the care and custody of a person by one who has: |
| | 1.  caused or threatened to cause that person bodily harm; or |
| | 2.  committed an obviously unlawful act witnessed by that person. |
| **Safe burglary** | means the unlawful taking of property from within a locked safe or vault by a person who entered the safe or vault unlawfully, as evidenced by marks of forcible entry on its exterior. **Safe burglary** includes the unlawful taking of a safe or vault from inside the **premises**. |
| **Securities** | means instruments or contracts representing **money**, property, or a debt or equity interest in an entity, including: |
| | 1.  stocks and bonds, whether or not evidenced by a certificate; |
| | 2.  tokens, tickets, revenue, and other stamps (whether represented by actual stamps or unused value in a meter) in current use; |
| | 3.  gift certificates and gift cards; |
| | 4.  casino chips issued by **you**; and |
| | 5.  evidences of debt issued in connection with credit or charge cards not issued by **you**, |
| | but does not include **money**. |
| **Theft** | means the unlawful taking of property to its owner's deprivation. |
| **Transfer account** | means an account maintained at a **financial institution** from which one can initiate the transfer, payment, or delivery of **money** or **securities** by means of: |
| | 1.  telefacsimile, telephone, or other electronic instruction; or |
| | 2.  written instructions (other than those covered under Insuring agreement B. Forgery) establishing the conditions under which transfers are to be initiated by such **financial institution** through an electronic funds transfer system. |
| **Vendor** | means an entity that provides goods or services to **you** pursuant to a written agreement. |
| | Solely with respect to Insuring agreement A.2. Third Parties' Property, **vendor** also includes any entity that provides goods or services to **you** pursuant to an oral agreement. |
| | **Vendor** does not include any independent contractor, **financial institution**, asset manager, broker-dealer, or armored motor vehicle company. |
| **Voice computer system** | means a computer system installed in one location which provides a capability used for the direction or routing of telephone calls in a voice communications network. |
| **Watchperson** | means any person retained by **you** specifically to have care and custody of property covered by this Coverage Part inside the **premises** and who has no other duties. **Watchperson** does not include an **employee**. |
| **You**, **your**, or **insured** | means a **named insured**, **subsidiary**, **employee benefit plan**, or **acquired entity**, as defined in Section III. Who is an insured. |

Includes copyrighted material of
Insurance Services Offices, Inc., with its permission

 **Crime Coverage Part**
Loss Discovered Policy

---

## VIII.  Other provisions affecting coverage

**Cancellation**

A.  1.  This Coverage Part may be canceled by the **named insured** (or, if there is more than one **named insured**, the first one listed in the Declarations) by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations.

2.  This Coverage Part may be canceled by **us** by mailing to the **named insured** by registered, certified, or other first-class mail (or by email where allowed by applicable law), at the **named insured's** address (or email address) stated in Item 1 of the Declarations, written notice which must include the date the cancellation will be effective. The effective date of the cancellation will be no less than: (i) 60 days after the date of the notice of cancellation; or (ii) fifteen days after the date of the notice of cancellation if the cancellation is due to nonpayment of premium.

3.  The mailing (or emailing) of the notice will be sufficient proof of notice, and this Coverage Part will terminate at the date and hour specified in the notice.

4.  If this Coverage Part is canceled, whether by **you** or **us**, **we** will return a pro rata proportion of the premium.

5.  Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible.

6.  If this Coverage Part is canceled as to any **insured**, loss sustained by that **insured** will be covered under this Coverage Part only if it is **discovered** by **you** or an **executive employee** pursuant to the rules contained in subsection D. Extended period to discover loss below.

**Examination of your books and records**

B.  **We** may examine and audit **your** books and records as they relate to this Coverage Part at any time during the **policy period** and up to three years afterward.

**Excluded countries for extortion**

C.  **We** will have no obligation to pay any sums under this Coverage Part for any **extortion** which involves a threat to: (i) inflict bodily injury to any person(s) who was captured or allegedly captured in; or (ii) damage a premises or any property within a premises located in, any of the countries listed in the Excluded Countries - Extortion endorsement attached to this Coverage Part.

**Extended period to discover loss**

D.  If this Coverage Part or any Insuring agreement is canceled as to any **insured**, or any **subsidiary** ceases to be a **subsidiary**, **we** will still pay for loss that **insured** sustained prior to the effective date of cancellation, or the date the **subsidiary** ceased to be a **subsidiary**, provided the loss is **discovered** by **you** or an **executive employee** no later than:

1.  60 days after the date of the cancellation or change in ownership or control of the **subsidiary**, provided this extended period to **discover** loss will terminate immediately on the effective date of any other similar insurance obtained by that **insured**, whether or not such other insurance provides coverage for loss sustained prior to its effective date; or

2.  one year after the date of the cancellation with regard to any **employee benefit plans** under Insuring agreement A.5. ERISA.

**Inventory shortages**

E.  If **you** claim any loss which:

1.  involves property contained in any money operated device, **we** will not be obligated to pay any sums under this Coverage Part for such loss unless the amount of **money** deposited in the device is recorded by a continuous recording instrument in the device.

2.  is dependent on an inventory computation or a profit and loss computation in order to establish its existence or the amount of the loss, **we** will not be obligated to pay any sums under this Coverage Part for such loss unless **you** establish apart from such



**Crime Coverage Part**
Loss Discovered Policy

computations that **you** have sustained a loss. **You** may offer **your** inventory records and actual physical count of inventory in order to establish such loss.

| | | | |
|---|---|---|---|
| Joint insured | F. | 1. | If the **named insured** is no longer covered under this Coverage Part, then the **subsidiary** with the most assets will have the sole responsibility for acting on behalf of all other **insureds** with respect to the obligations described in this Section V. Your obligations. |

2.  Any knowledge possessed by one **insured** will be imputed to every other **insured**.

3.  An **employee** of any **insured** is considered an **employee** of every **insured**.

4.  **We** will only be obligated to pay up to the applicable limit of liability for any covered loss under this Coverage Part, regardless of the number of **insureds** who sustain the loss, except in the event the loss is sustained by more than one **employee benefit plan** under Insuring agreement A.5. ERISA.

5.  Payment by **us** to the first **named insured** (or **employee benefit plan** if applicable under Insuring agreement A.5. ERISA) for loss sustained by **you** will fully release **us** from **our** obligations with respect to that loss.

Legal action against us    G.    **You** may not bring any legal action against **us** involving any loss:

1.  unless **you** have complied with all of the terms of this policy;

2.  until 90 days after **you** have filed a proof of loss with **us**; and

3.  unless brought within two years from the date **you** or an **executive employee discovered** the loss.

If any limitation in this subsection G is prohibited by law, it will be deemed amended to equal the minimum period of limitation provided by applicable law.

Liberalization    H.    To the extent **we** adopt any changes to **our** Crime insurance policies after the issuance of this Coverage Part which provide broader coverage than the coverage provided by this Coverage Part, the relevant provisions of this Coverage Part will be deemed replaced by the broader language.

Other insurance    I.    If other valid and collectible insurance is available to **you** for a loss covered under this Coverage Part, **we** will only pay for the amount of loss that exceeds the limit of insurance and deductible amount of that other insurance, whether **you** can collect on it or not. **Our** payment for any loss is subject to the terms and conditions of this Coverage Part.

However, if loss covered under this Coverage Part and other insurance available to **you** is subject to a retention or deductible, **we** will recognize erosion of the **deductible** by the total of all such other insurance plus any deductible applicable to that other insurance.



---

**Endorsement 1**

NAMED INSURED: Maryland Congress of Parents and Teachers

**E2507.1 Nuclear Incident Exclusion Clause – Liability-Direct (Broad) Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

**We** will have no obligation to pay any sums under this policy, including any **claim expenses** or any other **loss**, for any **claim**, **occurrence**, **breach**, **event**, or **coverage enhancement**:

A.  Under any liability coverage, for injury, sickness, disease, death, or destruction:

    1.  for which **you** are also insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for exhaustion of its limit of liability; or

    2.  resulting from the **hazardous properties** of **nuclear material** and with respect to which:

        a.  any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, as amended; or

        b.  **you** are, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  Under any Medical Payments coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C.  Under any liability coverage, for injury, sickness, disease, death, or destruction resulting from the **hazardous properties** of **nuclear material**, if:

    1.  the **nuclear material** is at any **nuclear facility** owned or operated by **you** or on **your** behalf, or has been discharged or dispersed from such a facility;

    2.  the **nuclear material** is contained in spent fuel or **waste** which is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by **you** or on **your** behalf; or

    3.  the injury, sickness, disease, death, or destruction arises out of the furnishing by **you** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to injury to or destruction of property at such **nuclear facility**.

D.  Under a Crime coverage, any loss, damage, or injury resulting from nuclear reaction or radiation, however caused.

As used in this endorsement:

**Hazardous properties** includes radioactive, toxic, or explosive properties;

**Nuclear material** means **source material**, **special nuclear material**, or **byproduct material**;

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Source material**, **special nuclear material**, **nuclear reactor**, and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954, as amended;

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

CR1ENADREN23



**Endorsement 1**

NAMED INSURED: Maryland Congress of Parents and Teachers

**Waste** means any waste material:

1.  containing **byproduct material**; and

2.  resulting from the operation by any person or organization of any **nuclear facility** included in paragraph 1 or 2 of the definition of **nuclear facility**;

**Nuclear facility** means:

1.  any any **nuclear reactor**;

2.  any any equipment or device designed or used for:

    a.   separating the isotopes of uranium or plutonium;

    b.   processing or utilizing spent fuel; or

    c.   handling, processing, or packaging **waste**;

3.  any equipment or device used for the processing, fabricating, or alloying of **special nuclear material**, if at any time the total amount of such material in **your** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

4.  any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **waste**.

**Nuclear facility** includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

With respect to injury to or destruction of property, "injury" or "destruction" includes all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.

| | | | |
|---|---|---|---|
| Endorsement effective: | 07/01/2022 | Certificate No.: | UC24379596.22 |
| Endorsement No: | 1 | Processed Date: | 05/30/2022 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



---

**Endorsement 2**

NAMED INSURED: Maryland Congress of Parents and Teachers

**E2624.1 War and Civil War Exclusion Endorsement**

[ ] **Declarations**
[X] **General Terms and Conditions**
[ ] **D&O Coverage Part**
[ ] **Public Officials Liability Coverage Part**
[ ] **Educators Legal Liability Coverage Part**
[ ] **EPL Coverage Part**
[ ] **Fiduciary Coverage Part**
[ ] **Employed Lawyers Coverage Part**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Coverage Part(s) selected above is amended as follows:

This policy does not apply to and **we** will have no obligation pay any sums under this policy, including any **damages**, **claim expenses**, or other **loss**, for any **claim**, **breach**, **event**, or **occurrence** directly or indirectly occasioned by, happening through, or in consequence of:

1.  war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military, or usurped power; or

2.  confiscation, nationalization, requisition, destruction of, or damage to property by or under the order of any government, public, or local authority.

| | | | |
|---|---|---|---|
| Endorsement effective: | 07/01/2022 | Certificate No.: | UC24379596.22 |
| Endorsement No: | 2 | Processed Date: | 05/30/2022 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



---

**Endorsement 3**

NAMED INSURED: Maryland Congress of Parents and Teachers

**E1090.1 Maryland Amendatory Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Crime Coverage Part is amended as follows:

I.    In Section VIII. Other provisions affecting coverage, A. Cancellation, part 2 is deleted in its entirety and replaced with the following:

    2.    This Coverage Part may be cancelled by **us** by mailing to the **named insured** by registered, certified, or other first class-mail (or by email where allowed by applicable law), at the **named insured's** address (or email address) stated in Item 1 of the Declarations, written notice including the reason for cancellation, which must include the date the cancellation will be effective.

Policies In Effect For 45 Days or Less

If this Coverage Part has been in effect for 45 days or less and is not a renewal policy, the effective date of the cancellation will be no less than 15 days before the effective date of cancellation if we cancel:

    a.    For non-payment of premium.

    b.    Because the risk does not meet **our** underwriting standards.

Policies In Effect For More Than 45 Days

If this Coverage Part has been in effect for more than 45 days, the effective date of the cancellation will be no less than: (i) 60 days after the date of the notice of cancellation; or (ii) 15 days after the date of the notice of cancellation if the cancellation is due to nonpayment of premium.

**We** may cancel only for one or more of the following reasons:

    a.    Non-payment of premium;

    b.    When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a **claim;**

    c.    A change in the condition of the risk that results in an increase in the hazard insured against;

    d.    A matter or issue related to the risk that constitutes a threat to public safety.

    e.    Due to the revocation or suspension of the driver's license or motor vehicle registration:

        i.    Of the **named insured** or covered driver under the policy; and

        ii.    For reasons related to the driving record of the **named insured** or covered driver.

The **named insured** may request additional information on the reason for cancellation within 30 days from the date of **our** notice.

**We** will send notice of cancellation to the **named insured** by first-class mail tracking method (or email, if allowed by applicable law), if:

    a.    **We** cancel for non-payment of premium; or

    b.    This Coverage Part is not a renewal of a policy **we** issued and has been in effect for 45 days or less.

**We** will send notice to the **named insured** by first-class mail tracking method (or email, if allowed by applicable law) if **we** cancel for a reason other than non-payment of premium and this Coverage Part:

    a.    Is a renewal of policy **we** issued; or

CR1ENADREN23



---

**Endorsement 3**

NAMED INSURED: Maryland Congress of Parents and Teachers

      b.      Has been in effect for more than 45 days.

      **We** will maintain proof of mailing in a form authorized or accepted by the United States Postal Service (or email receipt, if allowed by applicable law) or by other commercial mail delivery service when such service is used. Proof of mailing (or emailing) will be sufficient proof of notice.

II.    In Section VIII. Other provisions affecting coverage, G. Legal action against us is modified to the extent necessary to provide the following:

      **You** may not bring any legal action against u**s** involving loss unless brought within three years from the date it accrues.

All other terms and conditions remain unchanged.

| | | | |
|---|---|---|---|
| Endorsement effective: | 07/01/2022 | Certificate No.: | UC24379596.22 |
| Endorsement No: | 3 | Processed Date: | 05/30/2022 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



# ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency.  OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons.  OFAC has also identified Sanctioned Countries.  A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries.  Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person.  Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.